UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAGECREST II, LLC | |
| Plaintiff, | |
| - against - | 3:13-cv-973-SRU |
| ACG CREDIT COMPANY II, LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE, LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP, INC., ACG CREDIT COMPANY, LLC, and IAN S. PECK, | |
| Defendants. | |
| SAGECREST II, LLC | |
| Plaintiff, | |
| - against - | 3:13-cv-974-SRU |
| IAN S. PECK, ACG CREDIT COMPANY II LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP INC., and ACG CREDIT COMPANY, LLC, | |
| Defendants. | April 15, 2014 |

**PLAINTIFF'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Oral Argument Requested

Preliminary Statement ................................................................................... 1

Relevant Facts .............................................................................................. 4

    A.    The Prior ACG Litigation ............................................................. 4

    B.    The So-Ordered Settlement Stipulation .................................... 6

    C.    Defendants Fail To Pay The Balance And Plaintiff Services The Assigned Loans ............................................................................ 10

    D.    Defendants Default On The 2-Year Note .............................. 12

    E.    Defendants Lose Their Malpractice Claim Against One Of Their Former Attorneys ...................................................................... 13

Argument ..................................................................................................... 14

I. Plaintiff's Claims Are Ripe Because Defendants Breached The So-Ordered Settlement Stipulation .................................................................. 14

II. Plaintiff Is Entitled To Simultaneously Sue For Damages And Attempt To Collect On Collateral ................................................................................ 21

III. Plaintiff Is Entitled To Collect On The Peck Personal Guarantee ................... 28

Conclusion .................................................................................................... 311

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Argonaut P'ship, L.P. v. Bankers Tr. Co. Ltd.*
1997 WL 45521 (S.D.N.Y. Feb. 4, 1997) ........................................................16

*In re Bankers Trust Co.*
450 F.3d 121 (2d Cir. 2006) ...........................................................................28

*In re Bennett Funding Group, Inc.*
367 B.R.302 (Bankr. N.D.N.Y. 2007) .............................................................20

*Chem. Bank v. Kaufman*
142 A.D.2d 526 (1st Dep't 1988) ....................................................................22

*Chemtex, LLC v. St. Anthony Enterprises, Inc.*
490 F. Supp. 2d 536 (S.D.N.Y. 2007) ........................................................22, 24

*City Wide Sewer & Drain Serv. Corp. v. Carusone*
39 A.D.3d 687, 834 N.Y.S.2d 283 (2d Dep't 2007) .........................................15

*Davis v. Blige*
505 F.3d 90 (2d Cir. 2007) .............................................................................16

*First Nationwide Bank v. Gelt Funding Corp.*
27 F.3d 763 (2d Cir. 1994) .........................................................................19, 20

*Fischbach & Moore Elec. v. Bell BCI Co.*
2004 WL 1811392 (W.D.N.Y. Aug. 11, 2004) ................................................14

*Gelb v. Royal Globe Ins. Co.*
798 F.2d 38 (2d Cir. 1986), *cert denied*, 480 U.S. 948 (1987) .....................27

*Goldfine v. Sichenzia*
118 F. Supp.2d 392 (S.D.N.Y. 2000) ..............................................................19

*Green Party of Conn. v. Garfield*
537 F. Supp.2d 359 (D. Conn. 2008) (Underhill, J.) .......................................14

*Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*
958 F. Supp. 2d 507 (S.D.N.Y. 2013) .............................................................16

*Gucci Am., Inc. v. Sample Sale Wholesalers, Ltd.*
39 A.D.3d 271, 835 N.Y.S.2d 26 (1st Dep't 2007) ..........................................15

*Hahn &Hessen LLP v. Peck, et al.*
  Index No. 603122/2008 ...........................................................................21, 25, 26, 27

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*
  759 F. Supp.2d 363 (S.D.N.Y. 2010) ...........................................................................20

*MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*
  2011 U.S. Dist. LEXIS 31307 (S.D.N.Y. 2011)...........................................................28

*McGrath v. Carnegie Trust Co.*
  221 N.Y. 92 (1917) (Cardozo, J.).................................................................................22

*McKenzie v. Vintage Hallmark, PLC*
  302 A.D.2d 503, 755 N.Y.S.2d 288 (2d Dep't 2003).....................................................15

*In re Merrill Lynch Ltd. P'ships Litigation*
  154 F.3d 56 (2d Cir. 1998) ...........................................................................................20

*In re Merrill Lynch Ltd. P'ships Litigation*
  7 F. Supp. 2d 256 (S.D.N.Y. 1997) ..............................................................................20

*Miller v. Steloff*
  686 F. Supp. 91 (S.D.N.Y. 1988)..................................................................................18

*Mulholland v. GMZ Assocs., Ltd.*
  2004 WL 489062 (S.D.N.Y. Mar. 11, 2004).................................................................17

*Parker v Blauvelt Volunteer Fire Co.*
  93 N.Y.2d 343 (1999).....................................................................................................26

*Reich v. Bowery Sav. Bank*
  183 A.D.2d 884 (2d Dep't 1992)....................................................................................22

*Rotunno v. Stiles*
  37 A.D.3d 582, 829 N.Y.S.2d 653 (2d Dep't 2007).......................................................15

*Ryan v. New York Tel. Co.*
  62 N.Y.2d 494 (1984).....................................................................................................26

*SageCrest II, LLC v. ACG Credit Company, LLC, et al.*
  Index No. 600195/07 .......................................................................................................4

*Samuels v. Montefiore Med. Ctr.*
  49 A.D.3d 268, 852 N.Y.S.2d 121 (1st Dep't 2008)......................................................15

*San Remo Hotel, L.P. v. San Francisco*
  545 U.S. 323 (2005) .......................................................................................................26

*Sea Tow Servs. Int'l, Inc. v. Pontin*
   472 F. Supp. 2d 349 (E.D.N.Y. 2007) .......................................................................14, 16

*Sharp v. Stavisky*
   221 A.D.2d 216, 633 N.Y.S.2d 488 (1st Dep't 1995)........................................................15

*Sotheby's Financial Servs., Inc. v. Baran*
   2003 WL 21756126 (S.D.N.Y. July 29, 2003) .................................................................22

*Thompson v. Cnty. of Franklin*
   15 F.3d 245 (2d Cir. 1994) ...............................................................................................14

*TP Group, Inc. v. Wilson*
   1990 WL 52131 (S.D.N.Y. April 17, 1990) .....................................................................28

*Valley Nat'l Bank v. Oxygen Unlimited, LLC*
   2010 U.S. Dist. LEXIS 137587 (S.D.N.Y. 2010) ...........................................................18

<u>Statutes</u>

N.Y.U.C.C. § 3-104 .................................................................................................................18

N.Y.U.C.C. § 3-105 .................................................................................................................18

U.C.C. § 9-601.........................................................................................................................22

UCC Article 9.....................................................................................................................21, 24

<u>Other Authorities</u>

Fed. R. Civ. P. 12(b)(1)..........................................................................................................1, 14

Plaintiff John D. Huber, as Trustee of the SageCrest Liquidating Trust ("Plaintiff"),[1] respectfully submits this memorandum of law in opposition to the motion of Defendants ACG Credit Company II, LLC ("ACG-II"), ACG Finance Company LLC ("ACG Finance"), Fine Art Finance, LLC ("Fine Art Finance"), Art Capital Group, LLC ("Art Capital LLC"), Art Capital Group, Inc. ("Art Capital Inc."), ACG Credit Company, LLC ("ACG-I" and, together with ACG-II, Fine Art Finance, ACG Finance, Art Capital LLC, and Art Capital Inc., the "Peck-controlled Entities"), and Ian S. Peck ("Peck" and, together with the Peck-controlled Entities, "Defendants") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) (the "Motion to Dismiss").

