# EXHIBIT 3

```
                                                      Page 249
 1
 2          UNITED STATES BANKRUPTCY COURT
               DISTRICT OF CONNECTICUT
 3                BRIDGEPORT DIVISION
    --------------------------------X
 4  IN RE:                           CHAPTER 11
 5  SAGECREST II, LLC                CASE NO. 08-50754(AHWS)
    SAGECREST FINANCE LLC            CASE NO. 08-50755(AHWS)
 6  SAGECREST HOLDINGS LIMITED       CASE NO. 08-50763(AHWS)
    SAGECREST DIXON INC.,            CASE NO. 08-50844(AHWS)
 7
                                     JOINTLY ADMINISTERED
 8  DEBTORS.                         UNDER
                                     CASE NO. 08-50754(AHWS)
 9  --------------------------------X
    SAGECREST II, LLC,
10
                Plaintiff,
11
       -against-                     ADV. PROC. NO. 10-05042
12
    ACG CREDIT COMPANY, II, LLC, ACG
13  FINANCE COMPANY, LLC, FINE ART
    FINANCE, LLC., ART CAPITAL GROUP,
14  LLC, ART CAPITAL GROUP, INC., ACG
    CREDIT COMPANY, LLC, and IAN S.
15  PECK,
16              Defendants.
    --------------------------------X
17  (Continued on the next page.)
18       CONTINUED VIDEOTAPED DEPOSITION
19                    OF
20              IAN S. PECK
21              VOLUME III
22          New York, New York
23       Friday, November 19, 2010
24
    Reported by: AYLETTE GONZALEZ, CLR
25  JOB NO. 34872
```

1           IAN PECK

2       Q.    There were -- in connection with
3   the settlement stipulation, you also executed
4   two personal guarantees, correct?
5       A.    There are two limited collection
6   guarantees that can only be activated after
7   certain very specific requirements are met.
8       Q.    Those are two personal guarantees
9   in which you Ian Peck are obligated on,
10  correct?
11          MR. ROTH:  Objection.
12      A.    They're limited collection
13  guarantees that have very specific terms
14  associated with them that must be met before
15  they can be accessed, yes.
16      Q.    Okay.
17          MR. ROTH:  Which one are you going
18      for?
19          MR. FRIEDMAN:  Going for N.
20      Q.    If you could refer to Exhibit 1,
21  Plaintiff's 1 at Exhibit N, as in Nancy.
22          MR. ROTH:  Exhibit N, this
23      (indicating).
24      Q.    This is -- I have to give you the
25  Bates numbers, we already have it.

1              IAN PECK

2          Looking at Exhibit N to Plaintiff's

3    1, the last page of the exhibit, is that your

4    signature, Mr. Peck?

5          A.   Yes.

6          Q.   You signed this Limited Guarantee

7    of Collection on or about May 19, 2008,

8    correct?

9          A.   Yes.

10         Q.   Now, if you look at paragraph --

11   numbered paragraph number two, which is titled

12   Guarantee of Collection.

13              Do you see that?

14         A.   Yes.

15         Q.   If you go to B, if you could just

16   read that, what's in bold and capped.

17              MR. ROTH:   On both pages?

18              MR. FRIEDMAN:   Yes, take a run

19         through.

20         A.   You want me to read it privately?

21         Q.   Yes.

22         A.   Okay.

23         Q.   The 2B of the Limited Guarantee of

24   Collection contains a provision regarding an

25   appraisal by Gayle Skluzacek.

1           IAN PECK
2        Do you see that?
3    A.   Yes.
4    Q.   Do you know who Gayle Skluzacek is?
5 I'm sure I'm pronouncing it wrong, but do you
6 know who she is?
7    A.   Yes.
8    Q.   Who is she?
9    A.   She's a well-regarded art appraiser
10 in the art community.
11   Q.   In fact, she was an appraiser that
12 you insisted upon for -- to conduct the
13 appraisal that's referenced here, correct?
14   A.   Yes.
15   Q.   That's because you worked with her
16 before, correct?
17   A.   No.
18   Q.   You've never worked with her prior
19 to this?
20   A.   We have worked with her.
21        MR. ROTH:  Objection.  When you
22   say "this," do you mean --
23        MR. FRIEDMAN:  The agreement.
24   Q.   You've worked with her since?
25   A.   I don't recall if we worked with

Page 291

1        IAN PECK
2   her since, but you stated that the reason we
3   wanted her to be the appraiser under the
4   settlement agreement was because we'd worked
5   with her before and that's not the reason.
6        Q.   Understood. Understood. The
7   reason why she was well-respected, correct?
8             MR. ROTH:  Objection.
9        A.   She's well-respected. She's used
10  by the IRS and U.S. government for appraisal
11  purposes and she's widely regarded as one of
12  the best people in the field.
13       Q.   In addition to that and this isn't
14  the reason you selected her, but you had
15  worked with her before, correct?
16       A.   I believe that we had done certain
17  appraisal work with her before.
18       Q.   Now, was the appraisal that's
19  referenced here for the assigned loans ever
20  done, was it done?
21            MR. ROTH:  Objection.
22       A.   Was what done?
23       Q.   Well, this refers to an appraisal
24  that ACG shall request within five business
25  days of the closing date to be completed and

Page 292

1           IAN PECK
2  provided to lender within 90 days of the
3  affirmation?
4           MR. ROTH:  Could I have a copy of
5       the page you're reading from?
6           MR. FRIEDMAN:  You still have --
7           MR. ROTH:  Yes.
8           MR. FRIEDMAN:  Absolutely.
9       Q.   Was that request and appraisal ever
10 conducted?
11      A.   Well, no, because the request
12 happened after Sagecrest II forecloses on
13 the property and decides to liquidate after
14 collecting and securing the property.
15      Q.   Okay.
16           Well, let's look at the language.
17 It says, and I'm starting at A, on the fourth
18 line, "at the lower of (1) the fair market
19 value appraisal of each collateral piece to be
20 conducted by Gayle Skluzacek, AAA or another
21 appraiser selected by ACG II and paid by ACG
22 II, which appraisal ACG II shall request
23 within five business days of the closing date
24 and to be completed and provided to lender
25 within 90 days of the affirmation request by