## Preliminary Statement

The Motion to Dismiss has no legal or factual merit and is easily exposed as Defendants' latest ploy to adjourn the trial on June 18th.

Defendants' arguments on the Motion to Dismiss are belied by the unambiguous agreements between Plaintiff and ACG-II.  It is black letter law that upon a breach, the non-breaching party has the right to sue for damages, which is exactly what Plaintiff has done in these cases.  Defendants have admitted that they breached their court-ordered obligations to pay to Plaintiff the sums of (1) $6.7 million plus interest on November 19, 2008 and (2) $4.425 million on May 19, 2010.

---

[1]     Plaintiff is the successor-in-interest to SageCrest II, LLC ("SageCrest") because all of the assets of SageCrest (and others) were assigned to Plaintiff in accordance with the terms of a Plan of Reorganization.  The term "Plaintiff" includes Mr. Huber, the SageCrest Liquidating Trust, and SageCrest.

Plaintiff's agreements with Defendants also make clear that, upon a breach, Plaintiff is not obligated to take any action with respect to the collateral described in those agreements and that Plaintiff may simultaneously or exclusively pursue Defendants for any outstanding amounts owed.  Moreover, Defendants have not moved to dismiss any of the tort claims Plaintiff has asserted against them, which, regardless of the outcome of this Motion, must be tried before this Court.

Defendants' Motion is based on two cases that are not applicable to the claims at issue in this case and have been limited to a small set of RICO cases. Defendants' reliance upon these  cases only demonstrates the lengths to which they will go to avoid a trial on the merits and multiply these proceedings.

Further, to the extent that Defendants' Motion to Dismiss is premised on an argument that a Plaintiff must first liquidate the collateral underlying an obligation, Defendants are wrong.  First, Defendants were required to make payments to Plaintiff pursuant to a court order.  They failed to do this.  Second, the court-ordered settlement agreement does not require Plaintiff to do anything vis-à-vis the collateral.  Third, it is well settled that a creditor has the right to pursue multiple avenues of recovery.  A creditor can simultaneously pursue a money judgment as well as the liquidation of collateral.

Even assuming *arguendo* that Plaintiff had an obligation to liquidate the collateral first (which he does not), Plaintiff has liquidated all the collateral for the Assigned Loans (as defined below).  Unlike Plaintiff, Defendants failed to perform their contractual obligations and make payments to Plaintiff, and Defendants made

little, if any, effort to liquidate the collateral underlying the 2-Year Note (as defined below).  It cannot be disputed that Plaintiff has provided the data and information sufficient to demonstrate its damages and, notwithstanding Defendants' claims to the contrary, Plaintiff's damages are certain — as of March 31, 2014, Defendants owe $2,663,407.10 on the Assigned Loans (plus attorneys' fees, costs, and expenses) and $3,710,154.20 on the 2-Year Note (plus attorneys' fees, costs, and expenses). Plaintiff will prove such damages at the trial beginning on June 18, 2014.

Finally, Peck issued a guarantee of collection of $1,000,000 of the amount due under the 2-Year Note (the "Peck Personal Guarantee"), which became due if the collateral underlying the 2-Year Note did not satisfy the underlying $4.425 million obligation.  Defendants sought to obstruct Plaintiff's efforts to liquidate that collateral by failing to deliver the required appraisals.  Because of Defendants' breach, Plaintiff is excused from any obligations to liquidate the collateral under the Peck Personal Guarantee before it becomes effective.  Even if those conditions were not excused, the collateral for the 2-Year Note has either been sold, cannot be sold, or Defendants have refused to sell the pieces of collateral that remain in their possession.  Accordingly, Plaintiff's claims relating to the Peck Personal Guarantee are ripe for trial.

## Relevant Facts

### A.    The Prior ACG Litigation

After ACG-I and ACG-II failed to pay over $40 million to SageCrest pursuant to a Revolving Credit Agreement, SageCrest commenced an action against many of the Defendants herein, captioned *SageCrest II, LLC v. ACG Credit Company, LLC, et al.*, Index No. 600195/07, in the Supreme Court of the State of New York, County of New York (the "Prior ACG Litigation").  (Friedman Decl. Ex. 1, ¶ 24.)[2] The defendants in the Prior ACG Litigation (collectively, the "Prior ACG Litigation Defendants") made a belated production of limited, redacted bank account records, which showed that ACG-I and Art Capital Inc. had received over $14.5 million that they were obligated to turnover to SageCrest.  (Friedman Decl. Ex. 1, ¶¶ 26-27.) Rather than do so, the Prior ACG Litigation Defendants depleted the accounts that received the approximately $14.5 million to almost nothing.  (Friedman Decl. Ex. 1, ¶ 28.)

Subsequently, SageCrest sought and obtained an Order of Attachment (the "Order of Attachment").  (Friedman Decl. Ex. 1, ¶¶ 29-31, 34-35.)  At the hearings on motions relating to the Order of Attachment, two justices found that the failure of Peck and his companies to remit the funds to SageCrest demonstrated an intent to defraud SageCrest and dissipate assets.  (Friedman Decl. Ex. 1, ¶¶ 31-35.)  In fact, during the confirmation hearing relating to the Order of Attachment, Justice

---

[2]    "Friedman Decl." refers to the Declaration of Robert S. Friedman in Opposition to Defendants' Motion to Dismiss, dated April 15, 2014.

Helen Freedman stated with respect to Peck that: "I think your client is dissipating assets and I'm concerned about that."  (Friedman Decl. Ex. 1, ¶ 34.)  At the hearing on Defendants' motion for reargument on the Order of Attachment, Justice Karla Moskowitz found that Plaintiff had set forth "enough to show an intent to defraud SageCrest II here and frustrate the enforcement of any judgment SageCrest II would get here."  Justice Moskowitz "also found . . . that there is a likelihood of success on the merits." (Friedman Decl. Ex. 1, ¶ 35.)

Subsequently, SageCrest and the Prior ACG Litigation Defendants reached a settlement, which was memorialized in a handwritten agreement (the "Agreement") which, among other things, required ACG-II to make payments to SageCrest totaling $29.925 million, to be paid as follows: $21 million at closing, $4.5 million in six months, and another $4.425 million in two (2) years.  (Friedman Decl. Ex. 1, ¶ 38.)  Upon receipt of the $21 million at closing, SageCrest agreed it would release the Order of Attachment.  (Friedman Decl. Ex. 1, ¶ 38.)

Almost from the moment that SageCrest provided the drafts of the documentation until the date an agreement was signed — a period lasting over three (3) months — the Prior ACG Litigation Defendants did their best to try to alter and/or change the terms of the Agreement and delay the payment obligations of ACG-II.  (Friedman Decl. Ex. 1, ¶ 42.)  Eventually, after a number of motions were filed and numerous hearings and sessions with the New York court and a mediator, the Prior ACG Litigation Defendants and Fine Art Finance agreed to certain terms and restrictions and to make representations and warranties with

respect to deferring the payment of $6.7 million until six months after closing. (Friedman Decl. Ex. 1, ¶¶ 45-46.)

## B.    The So-Ordered Settlement Stipulation

On May 19, 2008, SC II and many of the Defendants executed the Settlement Stipulation and Mutual Release (the "So-Ordered Settlement Stipulation"). (Pires Decl. Ex. 1.)[3] The So-Ordered Settlement Stipulation was executed by, among others, SageCrest, Peck, ACG-I, ACG-II, ACG Finance, Art Capital LLC, and Fine Art Finance, and was subsequently "so ordered" by the Honorable Eileen Bransten of the Supreme Court of the State of New York, New York County, and entered by the Clerk of that Court. Accordingly, the So-Ordered Settlement Stipulation is a court order that requires Defendants to comply with the obligations contained therein.

Defendants were obligated to make payments totaling $29,925,000, plus interest, to Plaintiff on certain dates. The relevant payments at issue in these actions are (1) $6,700,000 (the "Balance") plus interest (the "Additional Interest") that was due on November 19, 2008 pursuant to the So-Ordered Settlement Stipulation and (2) $4,425,000 that was due on May 19, 2010 pursuant to the So-Ordered Settlement Stipulation and a note that was executed by Peck, as the President of ACG-II (the "2-Year Note").[4] Defendants failed to make either of these

---

[3]    "Pires Decl." refers to the Declaration of Philip C. Pires, dated March 25, 2014.

[4]    ACG-II was the obligor under the So-Ordered Settlement Stipulation. At trial, Plaintiff will prove that the obligations of ACG-II are the obligations of

(footnote continued…)

payments.  Section 4(d) of the So-Ordered Settlement Stipulation states:  "The

Collateral Assignment shall remain as a placeholder for a period of six (6) months

from the Closing Date … at which time ACG-II <u>is required to wire transfer the</u>

<u>Balance and any Additional Interest</u> … in immediately available funds <u>to</u>

<u>SageCrest</u>."  (Pires Decl. Ex. 1, § 4(d), at pg. 7 (emphasis added).)  There is no

caveat or exception to that requirement.  Similarly, Section 2(c) of the So-Ordered

Settlement Stipulation provides that "ACG-II agrees to execute and deliver the [2-

Year Note] …, which note provides, *inter alia*, that <u>ACG-II will pay SageCrest the</u>

<u>sum of $4,425,000.00 on [May 19, 2010]</u>."  (Pires Decl. Ex. 1, § 2(c), at pg. 4

(emphasis added).)  The 2-Year Note is an unconditional promise to pay $4.425

million to Plaintiff on May 19, 2010:

---

(footnote continued…)

     all of the other Defendants because Defendants are alter egos of one another.
Because this is a response to a motion to dismiss, Plaintiff is not submitting
the evidence to support this remedy, but Defendants' alter ego status is
supported by substantial evidence developed in this action, including
admissions by Peck that the Peck-controlled Entities do not maintain their
own corporate identity, operate at the same address, use the same employees,
sell art and other property on behalf of one another without written
agreements, and pool funds in amalgamated bank accounts without
accounting to each other.  In fact, the Honorable Katherine B. Forrest of the
United States District Court for the Southern District of New York held,
based on less substantial evidence than will be introduced at the trial of these
actions, that the Peck-controlled Entities (and others) are "a corporate
melting pot – a stew of different companies, controlled and dominated by one
man, none of which respected the formal differences between their operations
that would have entitled Peck or his companies to take best advantage of the
insulations of corporate form." (Friedman Decl. Ex. 2, pg. 4-5.)  Judge Forrest
later vacated that portion of her decision pursuant to the request of the
parties to the litigation in order to permit the parties to settle and avoid an
appeal.  However, Judge Forrest's findings remain meaningful.

> FOR VALUE RECEIVED, ACG CREDIT COMPANY II, LLC … hereby <u>unconditionally promises to pay to the order of SageCrest II, LLC … the principal sum of</u> Four Million Four Hundred Twenty-Five Thousand Dollars (<u>$4,425,000.00</u>), or less as a result of a pre-payment, the principal amount outstanding … <u>on May 19, 2010</u>."

(Pires Decl. Ex. 2, at pg. 1 (emphasis added).)  Accordingly, ACG-II agreed to, and was ordered to, pay $6.7 million plus interest and $4.425 million to SageCrest.

Defendants assigned certain collateral to SageCrest as security for the Balance and granted SageCrest a security interest in other collateral securing the 2-Year Note.  The Balance was secured by, among other things, an assignment (the "Assignment") by Fine Art Finance and ACG Finance to Plaintiff of, among other things, Fine Art Finance's and/or ACG Finance's rights to receive all monthly principal and interest payments and/or any sale proceeds generated by five (5) unencumbered loans purportedly having an outstanding principal balance of at least $6.7 million as set forth in Exhibit K to the So-Ordered Settlement Stipulation (individually, an "Assigned Loan" and collectively, the "Assigned Loans").[5] (Pires Decl. Ex. 4.)  The Assigned Loans were purportedly secured by 98 pieces of collateral with an alleged value of approximately $14 million (the "Assigned Collateral").  (Pires Decl. Exhibit 1 §§ 2-4; Pires Ex. 5.)[6]  The 2-Year Note was

---

[5] The loans were to Barquet Group, Inc. ("Barquet"), Evan Tawil ("Tawil"), Alastair Crawford, LLC and Alastair Crawford ("Crawford"), Enrico Navarro, and Lawrence J. Daitch.  The Daitch loan was paid off before Plaintiff took over the servicing of the loans.

[6] As the So-Ordered Settlement Stipulation makes clear, Defendants lost any and all interest that they might have in the Assigned Loans until Plaintiff
(footnote continued…)

secured by, among other things, a first priority, perfected security interest in and lien on the proceeds of loans to three borrowers (Veronica Hearst, Vernon Bailey, and Peter Socolof) and the collateral for those loans, a judgment against American Furniture and certain furniture (the "Gill Furniture Lot", eight paintings owned by ACG-II, (the "IPFP Collateral"), and a $1 million personal guarantee by Peck. (Pires Decl. Ex. 1, § 2(c); Pires Decl. Exs. 2, 3, and 7.)  The Peck Guarantee required Defendants to provide appraisals of the collateral to Plaintiff, which Defendants failed to do.  (Friedman Decl. Ex. 3, at 288:2-292:14.)

While the amounts owed to Plaintiff were secured by the collateral underlying both the Assigned Loans and the 2-Year Note, and Plaintiff was entitled to pursue claims and collect on that collateral upon Defendants' default, the So-Ordered Settlement Stipulation does not require that Plaintiff pursue the collateral before or in lieu of seeking to collect directly from Defendants.  In fact, the Collateral Assignment states that:

> It is expressly understood and agreed, however, that [Plaintiff] shall not be required or obligated in any manner to make any demand or to make any inquiry as to the nature or sufficiency of any payment received by it, or to present or file any claim or take any other action to collect or enforce the payment of any amount which may have been assigned to [Plaintiff] or to which [Plaintiff] may be entitled hereunder at any time or times.

---

(footnote continued…)

  receives payment of the Balance, the Additional Interest, and any collection costs that Plaintiff is entitled to recover.  (Pires Decl. at Exhibit 5.)

(Pires Decl. Ex. 5, at pg. 1-2 (emphasis added).)  The 2-Year Note similarly provides that Plaintiff "may pursue any and all remedies available to [Plaintiff] under the Settlement Stipulation, at law, in equity, by contract or otherwise against the Collateral as defined [t]herein."  (Pires Decl. Ex. 2, at pg. 2 (emphasis added).)  Thus, as discussed in further detail below, Plaintiff was entitled, under the law and the So-Ordered Settlement Stipulation, to pursue payment through an action against Defendants for breach of the So-Ordered Settlement Stipulation, by enforcing against the collateral underlying the 2-Year Note, or both.  In fact, while Plaintiff had the option to takeover the collection and enforcement of the collateral underlying the 2-Year Note, pursuant to Section 15(b)(ii) of the So-Ordered Settlement Stipulation, he was not required to do so.  (Pires Decl. Ex. 1, § 15(b)(ii), at pg. 22 ("Following a Default under the 2-Year Note, [Plaintiff] may takeover the collection, enforcement, or execution…".).)  Accordingly, Plaintiff had no obligation to collect anything on the collateral.

## C.    Defendants Fail To Pay The Balance
## And Plaintiff Services The Assigned Loans

ACG-II did not pay the Balance and the Additional Interest to SageCrest on November 19, 2008 (Friedman Decl. Exs. 1 & 4, at ¶¶ 89.)  SageCrest sent, and ACG-II, Fine Art Finance, and ACG Finance received a Notice of Default that SageCrest sent pursuant to the So-Ordered Settlement Stipulation.  (Friedman Decl. Exs. 1 & 4, at ¶¶ 90-91.)  SageCrest subsequently exercised its rights, pursuant to the So-Ordered Settlement Stipulation and the Collateral Assignment, to service the Assigned Loans.

On January 21, 2009, SageCrest commenced an action against Defendants in the Supreme Court of the State of New York, New York County, Index No. 600166/2009 (the "Assigned Loan Action").  In the Assigned Loan Action, SageCrest sought a temporary restraining order, a preliminary injunction, and turnover of the Assigned Collateral because Defendants refused to voluntarily do so.  Justice Bransten conducted an evidentiary hearing on the motion, and during Peck's examination, Justice Bransten suggested that Defendants reach a consensual resolution because she did not find Peck's testimony to be truthful.  (Friedman Decl. Ex. 1, at ¶ 168 ("And the point that I'm making is that I believe that Peck who wasn't exactly the most forthcoming witness we've ever met in this courtroom, I believe that Peck basically implied that these monies were basically due SageCrest.")  Faced with no real defenses and credibility issues, Defendants agreed to turnover the Assigned Collateral and escrow funds that should have been turned over to SageCrest.

The evidence at trial will show that Plaintiff has been incredibly diligent in pursuing the Assigned Collateral, and has extracted considerable value through those diligent efforts.  In fact, despite the fact that Plaintiff was under no obligation to take any action to recover on the Assigned Collateral, Plaintiff's efforts have reduced the outstanding balance that Defendants owe on their $6.7 million Assigned Loan obligation.  After reducing the Balance, Additional Interest, and collection costs (all the attorneys' fees and costs incurred pursuing Crawford, Tawil, and Barquet) by all amounts collected, Plaintiff is still owed $2,663,407.10

(exclusive of attorneys' fees and costs incurred in these actions) as of March 31,

2014.  (Friedman Decl. Ex. 5, at SCII_045261.)

**D.     Defendants Default On The 2-Year Note**

On May 19, 2010, ACG-II failed to pay $4,425,000 due and owing under the

2-Year Note.  On May 20, 2010, SC II sent a Notice of Payment Default to

Defendants and their counsel, giving ACG-II five (5) business days to cure the

payment default.  ACG-II did not cure the payment default, and admits it has not

paid SC II the amount due and owing. (Friedman Decl. Ex. 6, at pg. 7-8; Friedman

Decl. Exs. 7-8, at ¶¶ 38, 55, 58.)

Plaintiff did not exercise his option to service the loans or collect on the

collateral pledged as security for the 2-Year Note (except for six pieces of the IPFP

Collateral) based, in large part, on the fact that another entity controlled by Peck

purportedly sold collateral for the Hearst loan, a $2 million loan, for $450,000.

(Friedman Decl. Ex. 9.)  Peck testified that Defendants have not been able to sell

the Bailey and Socolof collateral and that the Gill Furniture Lot has been sold for

an undisclosed amount (but Defendants have not remitted the proceeds to Plaintiff

in violation of the So-Ordered Settlement Stipulation).  (Friedman Decl. Ex. 10, at

74:17-77:15, 79:11-80:20, 83:6-85:11, 180:8-182:11.)  Defendants purportedly sold

one piece of the IPFP Collateral, Julian Schnabel's *Strong Cocktails*, for $75,000.

(Friedman Decl. Ex. 11, at 134:19-135:19.)

Plaintiff obtained five pieces of the IPFP Collateral pursuant to what

Plaintiff believed was going to be a settlement of these cases.  After Plaintiff

provided drafts of the agreement, Defendants again refused to sign the agreements.

Accordingly, Plaintiff attempted to sell all five pieces.  Plaintiff was successful in placing four pieces into auctions, but only three pieces sold.  (Friedman Decl. Ex. 12.)  Plaintiff has tried to sell the two remaining pieces of IPFP Collateral in his possession, but no auction house is interested.  (Friedman Decl. Exs.13.)  To Plaintiff's knowledge, Defendants still have possession of one piece of the IPFP Collateral, a piece by Anne Redpath, which Defendants have refused to turnover.

### E.   Defendants Lose Their Malpractice Claim Against One Of Their Former Attorneys

Hahn & Hessen, LLP served as counsel for the Prior ACG Litigation Defendants.  Apparently, the Prior ACG Litigation Defendants (and other entities controlled by Peck) failed to pay over $800,000 in legal fees and expenses owed to Hahn & Hessen.  Hahn & Hessen commenced an action to recover those fees, and the defendants therein (which include all of Defendants herein) asserted a malpractice counterclaim arising out of the So-Ordered Settlement Stipulation.  In particular, the defendants in the Hahn & Hessen action alleged that the firm committed malpractice because Plaintiff commenced these actions and the Hahn & Hessen defendants contended that sole remedy for any nonpayment by ACG-II to Plaintiff was for Plaintiff to collect on the underlying collateral.  Apparently, discovery was taken and Hahn & Hessen ultimately moved for summary judgment. In November 2013, the court granted summary judgment to Hahn & Hessen and held that the collateral was not the sole recourse for Plaintiff because, among other reasons, the So-Ordered Settlement Stipulation plainly and unambiguously provides otherwise.  (Friedman Decl. Ex. 14.)

## Argument

## I.

### Plaintiff's Claims Are Ripe Because Defendants Breached The So-Ordered Settlement Stipulation

On a motion to dismiss pursuant to Rule 12(b)(1), "it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that" jurisdiction is proper. *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) (quotation omitted) (reversing Rule 12(b)(1) dismissal on the basis of standing). After discovery has taken place, "the plaintiff bears the ultimate burden of establishing jurisdiction by a preponderance of the evidence." *Green Party of Conn. v. Garfield*, 537 F. Supp.2d 359, 364 (D. Conn. 2008) (Underhill, J.) (finding that plaintiffs alleged sufficient injury to confer standing).

The issue of whether claims are ripe for adjudication is "a jurisdictional question, which may properly [be] considered on a motion to dismiss pursuant to Rule 12(b)(1)." *Fischbach & Moore Elec. v. Bell BCI Co.*, 2004 WL 1811392, at *5 (W.D.N.Y. Aug. 11, 2004) (denying motion to dismiss on the basis of ripeness) (citation omitted). In order to demonstrate that a claim is ripe, "it is the plaintiff's burden to show that the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to justify judicial resolution." *Sea Tow Servs. Int'l, Inc. v. Pontin*, 472 F. Supp. 2d 349, 357 (E.D.N.Y. 2007). Here, Plaintiff has demonstrated beyond any doubt that his claims for nonpayment are ripe. Defendants have admitted that they failed to pay over $10 million that they were

ordered to pay pursuant to the So-Ordered Settlement Stipulation.  Defendants'
argument that Plaintiff's claims in both actions are not ripe is wrong because a
breach of contract case is ripe immediately upon an alleged breach.

Stipulations of settlement are essentially contracts that are interpreted
according to general principles of contract law.  *See Sharp v. Stavisky*, 221 A.D.2d
216, 217, 633 N.Y.S.2d 488, 489 (1st Dep't 1995).  Thus, failure to make a payment
under a settlement stipulation constitutes a material breach of a contract and,
when that stipulation has been "so ordered", contempt of court.  *See Gucci Am., Inc.
v. Sample Sale Wholesalers, Ltd.*, 39 A.D.3d 271, 272, 835 N.Y.S.2d 26, 27 (1st Dep't
2007); *see also McKenzie v. Vintage Hallmark, PLC*, 302 A.D.2d 503, 504, 755
N.Y.S.2d 288, 289 (2d Dep't 2003).  The breach of a "so ordered" settlement
stipulation is contempt of court because a court-ordered settlement stipulation
constitutes a clear and unequivocal mandate of the court.  *See City Wide Sewer &
Drain Serv. Corp. v. Carusone*, 39 A.D.3d 687, 688, 834 N.Y.S.2d 283, 284 (2d Dep't
2007) (holding that a settlement stipulation placed on the record in open court that
was negotiated between represented parties as part of an underlying breach of
contract action was an enforceable unequivocal order of the court).[7]

---

[7]     It is well established that New York courts are free to take judicial notice of
previous orders in a particular matter.  *See Samuels v. Montefiore Med. Ctr.*,
49 A.D.3d 268, 268, 852 N.Y.S.2d 121, 122 (1st Dep't 2008) ("Even though the
order is dehors the record on appeal, it is included in the motion court's files,
and we take judicial notice of it."); *Rotunno v. Stiles*, 37 A.D.3d 582, 584, 829
N.Y.S.2d 653, 655 (2d Dep't 2007) (taking judicial notice of prior court order).

Under New York law, which governs the So-Ordered Settlement Stipulation, it is well settled that "a breach of contract case is ripe immediately upon the alleged breach, even where damages remain uncertain." *Sea Tow Servs. Int'l*, 472 F. Supp. 2d at 357 (rejecting defendants' argument that breach of contract claims were not ripe and denying motion to dismiss) (quoting *Argonaut P'ship, L.P. v. Bankers Tr. Co. Ltd.*, 1997 WL 45521, at *5 (S.D.N.Y. Feb. 4, 1997)).[8]  Accordingly, a plaintiff may sue for damages before the final amount of those damages has been determined, because"[t]he fact that damages have not yet been fixed does not negate the very real rights and liabilities associated with [that plaintiff's] underlying claims." *Greenlight Reinsurance, Ltd. v. Appalachian Underwriters, Inc.*, 958 F. Supp. 2d 507, 518 (S.D.N.Y. 2013) (finding that claims to enforce guarantees were ripe despite the fact that there had been no finding with respect to liability on the underlying obligation).

Here, Plaintiff's claims for breach of the So-Ordered Settlement Stipulation are ripe because Defendants failed to pay pursuant to that court order.  Defendants admit that:  (1) the So-Ordered Settlement Stipulation was executed by, among others, SageCrest, Peck, ACG-I, ACG-II, ACG Finance, Art Capital LLC, and Fine Art Finance, and was subsequently "so ordered" by the Justice Bransten (Friedman

---

[8]     This principal is equally applicable to Plaintiff's tort claims. *See Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007) ("As we have observed, under general principles of tort law, a cause of action accrues when conduct that invades the rights of another has caused injury.  When the injury occurs, the injured party has the right to bring suit for all of the damages, past, present and future, caused by the defendant's acts.") (citation and quotation omitted).

Decl. Exs. 1, 4 at ¶ 53); (2) the So-Ordered Settlement Stipulation was entered by

the Clerk of the Court on or about May 19, 2008 Bransten (Friedman Decl. Exs. 1, 4

at ¶ 55); (3) ACG-II did not pay the Balance and the Additional Interest to

SageCrest on November 19, 2008 (Friedman Decl. Exs. 1, 4 at ¶ 89); and (4)

SageCrest sent, and ACG-II, Fine Art Finance, and ACG Finance received a Notice

of Default (Friedman Decl. Exs. 1, 4 at ¶¶ 90-91.)  Thus, ACG-II has breached its

obligation to pay the Balance and, therefore, Plaintiff's claims for such breach are

ripe.[9]

Similarly, ACG-II failed to pay to Plaintiff the sum of $4.425 million on May

19, 2010, despite being ordered to do so in the So-Ordered Settlement Stipulation,

and ACG-II "unconditionally promis[ing] to pay" Plaintiff that amount.  (Pires Decl.

Ex. 2.)  "Under New York law, a note is a negotiable instrument if it is signed by the

maker and contains an unconditional promise to pay a sum certain in money at a

specific time to order."  *Mulholland v. GMZ Assocs., Ltd.*, 2004 WL 489062, at *1

(S.D.N.Y. Mar. 11, 2004) (granting summary judgment on unpaid promissory notes)

---

[9]     As alleged in the Amended Complaint and the Adversary Complaint,
Defendants committed numerous other breaches of the So-Ordered
Settlement Stipulation as well as committed tortious acts.  Those claims are
not identified here because they are not the subject of the Motion to Dismiss.
Regardless of the outcome of this Motion to Dismiss, which for the reasons
discussed herein should be denied in its entirety, Trial with respect to
Plaintiff's tort claims and other claims under the So-Ordered Settlement
Stipulation is moving forward.  Because those claims will be considered by
this Court on substantially the same factual record as the claims Defendants
seek to dismiss by this Motion, hearing all claims alleged in this action
during the upcoming trial will serve judicial economy and finally resolve the
disputes between the parties that have arisen from Defendants' failure to
abide by their obligations under the So-Ordered Settlement Stipulation.

(citing N.Y.U.C.C. § 3-104).  An unconditional promissory note is not made
conditional by virtue of the fact that the promise to pay is secured by collateral. *See*
N.Y.U.C.C. § 3-105(1)(e).  To be entitled to judgment on a secured promissory note,
a plaintiff need only prove the existence of the note and default by the defendant.
*See Valley Nat'l Bank v. Oxygen Unlimited, LLC*, 2010 U.S. Dist. LEXIS 137587
(S.D.N.Y. 2010) (granting summary judgment and payment to plaintiff where
plaintiff "presented sufficient evidence of execution of the [n]ote" and further
"asserted, and Defendant does not dispute, that Defendant has failed to pay");
*Miller v. Steloff*, 686 F. Supp. 91, 93-4 (S.D.N.Y. 1988) (granting summary judgment
to plaintiff to recover payment following default on a promissory note where the
note contained an unconditional promise to pay and plaintiff demonstrated
existence of the note and subsequent default).

Here, it is undisputed that Defendants have failed to pay the amounts due
under the 2-Year Note. (Friedman Decl. Exs. 7-8, at ¶¶ 38, 55, 58.)  In addition,
Judge Shiff has already ruled that Plaintiff demonstrated a likelihood of success on
the merits on ACG-II's failure to pay the 2-Year Note—a standard that significantly
exceeds the requirement on this motion that Plaintiff show by a preponderance of
the evidence that Plaintiff's claims are ripe for judicial resolution.  The Bankruptcy
Court held such based, in part, on Defendants' admission that they failed to pay the
2-year Note on May 19, 2010 and failed to cure that default.  This is law of the case.
(*See* Friedman Decl. Ex. 6, at 7-8.)

The two cases that Defendants rely upon to support of their argument are inapposite because the holdings are expressly limited to RICO claims and address only out-of-pocket fraud damages for RICO claims.  In *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994), the plaintiff brought a RICO claim alleging predicate acts involving a fraudulent mortgage scheme.  The *Gelt* Court held that "a plaintiff who claims that a debt is uncollectible because of the defendant's conduct can only pursue *the RICO treble damages remedy* after his contractual rights to payment have been frustrated. *Id.* (emphasis added)

Similarly, in *Goldfine v. Sichenzia*, 118 F. Supp.2d 392, 395 (S.D.N.Y. 2000), the district court found that the plaintiffs had "brought their complaint prematurely, in that they [had] not yet suffered any RICO injury."  Again, the court in *Goldfine* made clear that the dismissal was particular to RICO claims.  Relying on the holding in *Gelt*, the court determined that before the plaintiffs in *Goldfine* could "have standing to treble their alleged damages under the provisions of RICO, they must first establish, through the traditional legal means available to them, that they in fact suffered damage." *Id.* at 399 (quotation omitted) ("As Plaintiffs cannot allege 'clear and definite damages' to their business or property, *they lack standing under RICO, and their RICO causes of action must be dismissed.*" (emphasis added)).  Like the Second Circuit's holding in *Gelt*, the holding of *Goldfine* is limited to the RICO context and is not applicable to this case.

Indeed, even the standards for RICO claims have been relaxed in decisions after *Gelt*.  For example, the exact amount of a RICO injury does not need to be

established. *See, e.g., In re Merrill Lynch Ltd. P'ships Litigation*, 154 F.3d 56, 59 (2d Cir. 1998); *In re Bennett Funding Group, Inc.*, 367 B.R.302, 328 (Bankr. N.D.N.Y. 2007) ("in order for a RICO plaintiff's claim to accrue, it 'need only be injured, not that the amount of damages be certain.'") (quoting *In re Merrill Lynch Ltd. P'ships Litigation*, 7 F. Supp. 2d 256, 263-64 (S.D.N.Y. 1997)).

Defendants notably fail to cite *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 759 F. Supp.2d 363, 384-85 (S.D.N.Y. 2010) which directly contradicts their novel theory for dismissal.  In IMG, a group of defendants sought dismissal of a fraud claim arguing that plaintiffs had failed to sufficiently allege out-of-pocket fraud losses under *Gelt*.  The district court declined to dismiss finding that "although the actual amount of loss is not certain, Plaintiffs have at least alleged that $11 million in loans are in default and that some of the loans . . . have been foreclosed at a loss."

Because Defendants have admitted their failure to pay and the Bankruptcy Court has already held that Plaintiff has a likelihood of success on the merits, Defendants' arguments regarding ripeness are entirely without merit.

**II.**

**Plaintiff Is Entitled To Simultaneously Sue For
Damages And Attempt To Collect On Collateral**

Defendants appear to be challenging (1) the amount of damages at issue, which, as demonstrated above, is not a ripeness issue and (2) whether Plaintiff's sole remedy is to collect against the collateral rather than from Defendants. Defendants' attack on both fronts is misplaced because Plaintiff is entitled to both sue for breach and collect on the collateral. The So-Ordered Settlement Stipulation and the negotiable instruments annexed thereto do not provide that enforcement against the collateral is Plaintiff's only remedy. Indeed, Defendants have not identified any such provisions in the So-Ordered Settlement Stipulation because there are no such provisions. The only requirement in the So-Ordered Settlement Stipulation is that any collection on the collateral must be deducted from Defendants' obligations, which is what Plaintiff has done. Further, the *Hahn & Hessen* court has already held that Defendants' argument that the sole recourse is to the collateral is without merit and, thus, collateral estoppel applies.

Even assuming *arguendo* that UCC Article 9 applies to the Assigned Loans (which Plaintiff does not concede),[10] it is well established that a secured creditor is entitled to pursue a money judgment for the amount owed and, simultaneously

---

[10]    Article 9 does not apply because SageCrest owned these loans as of May 19, 2008 when the Collateral Assignment was executed. Therefore, SageCrest did not need to foreclose after ACG-II's default in November 2008. Therefore, the obligations contained in Article 9, such as to dispose of the collateral in a commercially reasonable manner, are inapplicable to the Assigned Loans and Assigned Collateral.

attempt to collect on the collateral, so long as any amounts collected on the collateral are deducted from the total amount owed.  *See* U.C.C. § 9-601(a)(1) ("A secured party may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure."); U.C.C. § 9-601(c) ("The rights under subsections (a) and (b) are cumulative and <u>may be exercised simultaneously.</u>") (Emphasis added).  "A secured creditor owes no duty to anyone to foreclose its lien on a borrower's assets after a default." *Chemtex, LLC v. St. Anthony Enterprises, Inc.*, 490 F. Supp. 2d 536, 548 (S.D.N.Y. 2007).  Thus, a secured creditor is not required to liquidate collateral to reduce the debt secured by that collateral before proceeding on the guaranty or note at issue, particularly where the collateral was not in the creditor's possession. *See Chem. Bank v. Kaufman*, 142 A.D.2d 526 (1st Dep't 1988).  In fact, "secured parties are permitted to retain collateral while awaiting payment on loan obligations." *Sotheby's Financial Servs., Inc. v. Baran*, 2003 WL 21756126, at *8 (S.D.N.Y. July 29, 2003); *see also McGrath v. Carnegie Trust Co.,* 221 N.Y. 92, 95 (1917) (Cardozo, J.) (stating that "[a] creditor may not be required to surrender any part of his collateral till payment has been made in full"); *Reich v. Bowery Sav. Bank,* 183 A.D.2d 884, 885-886 (2d Dep't 1992) (holding that bank was entitled to hold collateral from personal loan even after personal loan was paid because corporate loan was in default).

Here, assuming that Plaintiff is a secured creditor on the Assigned Loans, Plaintiff is not required to do anything relating to the Collateral.  While the

Collateral Assignment grants Plaintiff the right to pursue claims and collect on the

collateral, such actions are not required:

> It is expressly understood and agreed, however, that
> [Plaintiff] shall not be required or obligated in any
> manner to make any demand or to make any inquiry as to
> the nature or sufficiency of any payment received by it, or
> to present or file any claim or take any other action to
> collect or enforce the payment of any amount which may
> have been assigned to [Plaintiff] or to which [Plaintiff]
> may be entitled hereunder at any time or times.

(Pires Decl. Ex. 5, at pg. 1-2 (emphasis added).)  Similarly, Plaintiff had no

obligation to do anything vis-à-vis the collateral for the 2-Year Note. (*See* Pires Decl.

Ex. 2, at pg. 2) ("Plaintiff "may pursue any and all remedies available to [Plaintiff]

under the Settlement Stipulation, at law, in equity, by contract or otherwise against

the Collateral as defined [t]herein.").  Accordingly, Plaintiff had no obligation to

collect anything on the collateral for either the Assigned Loans or the 2-Year Note.

Defendants' payment obligations are, however, absolute; therefore, they must

pay what is owed. (Pires Decl. Ex. 1, § 4(d), at pg. 7 ("The Collateral Assignment

shall remain as a placeholder for a period of six (6) months from the Closing Date …

at which time ACG-II is required to wire transfer the Balance and any Additional

Interest … in immediately available funds to SageCrest.") (emphasis added).)

Similarly, Section 2(c) of the So-Ordered Settlement Stipulation provides that

"ACG-II agrees to execute and deliver the [2-Year Note] …, which note provides,

*inter alia*, that ACG-II will pay SageCrest the sum of $4,425,000.00 on [May 19,

2010]." (Pires Decl. Ex. 1, § 2(c), at pg. 4 (emphasis added).)  The 2-Year Note is an

unconditional promise to pay $4.425 million to Plaintiff on May 19, 2010:

-23-

> FOR VALUE RECEIVED, ACG CREDIT COMPANY II,
> LLC … hereby <u>unconditionally promises to pay to the
> order of SageCrest II, LLC … the principal sum of</u> Four
> Million Four Hundred Twenty-Five Thousand Dollars
> ($4,425,000.00), or less as a result of a pre-payment, the
> principal amount outstanding … <u>on May 19, 2010</u>."

(Pires Decl. Ex. 2, at pg. 1 (emphasis added).)  There are no exceptions to those

obligations and, thus, ACG-II is still required to make the payments.  Given

Defendants' admissions that they failed to pay the Balance and the Additional

Interest as well as the money owed on the 2-Year Note, Plaintiff is entitled to

recover the amount outstanding on both obligations.

Plaintiff never took over the loans and collateral underlying the 2-Year Note

and had no obligation to do so. *See Chemtex, LLC*, 490 F. Supp. 2d at 548.  However,

even if Plaintiff were required to seek recovery from the collateral underlying the

2-Year Note before seeking to recover from Defendants, as discussed above, the

value of the collateral has already been exhausted.  To the extent any of the

collateral securing the 2-Year Note is further liquidated, it would merely reduce the

remaining the remaining $3,710,154.20 balance (exclusive of attorneys' fees and

costs) on the 2-Year Note as of March 20, 2014.  Should Defendants repay all of

their obligations to Plaintiff, they would be entitled to any remaining collateral

securing that debt.

Finally, even if SageCrest were deemed to have "foreclosed" on the Assigned

Loans and Article 9 of the UCC applies, SageCrest has taken commercially

reasonable efforts to collect on the Assigned Loans.  As discussed above, due to

Defendants' failure to pay the $6.7 million to SageCrest in November 2008,

SageCrest took over the servicing of the Assigned Loans.  At trial, Plaintiff will show that SageCrest has diligently attempted to collect on the Assigned Loans despite Defendants repeated interference with those loans.  Ultimately, Plaintiff's efforts to collect on the Assigned Loans significantly reduced the outstanding balance on the $6.7 million that Defendants agreed to pay under the So-Ordered Settlement Stipulation.

Plaintiff has diligently pursued the collateral underlying both Defendants' obligations with respect to the Assigned Loans and the 2-Year Note, despite the fact that Plaintiff was not required to do so.  While Plaintiff's efforts have reduced the balances owed by Defendants, as of March 31, 2014, Defendants still owe $2,663,407.10 on the Balance and Additional Interest, and $3,710,154.20 on the 2-Year Note, exclusive of the attorneys' fees, costs, and expenses incurred in these cases. (*See* Friedman Decl. Exs. 5, 12.)  Such damages are certain and Plaintiff will demonstrate those damages at trial.  Defendants' attempt to argue that Plaintiff must first seek to recover from the Assigned Collateral and the collateral underlying the 2-Year Note is contrary to the So-Ordered Settlement Stipulation and accompanying instruments, which explicitly state that Plaintiff is not limited to that collateral as his sole recourse to satisfy Defendants' obligations.

Moreover, this argument has been rejected in *Hahn &Hessen LLP v. Peck, et al.*, Index No. 603122/2008, which is pending in the Supreme Court of the State of New York.  There, Defendants' former counsel (which represented Defendants in connection with the So-Ordered Settlement Stipulation) sued many of the

Defendants herein for failure to pay for legal services.  The defendants in that case
asserted a malpractice claim based on their claim that the collateral for the
Assigned Loans and the 2-Year Note was supposed to be the sole recourse in the
event that Defendants defaulted on their payment obligations.  In November 2013,
the *Hahn & Hessen* court granted the law firm summary judgment on the
malpractice counterclaim, holding that the collateral was not Plaintiff's sole
recourse because Plaintiff never agreed to such an arrangement.  (Friedman Decl.
Ex. 14.)  That ruling bars Defendants from advancing that very same argument in
this action because collateral estoppel applies.

"Collateral estoppel . . . 'precludes a party from relitigating in a subsequent
action or proceeding an issue clearly raised in a prior action or proceeding and
decided against that party . . . whether or not the tribunals or causes of action are
the same.'" *Parker v Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (1999) (quoting
*Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984)).  Under the doctrine of
collateral estoppel, "once a court has decided an issue of fact or law necessary to its
judgment, that decision may preclude relitigation of the issue in a suit on a different
cause of action involving a party to the first case."  *San Remo Hotel, L.P. v. San
Francisco*, 545 U.S. 323, 336 n.16 (2005).  For collateral estoppel to apply: "(1) the
issues in both proceedings must be identical, (2) the issue in the prior proceeding
must have been actually litigated and actually decided, (3) there must have been a
full and fair opportunity for litigation in the prior proceeding, and (4) the issue
previously litigated must have been necessary to support a valid and final judgment

on the merits." *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986), *cert denied*, 480 U.S. 948 (1987).

In granting Hahn & Hessen summary judgment on the malpractice counterclaim, the *Hahn & Hessen* court rejected the defendants' arguments that the collateral was Plaintiff's sole recourse under the So-Ordered Settlement Stipulation, and held that there was no triable issue of fact because the facts demonstrated that Plaintiff never agreed to accept such a sole recourse provision and Defendants were aware of that fact. Accordingly, Defendants already litigated the issue of whether the collateral is Plaintiff's sole recourse, the *Hahn & Hessen* court granted summary judgment to Hahn & Hessen on that issue and rejected Defendants' argument. The summary judgment decision was rendered after discovery, and the resolution of that issue was necessary to support a judgment on the Defendants' malpractice counterclaim. Accordingly, collateral estoppel applies.

## III.

## Plaintiff Is Entitled To Collect On The Peck Personal Guarantee

Defendants argue that the enforcement of the Peck Personal Guarantee is not ripe because the conditions precedent have not yet taken place.  As with each of Defendants' other arguments, this theory is meritless on its face, contrary to the unambiguous documents and certainly not an issue of standing.  At best, the satisfaction of a condition precedent will be an issue at trial. *See TP Group, Inc. v. Wilson*, 1990 WL 52131, at *2-3 (S.D.N.Y. April 17, 1990) (determination as to whether defendants frustrated satisfaction of condition precedent is issue of fact for trial).   In any event, each of the conditions precedent to the enforcement of the Peck Personal Guaranty has been satisfied, or, to the extent that they have not been satisfied, Peck has wrongfully prevented them from being satisfied.

A party who frustrates a condition precedent to an agreement cannot then rely on the other party's failure to perform that condition precedent to escape its own obligations. *See In re Bankers Trust Co.,* 450 F.3d 121, 127-28 (2d Cir. 2006) ("One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition [and] will not be permitted to take advantage of his own wrong, [by] escap[ing] from liability for not rendering his promised performance"; affirming that trustee's frustration of condition precedent did not relieve its duty although ultimately finding that trustee's failure to perform did not cause noteholders' losses) (quotations omitted); *see also MBIA Ins. Corp. v. Cooperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, 2011 U.S. Dist. LEXIS 31307, at *42-43 (S.D.N.Y. 2011) ("It is well established that

a party to a contract cannot rely on the failure of another to perform a condition precedent where [the party itself] has frustrated or prevented the occurrence of the condition.") (quotations omitted).

The Peck Personal Guarantee required Defendants to deliver an appraisal for the  collateral underlying the 2-Year Note shortly after the So-Ordered Settlement Agreement was executed and another upon Defendants default.  It is undisputed that Defendants failed to do so.  (Friedman Decl. Ex. 3; Pires Decl. Ex. 7.)  Thus, Plaintiff is excused from any obligation to liquidate that collateral before the Peck Personal Guarantee is effective.

Even if Plaintiff had an obligation to attempt to liquidate the collateral, Plaintiff has done so.  As discussed above, and as will be shown at trial, all of the collateral underlying the 2-Year Note has been sold, cannot be sold, or has been improperly retained or converted by Defendants.  Aside from six pieces of the IPFP Collateral, Plaintiff elected not to take over the servicing of the loans underlying the 2-Year Note.  Defendants apparently sold all of the Hearst Collateral, one piece of the IPFP collateral by Julian Schnabel, and the Gill Furniture Lot. (Friedman Decl. Exs. 9-11.)  The proceeds from the Hearst Collateral and the Schnabel piece were applied to Defendants' outstanding obligations on the 2-Year Note, and Defendants wrongfully converted the proceeds from the Gill Furniture Lot in violation of the So-Ordered Settlement Stipulation. (Friedman Decl. Exs. 10, 12.)  Peck testified that he cannot sell the Bailey or Socolof collateral. (Friedman Decl. Ex. 10.)  Of the five

pieces of IPFP Collateral that Plaintiff possessed, three have been sold, and, despite Plaintiff's efforts, the other two cannot be sold. (Friedman Decl. Ex. 13.)

After applying the proceeds from the sale of all of the underlying collateral to Defendants' obligations on the 2-Year Note, a $3,710,154.20 balance (exclusive of attorneys' fees and costs) as of March 20, 2014 remains outstanding.  Accordingly, the conditions for invoking the Peck Personal Guaranty have been satisfied, and Plaintiff's claim against Peck based upon the that Guarantee are ripe for trial.

## Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order:  (1) denying the Motion to Dismiss in its entirety; (2) awarding Plaintiff his attorneys' fees and costs in responding to the Motion to Dismiss; and (3) granting Plaintiff such further and different relief as the Court deems just and proper.

Dated:  April 15, 2014          PLAINTIFF JOHN D. HUBER, as Trustee of the SageCrest Liquidating Trust

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: /s/Robert S. Friedman

      Robert S. Friedman (admitted *pro hac vice*)
      Mark E. McGrath (ct28814)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700

- and -

ZEISLER & ZEISLER, P.C.
James Berman (ct06027)
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: (203) 368-4234

## <u>CERTIFICATION OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS was electronically filed via ECF, which effects service upon all parties who have entered an appearance in this case.

Dated this 15th day of April, 2014.

/s/Robert S. Friedman