# EXHIBIT 4

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT
### BRIDGEPORT DIVISION

| | | |
|---|---|---|
| SAGECREST II, LLC,<br><br>    Plaintiff,<br><br> -against-<br><br>IAN S. PECK, ACG CREDIT COMPANY II, LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE, LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP, INC., and ACG CREDIT COMPANY, LLC,<br><br>    Defendants. | : : : : : : : : : : : : : : : : : : : | 10 CV 4983<br><br>Adv. Proc. No. _____ |
| ACG CREDIT COMPANY II, LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE, LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP, INC., and ACG CREDIT COMPANY, LLC,<br><br>    Counterclaim-<br>    Plaintiffs/Third Party<br>    Plaintiffs,<br><br> -against-<br><br>SAGECREST II, LLC and ALAN MILTION,<br><br>    Counterclaim-<br>    Defendant/Third Party<br>    Defendant. | : : : : : : : : : : : : : : : : : : : | |

## ANSWER, COUNTERCLAIMS AND THIRD PARTY CLAIM

Defendants Ian S. Peck ("Peck"), ACG Credit Company II, LLC ("ACG-II"), ACG

Finance Company, LLC ("ACG Finance"), Fine Art Finance, LLC ("Fine Art Finance"), Art

Capital Group, LLC ("Art Capital LLC"), Art Capital Group, Inc. ("Art Capital Inc."), and ACG

Credit Company, LLC (ACG-I") (collectively, "Defendants"), by and through their undersigned

counsel, answers the Amended Complaint in this action as follows:

    1.    Deny the allegations in paragraph 1.

    2.    Deny the allegations in paragraph 2, except admit that SageCrest II, LLC

("SageCrest") commenced an action against several parties in New York State Supreme Court in

2007, which was ultimately resolved by settlement.

    3.    Deny the allegations in paragraph 3, except admit that SageCrest and Defendants

entered into a Settlement Stipulation and Mutual Release, dated May 19, 2008, with exhibits,

which was signed by SageCrest and Defendants and was "So Ordered" by Justice Bransten on

May 19, 2008 (the "So-Ordered Settlement Stipulation").

    4.    Deny the allegations in paragraph 4.

    5.    Deny the allegations in paragraph 5.

    6.    Deny the allegations in paragraph 6.

    7.    Deny the allegations in paragraph 7.

    8.    Deny knowledge or information sufficient to form a belief as to the truth of the

allegations contained in paragraph 8.

    9.    Deny the allegations in paragraph 9, except admit that Art Capital Group, LLC is

the sole member of ACG Credit Company II, LLC, ACG Finance Company, LLC, Fine Art

Finance, LLC, and ACG Credit Company, LLC, and that Peck is the President of the stated

entities.

    10.    Deny the allegations in paragraph 10, except admit the allegations in the first

sentences in paragraph 10, and that the sole member of ACG-II is Art Capital Group, LLC.

11.     Deny the allegations in paragraph 11, except admit the allegations in the first sentence, and that the sole member of ACG Finance Company, LLC is Art Capital Group, LLC.

12.     Deny the allegations in paragraph 12, except admit the allegations in the first sentence, and that the sole member of Fine Art Finance, LLC is Art Capital Group, LLC.

13.     Deny the allegations in paragraph 13, except admit the allegations in the first and third sentences.

14.     Deny the allegations in paragraph 14, except admit the allegations in the first sentence.

15.     Deny the allegations in paragraph 15, except admit the allegations in the first sentence, and that the sole member of ACG Credit Company, LLC is Art Capital Group, LLC.

16.     The allegations in paragraph 16 set forth legal conclusions that do not require a response.  Moreover, this case is no longer pending in the original venue.  Thus, SageCrest should amend its Amended Complaint to properly allege venue and jurisdiction.

17.     Deny the allegations contained in paragraph 17, except admit that SageCrest and ACG-I entered into a credit agreement, and respectfully refer the Court to that agreement for its terms and conditions. Defendants further admit that subsequent to the credit agreement, ACG-I and ACG-II entered into an agreement regarding ACG-I's assets and respectfully refer the Court to that subsequent agreement for its terms and conditions.

18.     Deny the allegations contained in paragraph 18, admit that SageCrest and ACG-I entered into a credit agreement, and respectfully refer the Court to that agreement for its terms and conditions.

19.     Deny the allegations contained in paragraph 19, except admit that SageCrest and ACG-I are parties to an agreement and respectfully refer the Court to that agreement for its terms and conditions.

20.     Deny that allegations in paragraph 20.

21.     Deny the allegations in paragraph 21, admit that ACG-I and/or ACG-II borrowed money from SageCrest under the Credit Agreement and respectfully refer the Court to the agreement and related documentation for their terms and conditions.

22.     Deny the allegations in paragraph 22, except admit that SageCrest and ACG-I and/or ACG-II are parties to an agreement, and respectfully refer the Court to the parties' agreement and related documentation for their terms and conditions.

23.     Deny the allegations in paragraph 23.

24.     Deny the allegations in paragraph 24, except admit that SageCrest commenced an action in or about January 2007.

25.     Admit the allegations in paragraph 25.

26.     Deny the allegations in paragraph 26, except admit that certain defendants produced documents in 2007.

27.     Deny the allegations in paragraph 27.

28.     Deny the allegations in paragraph 28.

29.     Deny the allegations in paragraph 29, except admit that the Court entered an order of attachment.

30.     Deny the allegations in paragraph 30, except admit that SageCrest purported to file an undertaking.

31.     Deny the allegations in paragraph 31.

32.     Deny the allegations in paragraph 32.

33.     Deny the allegations in paragraph 33, except admit that a hearing before Justice Freedman occurred on October 15, 2007 and respectfully refer the Court to the transcript of the hearing for context and a complete recitation of the discussion.

34.     Deny the allegations in paragraph 34, except admit that a hearing before Justice Freedman occurred on October 15, 2007 and respectfully refer the Court to the transcript of the hearing for context and a complete recitation of the discussion.

35.     Deny the allegations in paragraph 35, except admit that certain defendants sought leave to reargue, which was decided by Justice Moskowitz, and respectfully refer the Court to the transcript of that proceeding for context and a complete recitation of the discussion.

36.     Deny the allegations in paragraph 36, except admit that Justice Moskowitz rendered a decision in December 2007, and respectfully refer the Court to Justice Moskowitz's decision for a complete recitation of its contents.

37.     Admit the allegations in paragraph 37.

38.     Deny the allegations in paragraph 38, except admit that the parties to the mediation reached a preliminary agreement in principle, which was memorialized and subject to further negotiation and documentation, and respectfully refer the Court to that agreement for its terms and conditions.

39.     Deny the allegations in paragraph 39, except admit that the parties to the mediation reached a preliminary agreement in principle, which was memorialized and subject to further negotiation and documentation, and respectfully refer the Court to that agreement for its terms and conditions.

5

40.    Deny the allegations in paragraph 40, except admit that the parties to the mediation reached a preliminary agreement in principle, which was memorialized and subject to further negotiation and documentation, and respectfully refer the Court to that agreement for its terms and conditions.

41.    Deny the allegations in paragraph 41.

42.    Deny the allegations in paragraph 42.

43.    Deny the allegations in paragraph 43.

44.    Deny the allegations in paragraph 44.

45.    Deny the allegations in paragraph 45, except admit that a status conference with the court occurred on April 2, 2008, and respectfully refer the Court to the transcript of the conference for context and a complete recitation of the discussion.

46.    Deny the allegations in paragraph 46, except admit that a status conference with the court occurred on April 2, 2008, and respectfully refer the Court to the transcript of the conference for context and a complete recitation of the discussion.

47.    Deny the allegations in paragraph 47, except admit that SageCrest was provided with certain due diligence materials, which formed part of the information made available by Defendants.

48.    Deny the allegations in paragraph 48.

49.    Deny the allegations in paragraph 49.

50.    Deny the allegations in paragraph 50.

51.    Deny the allegations in paragraph 51, except admit that the So-Ordered Settlement Stipulation was the result of arms-length negotiations.

52.     Deny the allegations in paragraph 52, except admit that the So-Ordered Settlement Stipulation contains certain terms and conditions and the Court is respectfully referred thereto for these terms and conditions.

53.     Admit the allegations in paragraph 53.

54.     Admit the allegations in paragraph 54.

55.     Admit the allegations in paragraph 55.

56.     Deny the allegations in paragraph 56 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

57.     Deny the allegations in paragraph 57 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

58.     Deny the allegations in paragraph 58 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

59.     Deny the allegations in paragraph 59 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

60.     Deny the allegations in paragraph 60 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

61.     Deny the allegations in paragraph 61 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

62.     Deny the allegations in paragraph 62 and respectfully refer the Court to the Collateral Assignment for its full terms and conditions.

63.     Deny the allegations in paragraph 63, except aver the Fine Art Finance's right to certain fees was carved out of, and remained superior to, SageCrest's security interest.

64.     Deny the allegations in paragraph 64 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

65.     Deny the allegations in paragraph 65 and respectfully refer the Court to the Blocked Account Agreement for its full terms and conditions.

66.     Deny the allegations in paragraph 66, and respectfully refer the Court to the Blocked Account Agreement for its full terms and conditions.

67.     Deny the allegations in paragraph 67 and respectfully refer the Court to the So-Ordered Settlement Stipulation and the Blocked Account Agreement for their full terms and conditions.

68.     Deny the allegations in paragraph 68, and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

69.     Deny the allegations in paragraph 69 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions..

70.     Deny the allegations in paragraph 70 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions..

71.     Deny the allegations in paragraph 71 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

72.     Deny the allegations in paragraph 72 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

73.     Deny the allegations in paragraph 73 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

74.     Deny the allegations in paragraph 74 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

8

75.     Deny the allegations in paragraph 75 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

76.     Deny the remaining allegations in paragraph 76.

77.     Deny the allegations in paragraph 77 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

78.     Deny the allegations in paragraph 78.

79.     Deny the allegations in paragraph 79 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

80.     Deny the allegations in paragraph 80 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

81.     Deny the allegations in paragraph 81 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

82.     Deny the allegations in paragraph 82 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

83.     Deny the allegations in paragraph 83.

84.     Deny the allegations in paragraph 84 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

85.     Deny the allegations in paragraph 85 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

86.     Deny the allegations in paragraph 86 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

87.     Deny the allegations in paragraph 87 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

88.     Deny the allegations in paragraph 88 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

89.     Admit the allegations in paragraph 89.

90.     Deny the allegation in paragraph 90, except admit that SageCrest sent a Notice of Default.

91.     Deny the allegations in paragraph 91, except admit that the Default Notice was received by ACG-II, Fine Art Finance and ACG Finance.

92.     Admit the allegations in paragraph 92.

93.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93.

94.     Deny the allegations in paragraph 94, and respectfully refer the Court to that notice for a complete recitation of its contents.

95.     Deny the allegations in paragraph 95.

96.     Deny the allegations in paragraph 96.

97.     Deny the allegations in paragraph 97, except deny knowledge or information sufficient to form a belief as to the allegations in the first sentence.

98.     Deny the allegations in paragraph 98.

99.     Deny the allegations in paragraph 99.

100.    Deny the allegations in paragraph 100.

101.    Deny the allegations in paragraph 101.

102.    Deny the allegations in paragraph 102.

103.    Deny the allegations in paragraph 103.

104.    Deny the allegations in paragraph 104.

105.    Deny the allegations in paragraph 105.

106.    Deny the allegations in paragraph 106, except admit that they, through their counsel, sent an October 29, 2008 letter to SageCrest's counsel and respectfully refer the Court to that letter for a complete recitation of its contents.

107.    Deny the allegations in paragraph 107.

108.    Deny the allegations in paragraph 108, except admit that they, through their counsel, sent a November 11, 2008 letter to SageCrest's counsel and respectfully refer the Court to that letter for a complete recitation of its contents.

109.    Deny the allegations in paragraph 109.

110.    Deny the allegations in paragraph 110, except admit that they, through their counsel, sent a November 11, 2008 letter to SageCrest's counsel, and respectfully refer the Court to that letter for a complete recitation of its contents.

111.    Deny the allegations in paragraph 111, except admit that they, through their counsel, sent a November 11, 2008 letter to SageCrest's counsel, and respectfully refer the Court to that letter for a complete recitation of its contents.

112.    Deny the allegations in paragraph 112, except admit that they, through their counsel, sent a November 11, 2008 letter to SageCrest's counsel, and respectfully refer the Court to that letter for a complete recitation of its contents.

113.    Deny the allegations in paragraph 113.

114.    Deny the allegations in paragraph 114.

115.    Deny the allegations in paragraph 115, except admit that they, through their counsel, sent a November 24, 2008 letter to SageCrest's counsel, and respectfully refer the Court to that letter for a complete recitation of its contents.

116.    Deny the allegations in paragraph 116, except admit that they, through their counsel, sent a December 24, 2008 e-mail to SageCrest's counsel, and respectfully refer the Court to that e-mail for a complete recitation of its contents.

117.    Deny the allegations in paragraph 117.

118.    Deny the allegations in paragraph 118.

119.    Deny the allegations in paragraph 119, except admit that Ian S. Peck testified at the preliminary injunction hearing in February 2009, and respectfully refer the Court to the hearing's transcript for a complete recitation of his testimony.

120.    Deny the allegations in paragraph 120.

121.    Deny the allegations in paragraph 121, except admit that Ian S. Peck testified at the preliminary injunction hearing in February 2009, and respectfully refer the Court to the hearing's transcript for a complete recitation of his testimony.

122.    Deny the allegations in paragraph 122.

123.    Deny the allegations in paragraph 123.

124.    Deny the allegations in paragraph 124.

125.    Deny the allegations in paragraph 125.

126.    Deny the allegations in paragraph 126.

127.    Deny the allegations in paragraph 127.

128.    Deny the allegations in paragraph 128.

129.    Deny the allegations in paragraph 129.

130.    Deny the allegations in paragraph 130.

131.   Deny the allegations in paragraph 131, except admit that the Assigned Loan Guarantee contains certain terms and conditions, and respectfully refer the Court to that guarantee for a complete recitation of its terms and conditions.

132.   Deny the allegations in paragraph 132.

133.   Deny the allegations in paragraph 133.

134.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 134.

135.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 135.

136.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 136.

137.   Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 137.

138.   Deny the allegations in paragraph 138.

139.   Deny the allegations in paragraph 139, except admit that Hahn & Hessen LLP commenced an action in New York Supreme Court in October 2008 against certain Defendants, and respectfully refer the Court to the Complaint in that action for a complete recitation of the allegations.

140.   Admit the allegations in paragraph 140.

141.   Deny the allegations in paragraph 141.

142.   Deny the allegations in paragraph 142.

143.   Deny the allegations contained in paragraph 143.

144.   Admit the allegations in paragraph 144.

13

145.    Deny the allegations in paragraph 145.

146.    Deny the allegations in paragraph 146.

147.    Deny the allegations in paragraph 147.

148.    Deny the allegations in paragraph 148.

149.    Deny the allegations in paragraph 149.

150.    Deny the allegations in paragraph 150.

151.    Deny the allegations in paragraph 151.

152.    Admit the allegations in paragraph 152.

153.    Admit the allegations in paragraph 153.

154.    Deny the allegations in paragraph 154.

155.    Deny the allegations in paragraph 155 and respectfully refer the Court to the

January 21, 2009 transcript for context and a complete recitation of the hearing.

156.    Deny the allegations in paragraph 156.

157.    Deny the allegations in paragraph 157, except admit that certain documents were

filed and served in opposition Plaintiff's Motion for an Order of Replevin and a Preliminary

Injunction, and respectfully refer the Court to those documents for context and a complete

recitation of their contents.

158.    Deny the allegations in paragraph 158, except admit that certain documents were

filed and served in opposition Plaintiff's Motion for an Order of Replevin and a Preliminary

Injunction, and respectfully refer the Court to those documents for context and a complete

recitation of their contents.

159.    Deny the allegations in paragraph 159, except admit that certain documents were

filed and served in opposition Plaintiff's Motion for an Order of Replevin and a Preliminary

Injunction, and respectfully refer the Court to those documents for context and a complete recitation of their contents.

160.    Deny the allegations in paragraph 160, except admit that certain documents were filed and served in opposition Plaintiff's Motion for an Order of Replevin and a Preliminary Injunction, and respectfully refer the Court to those documents for context and a complete recitation of their contents.

161.    Deny the allegations in the first sentence in paragraph 161. In response to the second sentence in paragraph 161, Defendants respectfully refer the Court to the transcripts of the hearings referenced for context and a complete recitation of the testimony.

162.    Deny the allegations in paragraph 162 and respectfully refer the Court to the transcripts of the hearings referenced for context and a complete recitation of the testimony.

163.    Deny the allegations in paragraph 163 except admit that the parties entered into an agreement on February 13, 2009 regarding the Assigned Collateral, and respectfully refer the Court to that agreement for its terms and conditions.

164.    Deny the allegations in paragraph 164, and respectfully refer the Court to the relevant transcript for a complete recitation of the referenced proceeding.

165.    Admit the allegations in paragraph 165.

166.    Deny the allegations in paragraph 166, except admit that the parties were unable to reach an agreement on the language for the proposed Stipulation and Order and thus had to appear before the court on February 17, 2009.

167.    Deny the allegations in paragraph 167, except admit that there was a February 17, 2009 hearing, and respectfully refer the Court to the transcript of that hearing for context and a complete recitation of the proceeding.

15

168. Deny the allegations in paragraph 168, except admit that there was a February 17, 2009 hearing, and respectfully refer the Court to the transcript of that hearing for context and a complete recitation of the proceeding.

169. Deny the allegations in paragraph 169, except admit that at the February 17, 2009 hearing, the court ordered (i) a further hearing to address certain issues related to the receipt of a certain sum of money by Defendants and (ii) the production of certain bank account records.

170. Deny the allegations in paragraph 170, except admit that there was a February 17, 2009 hearing, and respectfully refer the Court to the transcript of that hearing for context and a complete recitation of the proceeding.

171. Admit the allegations in paragraph 171.

172. Deny the allegations in paragraph 172, except admit that a hearing was scheduled with the court for March 27, 2009.

173. Deny the allegations in paragraph 173, except admit that Defendants filed a motion to stay the New York State Supreme Court action and that that motion was denied.

174. Deny the allegations contained in paragraph 174, except admit that counsel for Defendants and SageCrest discussed the production of documents in March 2009.

175. Admit the allegations in paragraph 175.

176. Admit the allegations in paragraph 176.

177. Admit the allegations in paragraph 177.

178. Admit the allegations in paragraph 178.

179. Admit the allegations in paragraph 179.

180.    Deny the allegations in paragraph 180, except admit that Ian S. Peck submitted an affidavit on April 23, 2009, and respectfully refer the Court to that affidavit for a complete recitation of its contents.

181.    Deny the allegations in paragraph 181.

182.    In response to the allegations in paragraph 182, repeat and reallege their responses to paragraphs 1 though 181 of the Amended Complaint as if set forth at length herein.

183.    Deny the allegations in paragraph 183.

184.    Admit the allegations in paragraph 184.

185.    Deny the allegations in paragraph 185.

186.    Admit the allegations in paragraph 186.

187.    Deny the allegations in paragraph 187.

188.    Admit the allegations in paragraph 188.

189.    Admit the allegations in paragraph 189.

190.    Deny the allegations in paragraph 190.

191.    Deny the allegations in paragraph 191.

192.    Deny the allegations in paragraph 192.

193.    Deny the allegations in paragraph 193.

194.    The allegations in paragraph 194 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations and respectfully refer the Court to the So-Ordered Settlement Stipulation for a complete recitation of its terms and conditions.

195.    Deny the allegations in paragraph 195, and, but respectfully refer the Court to that document for a complete recitation of its terms and conditions.

17

196.    Deny the allegations in paragraph 196.

197.    Denies the allegations in paragraph 197, and respectfully refer the Court to the So-Ordered Settlement Stipulation for a full and complete recitation of its terms and conditions.

198.    Deny the allegations in paragraph 198 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

199.    Deny the allegations in paragraph 199 and respectfully the Court to the So-Ordered Settlement for its full terms and conditions.

200.    Deny the allegations in paragraph 200, except admit receiving a Default Notice.

201.    Deny the allegations in paragraph 201, except admit receiving the Default Notice.

202.    Deny the allegations in paragraph 202 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

203.    Deny the allegations in paragraph 203.

204.    Deny the allegations in paragraph 204.

205.    Deny the allegations in paragraph 205.

206.    Deny the allegations in paragraph 206.

207.    Deny the allegations in paragraph 207.

208.    Deny the allegations in paragraph 208.

209.    Deny the allegations in paragraph 209.

210.    Deny the allegations in paragraph 210.

211.    In response to the allegations in paragraph 211, repeat and reallege their responses to paragraphs 1 though 210 of the Amended Complaint as if set forth at length herein.

212.    Deny the allegations in paragraph 212 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

213.    Deny the allegations in paragraph 213.

214.    The allegations in paragraph 214 set forth legal conclusions and require no response. To the extent that a response is required, Defendants deny the allegations in paragraph 214.

215.    Deny the allegations in paragraph 215.

216.    Deny the allegations in paragraph 216.

217.    In response to the allegations in paragraph 217, repeat and reallege their responses to paragraphs 1 though 216 of the Amended Complaint as if set forth at length herein.

218.    Deny the allegations in paragraph 218 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

219.    The allegations in paragraph 219 set forth legal conclusions and require no response. To the extent that a response is required, Defendants deny the allegations in paragraph 219.

220.    Deny the allegations in paragraph 220.

221.    Deny the allegations in paragraph 221.

222.    In response to the allegations in paragraph 222, repeat and reallege their responses to paragraphs 1 though 221 of the Amended Complaint as if set forth at length herein.

223.    Deny the allegations in paragraph 223 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

224.    Deny the allegations in paragraph 224 and respectfully refer the Court to the Blocked Account Agreement for its full terms and conditions.

225.    Deny the allegations in paragraph 225.

226.    Deny the allegations in paragraph 226.

227.    The allegations in paragraph 227 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 227.

228.    The allegations in paragraph 228 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 228.

229.    The allegations in paragraph 229 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 229.

230.    In response to the allegations in paragraph 230, repeat and reallege their responses to paragraphs 1 though 229 of the Amended Complaint as if set forth at length herein.

231.    Deny the allegations in paragraph 231 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

232.    Deny the allegations in paragraph 232.

233.    Deny the allegations in paragraph 233.

234.    Deny the allegations in paragraph 234.

235.    Deny the allegations in paragraph 235.

236.    Deny the allegations in paragraph 236.

237.    The allegations in paragraph 237 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 237.

238.    In response to the allegations in paragraph 238, repeat and reallege their responses to paragraphs 1 though 238 of the Amended Complaint as if set forth at length herein.

239.   Deny the allegations in paragraph 239 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

240.   Deny the allegations in paragraph 240.

241.   Deny the allegations in paragraph 241.

242.   Deny the allegations in paragraph 242.

243.   Deny the allegations in paragraph 243.

244.   The allegations in paragraph 244 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 244.

245.   The allegations in paragraph 245 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 245.

246.   The allegations in paragraph 246 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 246.

247.   Deny the allegations in paragraph 247.

248.   In response to the allegations in paragraph 248, repeat and reallege their responses to paragraphs 1 though 248 of the Amended Complaint as if set forth at length herein.

249.   Deny the allegations in paragraph 249 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

250.   Deny the allegations in paragraph 250.

251.    The allegations in paragraph 251 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 251.

252.    The allegations in paragraph 252 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 252.

253.    Deny the allegations in paragraph 253.

254.    Deny the allegations in paragraph 254.

255.    Deny the allegations in paragraph 255.

256.    In response to the allegations in paragraph 256, repeat and reallege their responses to paragraphs 1 though 255 of the Amended Complaint as if set forth at length herein.

257.    Admit the allegations in paragraph 257.

258.    Deny the allegations in paragraph 258.

259.    The allegations in paragraph 259 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 259.

260.    The allegations in paragraph 260 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 260.

261.    The allegations in paragraph 261 set forth legal conclusions and require no response.  To the extent that a response is required, Defendants deny the allegations in paragraph 261.

262.    In response to the allegations in paragraph 262, repeat and reallege their responses to paragraphs 1 though 261 of the Amended Complaint as if set forth at length herein.

263.    Deny the allegations in paragraph 263.

264.    Deny the allegations in paragraph 264.

265.    Deny the allegations in paragraph 265.

266.    The allegations in paragraph 266 set forth legal conclusions and require no response. To the extent that a response is required, Defendants deny the allegations in paragraph 266.

267.    The allegations in paragraph 267 set forth legal conclusions and require no response. To the extent that a response is required, Defendants deny the allegations in paragraph 267.

268.    The allegations in paragraph 268 set forth legal conclusions and require no response. To the extent that a response is required, Defendants deny the allegations in paragraph 268.

269.    In response to the allegations in paragraph 269, repeat and reallege their responses to paragraphs 1 though 268 of the Amended Complaint as if set forth at length herein.

270.    Deny the allegations in paragraph 270 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

271.    Deny the allegations in paragraph 271.

272.    Deny the allegations in paragraph 272.

273.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 273.

274.    Deny the allegations in paragraph 274, except admit that SageCrest sent a November 26, 2008 letter, and respectfully refer the Court to that letter for a complete recitation of its contents.

275.    Deny the allegations in paragraph 275.

276.    Deny the allegations in paragraph 276.

277.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 277.

278.    Deny the allegations in paragraph 278.

279.    Deny the allegations in paragraph 279.

280.    Deny the allegations in paragraph 280.

281.    Deny the allegations in paragraph 281.

282.    Deny the allegations in paragraph 282.

283.    Deny the allegations in paragraph 283.

284.    Deny the allegations in paragraph 284.

285.    Deny the allegations in paragraph 285.

286.    Deny the allegations in paragraph 286.

287.    In response to the allegations in paragraph 287, repeat and reallege their responses to paragraphs 1 though 286 of the Amended Complaint as if set forth at length herein.

288.    Deny the allegations in paragraph 288.

289.    Deny the allegations in paragraph 289.

290.    Deny the allegations in paragraph 290.

291.    Deny the allegations in paragraph 291, except admit that SageCrest was provided with certain due diligence materials, which formed part of the information made available by Defendants.

292.    Deny the allegations in paragraph 292, except admit that SageCrest was provided with certain due diligence materials, which formed part of the information made available by Defendants.

293.    Deny the allegations in paragraph 293.

294.    Deny the allegations in paragraph 294 and respectfully refer the Court to the So-Ordered Settlement Stipulation for its full terms and conditions.

295.    Deny the allegations in paragraph 295.

296.    Deny the allegations in paragraph 296.

297.    Deny the allegations in paragraph 297.

298.    Deny the allegations in paragraph 298.

299.    Deny the allegations in paragraph 299.

300.    Deny the allegations in paragraph 300.

301.    Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 301.

302.    Deny the allegations in paragraph 302.

303.    In response to the allegations in paragraph 303, repeat and reallege their responses to paragraphs 1 though 302 of the Amended Complaint as if set forth at length herein.

304.    Deny the allegations in paragraph 304.

305.    Deny the allegations in paragraph 305.

306.    Deny the allegations in paragraph 306.

307.    Deny the allegations in paragraph 307.

308.    Deny the allegations in paragraph 308.

309.    Deny the allegations in paragraph 309.

WHEREFORE, Defendants deny all allegations set forth in the Amended Complaint that have not been expressly answered above, deny that Plaintiff is entitled to any relief whatsoever, and respectfully request judgment dismissing Plaintiff's Amended Complaint with prejudice and with such costs and attorneys' fees as may be allowed by law, and any further legal and equitable relief the Court deems appropriate.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses without assuming the burden of proof or persuasion as to such defenses that would otherwise rest on Plaintiff.

### FIRST AFFIRMATIVE DEFENSE

The Amended Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because of Plaintiff's failure to mitigate its damages, if any.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrines of unclean hands and bad faith.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or Defendants are relieved of any obligation under the So-Ordered Settlement Stipulation on the grounds that Plaintiff breached its own contractual obligations.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the equitable doctrines of waiver, ratification and/or estoppel.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by virtue of the facts, circumstances and conduct alleged in the Counterclaims.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by law of the case doctrine.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of collateral estoppel and *res judicata.*

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by its failure to satisfy conditions precedent.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by its failure to comply with the express requirements of the New York Uniform Commercial Code.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of election of remedies.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred and/or precluded by the express terms of the So-Ordered Settlement Stipulation.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's fraud claims are barred because they are duplicative of the breach of contract claims.

### FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by virtue of a release.

### FIFTEENTH AFFIRMATIVE DEFENSE

Any damages awarded to Plaintiff are offset by the Counterclaims asserted herein.

### DEFENSES RESERVED

The foregoing affirmative defenses are raised by Defendants without waiver of any other

defenses that may come to light during the discovery proceedings in this case or otherwise.

Defendants hereby reserve the right to amend or supplement their Answer to assert any other

related defenses as they become available.

### COUNTERCLAIMS AND THIRD PARTY CLAIMS

### NATURE OF ADVERSARY PROCEEDING

1.      Since entering into the So-Ordered Settlement Stipulation, SageCrest, in concert

with its principal Alan Milton, has, in total disregard of its legal obligations to Defendants and

others: (i) repeatedly and knowingly breached the terms of the So-Ordered Settlement

Stipulation; (ii) flouted its legal obligations under the Uniform Commercial Code (thereby

barring it from asserting many of the claims set forth in the State Court Complaint); (iii)

repeatedly breached the Uniform Commercial Code as codified in New York law; (iv)

improperly refused to acknowledge Defendant Fine Art Finance's secured right to Arranger's

Fees under the terms of the So-Ordered Settlement Stipulation and related agreements; and (v)

tortiously interfered with Fine Art Finance's rights to those Arranger's Fees in violation of New

York law.

Specifically, as set forth below, SageCrest has:

- **Twice** filed claims against Defendants even though the So-Ordered Settlement
  Stipulation explicitly prohibited it from doing so, causing Defendants to expend

enormous sums of money to defend against those impermissible claims. SageCrest now continues to prosecute those claims in this Court.

- Transferred over 75% of its interest in the Assigned Loans and the 2 Year Note to its offshore affiliates, a transfer clearly barred by the So-Ordered Settlement Stipulation. This transfer stripped Defendants of their bargained for rights and extinguished their ability to control the disposition of those loans.

- Failed to secure, obtain or dispose of the collateral for the Assigned Loans as required by the Uniform Commercial Code, such failure barring SageCrest from asserting claims against Defendants in connection with the Assigned Loans under New York law.

- Violated the New York Uniform Commercial Code by repeatedly refusing to give Defendants notice of SageCrest's sales of Assigned Loan collateral.

- Repeatedly and wrongfully interfered with Defendant Fine Art Finance's efforts to obtain the Arranger's Fees due to it under the terms of the So-Ordered Settlement Stipulation and related agreements by making baseless and improper threats against art auction houses and underlying borrowers.

2.      These actions, undertaken by SageCrest with the full knowledge that they were in violation of the So-Ordered Settlement Stipulation, are consistent with the long history of illegal and fraudulent conduct by SageCrest, its managing member Windmill Management LLC and its principal Alan Milton, that was laid bare in earlier litigation. Thus, SageCrest:

- Actively and knowingly financed, conspired with, and profited from the fraudulent scheme of Andrew Rose ("Rose"), a fired ACG employee, and Christopher Krecke ("Krecke"), ACG's former Chief Financial Officer, who formed a competing business (ARCK Credit Company) in violation of Krecke's fiduciary duties to ACG, and misappropriated millions of dollars of ACG's business and business opportunities (the "Rose/Krecke Scheme");

- Employed atypical and devious lending procedures and protocols to aid and abet the Rose/Krecke Scheme;

- Concealed its participation in the Rose/Krecke Scheme from Defendants in order to reap the benefits of maintaining its status as Defendants' lender;

- Breached its loan agreements with Defendants;

29

- Impaired certain collateral securing certain ACG loans in order to profit from the Rose/Krecke Scheme by making multiple loans on the same collateral;

- Knowingly participated in a fraudulent and rigged art auction at Christie's in furtherance of the Rose/Krecke Scheme by orchestrating "strawman" bidding;

- Aided and abetted Krecke's breach of fiduciary duty in furtherance of the Rose/Krecke Scheme; and

- Tortiously interfered with countless of Defendants' business opportunities.

3.     While SageCrest devotes over 40 paragraphs of both Complaints to an inaccurate, self-serving and highly misleading "history" of the original state court litigation between the parties (*SageCrest II, LLC v. ACG Credit Company, LLC*, et al., Index. No. 600195/07) (the "First State Court Action"), it deliberately omits the fact that it agreed to settle the First State Court Action within weeks of the defendants filing counterclaims: (i) based on the facts set forth above regarding the Rose/Krecke Scheme, and (ii) alleging claims against Milton and Windmill for their participation in that scheme, including claims for conspiracy, fraud, tortious interference with business and prospective business, aiding and abetting Rose and Krecke's fraud, and aiding and abetting Rose and Krecke's acts of unfair competition.   SageCrest and Milton were apparently so concerned about the counterclaims they moved quickly to ensure that they would never have to respond to them in any court proceeding.

4.     Even before SageCrest's bankruptcy filing, Alan Milton's investment practices caused at least one hedge fund publication to characterize the SageCrest funds as nothing more than a classic Ponzi scheme. *HFM Week*, M. Corey Goldman, June 5-11, 2008 ("After all, paying Paul 18% interest to pay back Peter, charging a management fee to do it and keeping the money tied up is something Charles Ponzi would be proud of.").

5.      Such unflattering press portrayals were hardly surprising, given the dishonest and unethical manner in which Milton conducted SageCrest's business.  On one occasion, while SageCrest was still serving as Defendants' lender, Milton demanded that [ACG] sign a form "confirming" for SageCrest's accountants (and thus its benighted investors as well) that SageCrest was earning a 16% rate of return from its loans to ACG-I when in fact that rate of return was only 12%.  Milton later admitted – in writing – that the information he was providing to SageCrest's auditors was false.

6.      Upon information and belief, Milton's fraudulent "partnership" with Rose and Krecke continues to this day.   Part of SageCrest's art loan portfolio consists of its loans to Rose/Krecke's entities ARCK Credit Company and/or Art Finance Partners ("ARCK").  Upon information and belief, while ARCK has been receiving regular payments of interest and principal from its borrowers on these loans, it has not made any payments to SageCrest in 2009 or 2010.  Despite that fact, SageCrest has not taken any action to foreclose on ARCK's collateral or otherwise collect from ARCK.

7.      Upon information and belief, during the pendency of SageCrest's chapter 11 case, Milton and Rose and Krecke have conspired to "transfer" SageCrest's loans to ARCK to another entity, not owned or controlled by the debtors, in acts which constitute a fraud upon SageCrest, its bankruptcy estate, and SageCrest's creditors.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this Action pursuant to 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

9.      Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

10.     Counterclaim/Third Party Plaintiff ACG Credit Company II, LLC ("ACG-II") is a Delaware limited liability company with its principal place of business located in New York, New York.

11.     Counterclaim/Third Party Plaintiff ACG Finance Company, LLC ("ACG Finance") is a Delaware limited liability company with its principal place of business located in New York, New York.

12.     Counterclaim/Third Party Plaintiff Fine Art Finance, LLC ("Fine Art Finance") is a Delaware limited liability company with its principal place of business located in New York, New York.

13.     Counterclaim/Third Party Plaintiff Art Capital Group, LLC ("Art Capital LLC") is a Delaware limited liability company with its principal place of business located in New York, New York.

14.     Counterclaim/Third Party Plaintiff Art Capital Group, Inc. ("Art Capital Inc.) is a Delaware corporation with its principal place of business located in New York, New York.

15.     Counterclaim/Third Party Plaintiff ACG Credit Company, LLC ("ACG-I") is a Delaware limited liability company with its principal place of business located in New York, New York.

16.     Upon information and belief, Counterclaim Defendant SageCrest II, LLC ("SageCrest") is a Delaware limited liability company with its principal place of business located in Greenwich, Connecticut.

17.     Upon information and belief, Third Party Defendant Alan Milton ("Milton") is a resident of the State of New York.

## RELEVANT FACTS

### The Settlement Stipulation

18.      On or about May 19, 2008, the parties entered into the So-Ordered Settlement

Stipulation to resolve the litigation then before the State Court entitled *SageCrest II, LLC v. ACG*

*Credit Company LLC, et al*, Index No. 600195/08.

19.      The Settlement Stipulation, *inter alia*, provided that:

- ACG-II agreed to pay SageCrest $29,925,500.00, which included an "Initial Consideration" of $21,000,000.00; a six-month note in the amount of $4,500,000.00; and a two-year interest-free note in the amount of $4,425,000.00 (the "Two Year Note").

- The Initial Consideration consisted of a $14,300,000.00 cash payment to be made at the time of closing and an assignment of certain rights with respect to loans and collateral securing the obligation of $6,700,000.00, which was to be paid by ACG-II six months from the Closing Date (November 19, 2008).

- Pursuant to the terms of the Assignment, Fine Art Finance and ACG Finance assigned SageCrest certain rights to receive all select monthly principal and interest payments and/or sales proceeds generated by five (5) unencumbered loans having an outstanding combined balance of at least $6.7 million ("Assigned Loans").

- The Assigned Loans were themselves secured by collateral consisting of 35 pieces of artwork owned by certain underlying borrowers (the "Assigned Loan Borrowers").

- The So-Ordered Settlement Stipulation provided that during the period from May 19, 2008 through November 18, 2008, SageCrest "shall not interfere with the servicing, managing and administration of the Assigned Loans by Fine Art Finance and ACG Finance" (which entities had the absolute right to service manage and administer the Assigned Loans).

- However, in the event that ACG-II failed to pay the Balance and any Additional Interest by November 19, 2008 and following 5 days written notice to ACG-II to cure the failure, then SageCrest had the absolute right to service, manage and administer the Assigned Loans as per the terms of the Collateral Assignment.

- Pursuant to Section 33 of the So-Ordered Settlement Stipulation, the Assigned Loans were "not to be assigned, transferred or pledged [by SageCrest] absent the written consent of ... ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which consent may be withheld for any reason whatsoever and ACG-II, ACG Finance and Ian Peck shall not be required to disclose or justify their reason)..."

- Pursuant to Section 2(c) of the So-Ordered Settlement Stipulation, ACG-II agreed to execute and deliver the Two Year Note.

- The Two Year Note was secured by, *inter alia*, (i) proceeds of the American Furniture Judgment, (ii) ACG-II's interest in the Gill Furniture Lot, (iii) ACG-II's interest in the Other Art Loans, (iv) the Other Art Loan Collateral, (v) the IPFP Collateral, and (vi) a Limited Personal Guarantee (as those terms are defined in the So-Ordered Settlement Stipulation).

- SageCrest expressly released (in Section 20 of the So-Ordered Settlement Stipulation) Defendants or its affiliates from *any* claims arising or accruing before or including May 19, 2008. In that provision, SageCrest "remise[d], covenant[ed] not to sue, and release[d]" Defendants from "any and all actions, causes of actions ... fraudulent inducement claims, acts and/or omissions ... and all other claims of every kind, nature and description, whatsoever ..." that it had against Defendants "accruing or arising from the beginning of time to and through the day of this Settlement Stipulation."

- In Section 21 of the So-Ordered Settlement Stipulation, SageCrest agreed to hold Defendants harmless "and will forever forbear from pursuing, and do hereby waive any right to make any demand or claim against [Defendants] concerning any act, conduct, commission, omission or claim arising out of or related to the facts or occurrences underlying [the prior litigation] or with respect to any and all events, occurrences, and circumstances through the Closing Date (including, without limitation, fraudulent conveyance, conversion, and *fraudulent inducement claims* other than for breach of this Settlement Stipulation ... ." (Emphasis added.)

- To deter SageCrest from asserting such claims, the So-Ordered Settlement Stipulation goes so far as to provide that they "will be liable to Defendants for *all* damages, fees and expenses incurred by [Defendants] to enforce this Section." (Emphasis added.)

34

- In Section 36 of the So-Ordered Settlement Stipulation, SageCrest, certified that it fully read and understood all of its terms and conditions.

## SageCrest's Blatant and Bad Faith Breaches of the So-Ordered Settlement Stipulation

20.     SageCrest breached the So-Ordered Settlement Stipulation in three separate – but equally egregious – ways.

21.     First, SageCrest breached and is in contempt of the So-Ordered Settlement Stipulation because: (i) in Section 20 of the So-Ordered Settlement Stipulation, SageCrest released all claims against Defendants for events that occurred prior to or including May 19, 2008 other than for breach of the So-Ordered Settlement Stipulation; (ii) Section 21 of the So-Ordered Settlement Stipulation explicitly prohibited SageCrest from ever filing or pursuing any claim against Defendants based on events that took place prior to May 19, 2008, (iii) SageCrest's original state court complaint, filed January 20, 2009 (the "Complaint"), asserted a fraud claim against all Defendants other than Art Capital, Inc., which claim was clearly based on purported "fraudulent misrepresentations" which SageCrest alleges were made by Defendants Fine Art Finance and ACG Finance LLC before May 19, 2008; (iv) SageCrest's Amended Complaint, filed on or about May 19, 2009 asserts a claim against Defendants Fine Art Finance and Art Capital Inc. for fraudulent inducement, which claim is clearly based on purported "fraudulent misrepresentations" which SageCrest alleges were made by Fine Art Finance and Art Capital Inc. before May 19, 2008; (v) despite being fully aware that it was barred from asserting these claims by the So-Ordered Settlement Stipulation; and (vi) Defendants have been (and continue to be) prejudiced by SageCrest's knowing and deliberate violations of Sections 20 and 21 of the So-Ordered Settlement Stipulation by being forced to expend tens of thousands of dollars in legal fees and other costs that would not have been necessary had SageCrest not engaged in the

contumacious action of asserting prohibited fraud and fraudulent inducement claims in its

Complaint and Amended Complaint.

    22.    Section 20 of the So-Ordered Settlement Stipulation provides that:

> SageCrest, Windmill, and Mr. Milton, individually, and on behalf
> of their respective successors and assigns …hereby remise and
> covenant not to sue, and release ACG-1, ACG-II, Art Capital,
> ACG Finance and Ian Peck and their respective (a) successors and
> assigns, (b) affiliates, (c) executors, (d) predecessors, (e) heirs, and
> (f) present and former directors, officers, shareholders, managers,
> members, partners, employees, representatives, agents, and
> attorneys (collectively the "ACG Release Parties") from any and
> all manner of actions, causes of action, suits, proceedings …
> fraudulent inducement claims, acts and/or omissions … and all
> other claims of any kind, nature and description, whatsoever,
> liquidated and unliquidated … known and unknown … whether
> based on statutory law, common law, federal law, state law, local
> law or otherwise, that they may have, or could have against the
> ACG Release Parties, accruing or arising from the beginning of
> time to and through the day of this Settlement Stipulation.

    23.    Section 21 of the So-Ordered Settlement Stipulation provides that:

> SageCrest, Windmill and Mr. Milton, individually and collectively,
> do hereby covenant and agree that SageCrest, Windmill and Mr.
> Milton will hold the ACG Release Parties harmless and will
> forever forbear from pursuing, and do hereby waive any right to
> make, any demand or claim against the ACG Release Parties
> concerning any act, conduct, commission, omission or claim
> arising out of or related to the facts or occurrences underlying the
> above-captioned litigation or with respect to any and all events,
> occurrences, and circumstances through the Closing Date
> (including, without limitation, fraudulent conveyance, conversion
> and fraudulent inducement claims) other than for breach of this
> Settlement Stipulation or the Additional Agreements.

    24.    The Tenth Cause of Action of SageCrest's Complaint asserted a claim for fraud

against "all Defendants except Art Capital, Inc." based on "representations and warranties"

which "SageCrest relied on in signing the So-Ordered Settlement Stipulation and releasing the

Order of Attachment." Compl., at ¶ 252. SageCrest admitted that "[t]hose representations and

warranties are essentially the same as those that were made to induce SageCrest into accepting less than $21 million in cash at closing…"   In other words, SageCrest was alleging that Defendants had made representations **before May 19, 2008** – the "Closing Date" on which the parties entered into the So-Ordered Settlement Stipulation – which purportedly induced it into entering into that agreement.   But Section 21 (and Section 20) of the So-Ordered Settlement Stipulation explicitly prohibited SageCrest from asserting this fraud claim, because it was clearly a "claim against the ACG Release Parties concerning an[] act, conduct, commission, omission or claim … with respect to any and all events, occurrences, and circumstances through the Closing Date (including, without limitation, fraudulent conveyance, conversion and fraudulent inducement claims)…"

25.   The Eleventh Cause of Action in SageCrest's Amended Complaint – which remains the operative complaint in this action – alleges a claim for fraudulent inducement against Defendants Fine Art Finance and Art Capital Inc.  In this claim, SC alleges that Fine Art Finance and Art Capital Inc. (clearly included among the "ACG Release Parties" as they are affiliates of the other corporate Defendants) – **before the parties entered into the So-Ordered Settlement Stipulation on May 19, 2008** – provided "due diligence materials" and made "representations and warranties" which "SageCrest reasonably relied on … in determining whether or not to enter into the So-Ordered Settlement Stipulation."

26.   Here, too, Sections 20 and 21 of the So-Ordered Settlement Stipulation explicitly prohibited SageCrest from asserting this claim – even going so far as specifically enumerating "fraudulent inducement claims" as being those which were expressly barred.

27.   SageCrest was indisputably aware of the So-Ordered Settlement Stipulation's explicit prohibition of these claims.  SageCrest was a signatory to the So-Ordered Settlement

Stipulation and pursuant to Section 36 thereof certified that it had "read this Settlement Stipulation, have conferred with counsel, and fully understand[s] all the terms, and ... acknowledge and represent that [it] enter[s] into this Settlement Stipulation of their own free will, and not from any representation, commitment, promise, pressure or duress from any other Party."

28.     Thus, SageCrest cannot legitimately claim that (i) it did not understand the terms of the So-Ordered Settlement Stipulation, (ii) it was barred from asserting the fraud claim in its original Complaint, or (iii) it was barred from asserting the fraudulent inducement claim in its Amended Complaint. And yet SageCrest filed these claims anyway, and thereby violated the clear and explicit terms of Sections 20 and 21 of the So-Ordered Settlement Stipulation.

29.     It is equally clear that Defendants have been prejudiced by SageCrest's contumacious conduct. Defendants have incurred (and continue to incur) considerable costs defending against the fraud and fraudulent inducement claims, as well as the allegations in respect of the Prior ACG Litigation. SageCrest caused those claims and allegations to be filed knowing full well that they were expressly barred from doing so by the So-Ordered Settlemetn Stipulation. Accordingly, they should be held to be in civil contempt, compelled to withdraw the claims and allegations with prejudice, and to reimburse all of Defendants' legal fees that were incurred in connection with those claims.

30.     Second, SageCrest knowingly and deliberately violated Section 33 of the So-Ordered Settlement Stipulation, which provided that the Assigned Loans were "not to be assigned, transferred or pledged absent the written consent of ... ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which consent may be withheld for any reason whatsoever and ACG-II, ACG Finance and Ian Peck shall not be required to disclose or justify their reason...)"

SageCrest's bankruptcy filings reveal that it holds only a 23% interest in the Assigned Loans. According to SageCrest, the remaining 77% interests have been "participated out" (*i.e.*, sold or assigned) to "offshore entities."

31.    At some point between May 19, 2008 (the date of execution of the So-Ordered Settlement Stipulation) and October 14, 2008 (the date that SageCrest appears to have first disclosed this information to this Court and *before* any purported breach by Defendants), SageCrest sold a majority share of its interest in the Assigned Loans to the ["offshore entities."]

32.    SageCrest's sale of its interests in the Assigned Loans was a clear breach of Section 33 of the So-Ordered Settlement Stipulation, which prohibits any such transfer without ACG's express written consent. No such consent was ever sought or received.

33.    SageCrest's knowing and deliberate violation of Section 33 of the So-Ordered Settlement Stipulation prejudiced Defendants, particularly Defendants ACG-II and Fine Art Finance (which assigned the relevant rights under the Assigned Loans to SageCrest). The prohibition on assignments or transfers contained in Section 33 of the So-Ordered Settlement Stipulation was a specific, bargained for benefit for Defendants, intended to guard against the risk that:

> (i) the Assigned Loans could be transferred by SageCrest to Defendants' competitors in the art lending marketplace.  Once Defendants' competitors were servicing the Assigned Loans and building business relationships with the borrowers on those loans, Defendants could lose valuable market share to those competitors.
>
> (ii) Defendants would not get the Assigned Loans back once SageCrest had collected the full principal amount of those loans.

34.    Because SageCrest violated Section 33 of the So-Ordered Settlement Stipulation, and assigned a majority interest in the Assigned Loans to offshore entities, Defendants lost the benefit of this bargain.  There is now no way for Defendants to control any further transfers or

assignments of these loans, which – now in the hands of Bermuda based entities that are not under SageCrest's control – could end up in the portfolios of Defendants' competitors.

35.     Third, upon information and belief, SageCrest and Milton have violated the So-Ordered Settlement Stipulation (and are attempting to defraud SageCrest's creditors and the bankruptcy estate) by transferring (or attempting to transfer) some or all of the Assigned Loans to ARCK and/or principals of ARCK, all of whom are impermissible transferees and/or assignees under Section 33 of the So-Ordered Settlement Stipulation.

36.     These furtive transfers are, *inter alia*, depriving Fine Art Finance and ACG Finance of its rights to collect Arranger's Fees.

**SageCrest Has Failed To Comply With Its Obligations under UCC Article 9**

37.     SageCrest has failed to comply with its legal obligations under the UCC. The Assigned Loans, and their underlying collateral (the "Assigned Collateral"), were SageCrest's collateral for a $6.7 million secured obligation. After ACG-II's purported default in November 2008 in paying the $6.7 million, SageCrest "foreclosed" on the Assigned Loans by electing manage, administer and service them under the terms of the So-Ordered Settlement Stipulation (which gave SageCrest to right to elect to assume the "absolute right to service, manage and administer the Assigned Loans as per the terms of the Collateral Assignment…").

38.     SageCrest's rights with respect to the Assigned Loans are governed by the UCC. Through the execution of the So-Ordered Settlement Stipulation and the Collateral Assignment, SageCrest created a security interest in the Assigned Loans and the Assigned Collateral under UCC Article 9. Moreover, to attempt to ensure that its security interest took precedence over any potential competing creditors, SageCrest sought to perfect its security interest in the Assigned

Loans by obtaining the original notes and in the Assigned Collateral by filing UCC financing statements.

39.     Accordingly, SageCrest became subject to the "good faith" requirements of Article 9 of the N.Y. UCC, which provides, at   9-207(c)(2) that "a secured party having possession of collateral or control [over it] ... shall apply money or funds received from the collateral to reduce the secured obligation..."). Thus, SageCrest must first attempt to reduce the amount of the $6.7 million by disposing of, or collecting upon the Assigned Loans and the Assigned Collateral *before* seeking to recover any deficiency against ACG-II.  But after SageCrest took over the right to service, administer and collect upon the Assigned Loans in November 2008, it:  (i) failed to use commercially reasonably methods in servicing and/or enforcing its rights under those loans, and (ii) did not sell or otherwise dispose of the collateral it has in its possession in compliance with the UCC, and (iii) as a result, there are no amounts due and owing to SageCrest from Defendants.

40.     However, SageCrest has repeatedly and emphatically disputed that it has any obligations under the UCC with respect to the Assigned Loans, thus giving rise to a controversy between the parties regarding the existence and extent of those obligations.

41.     On February 19, 2009, ACG-II gave SageCrest all 10 items of Assigned Loan Collateral that it had in its possession, pursuant to a stipulation between the parties that was later so-ordered by the State Court.  Upon information and belief, on that date the remaining items of Assigned Loan Collateral were in the possession of Assigned Loan borrowers Galleria Ramis Barquet, N.Y. Ltd. ("Barquet"), Alistair Crawford, Lawrence J. Daitch, Evan Tawil and Enrico Navarra (the "Assigned Loan Borrowers").

42.     SageCrest's "efforts" to assemble the Assigned Loan Collateral and collect on the Assigned Loans have been characterized by inattention, incompetence and gross negligence. The largest Assigned Loan, to Barquet, has been in default for well over 18 months, yet SageCrest has inexplicably failed to call a default on that loan or bring an action to recover the balance.

43.     Upon information and belief, since taking over the Assigned Loans in November 2008, SageCrest principal Alan Milton and SageCrest employee Shida Yeung have been in frequent contact with Barquet, repeatedly speaking with Barquet's principal Ramis Barquet in person (during frequent visits to the Barquet gallery) and over the phone.

44.     Despite that fact, SageCrest has never sought to enforce the terms of the Barquet loan by suing Barquet to: (i) recover the unpaid loan balance, or (ii) obtain possession numerous items of fine art which are collateral for the Barquet loan and which, upon information and belief, remain in Barquet's possession or have been sold by Barquet since November 2008.

45.     Instead, upon information and belief, since November 2008, SageCrest has obtained possession of only three (3) items of the Assigned Loan collateral for the Barquet loan – three paintings which Barquet agreed to sell at auction in May 2010.   The remaining items of Barquet collateral remain unaccounted for.

46.     Upon information and belief, rather than seeking to enforce SageCrest's rights under the Assigned Loans, and recover the principal balance due thereunder, SageCrest principal Alan Milton has devoted significant time and effort to an attempt to convince Barquet to agree to transfer its loan from SageCrest's loan portfolio to the loan portfolio of a non-debtor entity in which Milton holds a personal interest, in violation of Milton's duties to SageCrest, its bankruptcy estate and the estate's constituencies.

42

47.     Those constituencies are well aware of SageCrest's failure to enforce its rights under the Assigned Loans (although apparently not yet aware of Milton's blatant attempts at bankruptcy fraud). SageCrest's senior secured creditor Deutsche Bank AG, as agent for DB Structured Products, Inc. ("DB"), has made it clear, in moving for the appointment of a trustee in this chapter 11 case, that SageCrest and its current management have "no strategy ... as to when and how to sell anything," and has stated that "no material asset sales have occurred during the pendency of these cases."

48.     At an April 7, hearing before the bankruptcy court, SageCrest's other creditors made it clear that SageCrest (and its "manager," Windmill) could not be counted upon to dispose of its assets (including any collateral obtained from ACG II) in a commercially reasonable manner. Counsel for the Official Committee of SageCrest's Equity Security Holders told the bankruptcy court that:

> **[W]e have lost complete confidence in Windmill.** And by Windmill, Your Honor, we are really primarily focusing on the principals of Windmill and the people at the top of the Windmill chain who are – who are in charge of making leadership decisions that are needed to move this case forward and that's Alan and Philip Milton. **We don't believe and our clients don't believe, for that matter, that Mr. Alan Milton and Mr. Philip Milton have the necessary skill set to be able to deal with what is now a portfolio of fairly distressed assets. So we are – we are in this position, Your Honor, of having our assets managed by someone who we don't want to manage our assets and who should not be in charge of those assets.** (Emphasis supplied)

49.     Under New York law, "[e]very aspect of a disposition of collateral, including the method, manner, time, and place, and other terms must be commercially reasonable." NY UCC 9-610(b). SageCrest has the burden of establishing its compliance with Article 9. *See* NY UCC 9-626(a)(2), ("If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted

in accordance with this part."). SageCrest acquired all necessary legal and equitable rights relating to those Assigned Loans in November 2008, but has failed to service, administer and collect upon those loans in the commercially reasonable fashion required by the UCC. Unless and until SageCrest can satisfy its burden of showing that it has done so, this Court should declare that it has no right to payment of **any** amounts from ACG-II with respect to the Assigned Loans.

**SageCrest Violated the UCC by Failing to Notify Defendants of the Sale of Other Collateral Securing the Assigned Loans**

50.     Since taking over the Assigned Loans in November 2008, SageCrest has sold, or attempted to sell, only a handful of items of the Assigned Loan Collateral.

51.     Upon information and belief, SageCrest arranged for the sale of 3 paintings which formed part of the collateral for Assigned Loan borrower Evan Tawil in late 2009, and two paintings which formed part of the Barquet loan collateral in May 2010.

52.     In a blatant attempt to evade its express obligations to pay Fine Art Finance its Arranger's Fee from the proceeds of those sales, SageCrest failed to provide notice to ACG II and Fine Art Finance as it must under Section 9-611 of the New York Uniform Commercial Code, and by so doing, violated New York law and damaged defendants ACG II and Fine Art Finance.

**The Arranger's Fees Due to Defendant Fine Art Finance**

53.     Defendants provide various types of secured financing to individuals and businesses. Because of Defendants' specialized knowledge of the art market, most, if not all, of the financing provided by Defendants is secured by fine art.

54.    In connection with the Assigned Loans and the loans securing the 2 Year Note,

each underlying borrower executed an arranger agreement with Fine Art Finance (the "Arranger

Agreement").

55.    Pursuant to the Arranger Agreement, Fine Art Finance, as the Arranger, performs

a variety of functions with respect to each loan, including servicing the loan, collecting upon the

loan, safeguarding collateral and selling collateral in the event of a default.  In connection with

those responsibilities, the Arranger charges each borrower certain fees and commissions

including fees and triggered by the borrower's default (the "Arranger's Fees").  The relevant

loan agreements provide that these fees and commissions are secured by each borrower's

collateral and are paid <u>first</u> -- they come "off the top" of the proceeds from any collateral sale

*before* such proceeds are applied to the balance of any outstanding loan.

- The Arranger's Fees are secured obligations under the relevant loan documents.

- The Arranger Agreements for the Assigned Loans provide that "[a]ll proceeds from Collateral sales ... shall be applied *first, towards the payment of the* [Arranger's Fee]; second towards the repayment of the Obligations [under the loan agreement]; and third, any excess to [the underlying borrower]." (Emphasis added).

- The Arranger Agreements for the loans that form the collateral for the Two Year Note have similar language to those of the Assigned Loans.

- As a result, the Arranger's Fees come "off the top" of the gross sale price.

- Accordingly, Fine Art Finance has the right to be paid the Default Sale Fee *before* SageCrest receives *any* proceeds from any sale.

- The Collateral Assignment provided that Fine Art Finance expressly retained "**any and all rights to receive any commissions, fees, or expenses including an Arranger's fee,**

45

**due under the Assigned Loans.**" (Emphasis added.)  Thus, Fine Art Finance maintained and may now enforce its secured right to recover the Arranger's Fees in connection with any sale of any item of the Assigned Loan Collateral.

• The Two Year Note expressly excluded "any commission, fees, or expenses due any Arranger, Borrower affiliate, or related company based on a contractual commission already existing in the Loan Documents…"  Thus, Fine Art Finance maintained and may now enforce its secured right to recover the Arranger's Fees in connection with any sale of any item of the Two Year Note Collateral.

### SageCrest's Refusal to Pay Fine Art Finance Its Arranger's Fees

56.   While the dispute with respect to Fine Art Finance's Arranger's Fees emerged early in this action, the issue ripened in or about early November 2009, when Fine Art Finance learned that art auction house Phillips de Pury & Co. ("Phillips"), was going to sell at public auction certain artwork securing a $220,000 loan from ACG II to Evan Tawil ("Tawil") (the "Tawil Artwork").  Tawil is a borrower who had defaulted on his loan in 2008.  As a result of that default (among other things), Fine Art Finance was entitled under its loan agreements with Tawil (as well as the So-Ordered Settlement Stipulation) to recover certain fees from Tawil as a result of any public sale (the "Default Sale Fee").

57.   Once Fine Art Finance learned that the Tawil Artwork had been sold by Phillips under a consignment arrangement with Tawil, it immediately notified SageCrest that it was entitled to its fees on a "first out" basis and demanded payment thereof.  Thus, by letter dated November 23, 2009, Fine Art Finance informed SageCrest as follows:

> Be advised that Evan Tawil ("Tawil") owes in excess of one hundred thousand dollars to Fine Art Finance LLC ("Fine Art Finance") as the result of his breaches of the Arranger Agreement, dated August 11, 2006 (the "Arranger Agreement") and the Loan and Security Agreement, dated August 11, 2006 (as amended) (the

"Loan Agreement"). Fine Art Finance's rights to recover fees
from Tawil under those Agreements were specifically carved out
of the Collateral Assignment.

It has come to our attention that two pieces of Tawil Collateral
were sold recently by Philips DePury & Company ("Phillips") at
auction for $218,500.00 (the "Sale"). Pursuant to the Arranger
Agreement, Fine Art Finance is required to be paid its Default Sale
Fee (25% of the Sale amount) *before* the proceeds of the Sale are
applied to principal and interest of the Tawil Assigned Loan. *See*
Arranger Agreement at § 4. Accordingly, we demand that
SageCrest provide Fine Art Finance with a cashier's check in the
amount of $54,625.00 at the time the funds from the Sale are
disbursed.

\*\*\*

In light of the foregoing and because Tawil still owes Fine Art
Finance thousands of dollars in Default Sale Fees from prior sales
of Collateral, we hereby demand that SageCrest (i) cease from
transferring to Tawil any of the proceeds in excess of principal,
interest and other costs due under Tawil's Assigned Loan, and (ii)
immediately transfer the excess proceeds and the remaining Tawil
Collateral (Hirst's *Bisphenol A*) to Fine Art Finance.

We demand written confirmation that you will comply with the
foregoing by no later than the close of business on November 30,
2009. If we do not receive adequate assurances, we will be forced
to conclude that SageCrest intends to convey at least some of the
proceeds of the sale to Tawil or to release the Collateral to him,
and will pursue all available remedies including, but not limited to,
seeking to have all proceeds from the Sale turned over to Fine Art
Finance, and filing claims against SageCrest for tortious
interference with Fine Art Finance's rights under the Arranger
Agreement.

Defendants reserve all rights and remedies under the Settlement
Stipulation and all Loan Agreements.

58.  Notwithstanding the fact that Defendants made their position clear, SageCrest

(consistent with its past practices) ignored the November 23 letter, and has since repeatedly and

emphatically disputed Fine Art Finance's right to recover Arranger's Fees on a secured, "first

out" basis from the proceeds of any sales of Assigned Loan Collateral or Two Year Note Collateral.

59.   In or about May 2010, SageCrest, without providing any notice to any Counterclaim Plaintiff, sold certain collateral securing the Assigned Loans.   Specifically, SageCrest sold three paintings which formed part of the collateral securing the loan of Galleria Ramis Barquet NY, Ltd.   Defendants turned over those paintings to SageCrest pursuant to a Stipulation, dated February 19, 2009.   Pursuant to the relevant loan documents, Fine Art Finance is indisputably entitled to an Arranger's Fee resulting from any such sale, again on a first out basis.   However, in a blatant attempt to evade its express obligations to pay Fine Art Finance its Arranger's Fee from the proceeds of that sale, SageCrest failed to provide notice to ACG II and Fine Art Finance as it must, *inter alia*, under Section 9-611 of the New York Uniform Commercial Code.

## FIRST COUNTERCLAIM FOR RELIEF
**(Breach of the So-Ordered Settlement Stipulation)**

60.   Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 59 as if fully set forth herein.

61.   Counterclaim-Plaintiffs and SageCrest are parties to the So-Ordered Settlement Stipulation.

62.   Pursuant to Section 20 of the So-Ordered Settlement Stipulation, SageCrest released all claims against Counterclaim-Plaintiffs for events that occurred prior to or including May 19, 2008, other than for breach of the So-Ordered Settlement Stipulation.

63.   Pursuant to Section 21 of the So-Ordered Settlement Stipulation, SageCrest was explicitly prohibited from ever filing or pursuing any claim against Counterclaim-Plaintiffs based on events that took place prior to May 19, 2008.

64.     Despite this prohibition, SageCrest has twice filed such claims.  The first such claim was SageCrest's original state court complaint, filed January 20, 2009 (the "Complaint"). This prohibited action asserted a fraud claim against all Defendants other than Art Capital, Inc., which claim was clearly based on purported "fraudulent misrepresentations" which SageCrest alleges was made by Defendants Fine Art Finance and ACG Finance LLC before May 19, 2008. The second such claim was SageCrest's Amended Complaint, filed on or about May 19, 2009, which asserted a claim against Defendants Fine Art Finance and Art Capital Inc. for fraudulent inducement, which claim is clearly based on purported "fraudulent misrepresentations" which SageCrest alleges were made by Fine Art Finance and Art Capital Inc. before May 19, 2008.

65.     Accordingly, SageCrest has materially breached its obligations under the So-Ordered Settlement Stipulation.

66.     Counterclaim-Plaintiffs have been (and continue to be) damaged and prejudiced by SageCrest's knowing and deliberate violations of Sections 20 and 21 of the So-Ordered Settlement Stipulation by being forced to expend tens of thousands of dollars in legal fees and other costs that would not have been necessary had SageCrest not engaged in the contumacious action of asserting prohibited fraud and fraudulent inducement claims in its Complaint and Amended Complaint.

67.     By reason of SageCrest's breach of contract, Counterclaim-Plaintiffs have sustained damages in an amount to be determined at trial.

### SECOND COUNTERCLAIM FOR RELIEF
#### (Breach of the So-Ordered Settlement Stipulation)

68.     Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 67 as if fully set forth herein.

69.     Counterclaim-Plaintiffs and SageCrest are parties to the So-Ordered Settlement Stipulation.

70.     Section 33 of the So-Ordered Settlement Stipulation provides that the Assigned Loans were "not to be assigned, transferred or pledged absent the written consent of … ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which consent may be withheld for any reason whatsoever and ACG-II, ACG Finance and Ian Peck shall not be required to disclose or justify their reason…)."

71.     SageCrest's bankruptcy filings in this Court reveal that it holds only a 23% interest in the Assigned Loans.  According to SageCrest, the remaining 77% interests have been "participated out" (*i.e.*, sold or assigned) to "offshore entities."

72.     Neither ACG-II, ACG Finance, Fine Art Finance, nor Ian Peck provided written consent to the assignment by SageCrest of its interests.

73.     Accordingly, SageCrest has materially breached its obligations under the So-Ordered Settlement Stipulation.

74.     SageCrest's knowing and deliberate breach of Section 33 of the So-Ordered Settlement Stipulation has damaged and prejudiced Counterclaim-Plaintiffs, particularly Counterclaim-Plaintiffs ACG-II and Fine Art Finance (which assigned the relevant rights under the Assigned Loans to SageCrest).

75.     The prohibition on assignments or transfers contained in Section 33 of the So-Ordered Settlement Stipulation was a specific, bargained for benefit for Counterclaim-Plaintiffs, intended to guard against certain risk noted earlier.  However, because SageCrest violated Section 33 of the So-Ordered Settlement Stipulation, and assigned a majority interest in the Assigned Loans to "offshore entities," Counterclaim-Plaintiffs have now lost the benefit of this

50

bargain. There is now no way for Counterclaim-Plaintiffs to control any further transfers or assignments of these loans, which – now in the hands of Bermuda-based entities that are not under SageCrest's control – could end up in the portfolios of Counterclaim-Plaintiffs' competitors.

76.     By reason of SageCrest's breach of contract, Counterclaim-Plaintiffs have sustained damages in an amount to be determined at trial.

### THIRD COUNTERCLAIM FOR RELIEF AND THIRD PARTY CLAIM
#### (Breach of the So-Ordered Settlement Stipulation)

77.     Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 76 as if fully set forth herein.

78.     Counterclaim-Plaintiffs, SageCrest and Milton are parties to the So-Ordered Settlement Stipulation.

79.     Sections 33 and 25 prohibits SageCrest and Milton from assigning or transferring any rights under the Settlement Stipulation to certain individual entities or people, including, but not limited to, Andrew C. Rose, Christopher Krecke, ARCK and/or any entities owned, operated and/or controlled by Rose and/or Krecke.

80.     Upon information and belief, SageCrest has violated the So-Ordered Settlement Stipulation by transferring and/or assigning certain rights and/or agreements created thereunder to prohibited persons or entities

81.     By reason of SageCrest's breach of contract, Counterclaim-Plaintiffs have sustained damages in an amount to be determined at trial.

## FOURTH COUNTERCLAIM FOR RELIEF
### (Civil Contempt)

82.     Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 81 as if fully set forth herein.

83.     The So-Ordered Settlement Stipulation is an order of the New York State Supreme Court, entered in the action captioned, *SageCrest II, LLC v. ACG Credit Company LLC, et al.*, Index No. 600195/08.

84.     As alleged above, SageCrest has failed to comply with a number of the provisions of the So-Ordered Settlement Stipulation including, but not limited to, the provision (i) prohibiting it from filing or pursuing any claim against Counterclaim-Plaintiffs based on events that took place prior to May 19, 2008, and (ii) providing that the Assigned Loans were "not to be assigned, transferred or pledged absent the written consent of . . . ACG-II, ACG Finance, Fine Art Finance, and Ian Peck."

85.     As a result of SageCrest's clear and unequivocal failure to comply with a court order, Counterclaim-Plaintiffs have been prejudiced.   SageCrest is therefore in contempt.

86.     Accordingly, Counterclaim-Plaintiffs are entitled to the entry of an Order of Contempt directing SageCrest to pay, *inter alia*, all of Counterclaim-Plaintiffs' fees and costs including, but not limited to, attorneys' fees, and all other remedies under the law.

87.     In the event that SageCrest fails to comply with the Order of Contempt, this Court should direct the U.S. Marshal's Service to seize all of its assets, and imprison each member of SageCrest, and its officers and directors until such time as Counterclaim-Plaintiffs receive all of the monies it is entitled to under the So-Ordered Settlement Stipulation and SageCrest complies with the requirements of the So-Ordered Settlement Stipulation.

## FIFTH COUNTERCLAIM FOR RELIEF
### (Declaratory Judgment)

88.     Counterclaim —Plaintiffs repeat and reallege paragraphs 1 through 87 as if fully set forth herein.

89.     SageCrest's rights with respect to the Assigned Loans are governed by the NY UCC.

90.     Through the execution of the So-Ordered Settlement Stipulation and the Collateral Assignment, SageCrest created a security interest in the Assigned Loans and the Assigned Collateral under UCC Article 9.

91.     Moreover, to attempt to ensure that its security interest took precedence over any potential competing creditors, SageCrest sought to perfect its security interest in the Assigned Loans by obtaining the original notes and in the Assigned Collateral by filing U.C.C. financing statements.

92.     Accordingly, SageCrest became subject to the "good faith" requirements of Article 9 of the N.Y. U.C.C., which provides, at 9-207(c)(2) that "a secured party having possession of collateral or control [over it] … shall apply money or funds received from the collateral to reduce the secured obligation…."

93.     Thus, SageCrest must first attempt to reduce the amount of the $6.7 million by disposing of, or collecting upon the Assigned Loans and the Assigned Collateral *before* seeking to recover any deficiency against ACG-II.  But after SageCrest took over the right to service, administer and collect upon the Assigned Loans in November 2008, it:  (i) failed to use commercially reasonably methods in servicing and/or enforcing its rights under those loans, and (ii) did not sell or otherwise dispose of the collateral it has in its possession in compliance with

the UCC, and (iii) as a result, there are <u>no</u> amounts due and owing to SageCrest from Counterclaim-Plaintiffs.

94. Moreover, "[e]very aspect of a disposition of collateral, including the method, manner, time, and place, and other terms must be commercially reasonable." N.Y.U.C.C. 9-610(b).

95. SageCrest acquired all necessary legal and equitable rights relating to those Assigned Loans in November 2008, but has failed to service, administer and collect upon those loans in the commercially reasonable fashion as required by the UCC.

96. SageCrest has repeatedly and emphatically disputed that it has any obligations under the UCC with respect to the Assigned Loans. As a result, a substantial controversy exists between the parties who have adverse legal interests, regarding the existence and extent of those UCC obligations.

97. Accordingly, ACG-II, Fine Art Finance and ACG Finance seek a declaratory judgment that: (i) SageCrest's efforts to collect on the Assigned Loans and the Two-Year Note are subject to the UCC; and (ii) with respect to SageCrest's efforts to collect on the Assigned Loans, that SageCrest has failed to comply with its UCC obligation to obtain and dispose of the collateral in a commercially reasonable manner.

<u>SIXTH COUNTERCLAIM FOR RELIEF</u>
(Breach of the NY UCC)

98. Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 97 as if fully set forth herein.

99. SageCrest has violated the NY UCC by failing to notify Counterclaim-Plaintiffs of the sale of collateral securing the Assigned Loans.

100.     Since taking over the Assigned Loans in November 2008, SageCrest has sold, or attempted to sell, only a handful of items of the Assigned Loan Collateral.

101.     Upon information and belief, SageCrest arranged for the sale of 3 paintings which formed part of the collateral for Assigned Loan borrower Evan Tawil in late 2009, and two paintings which formed part of the Barquet loan collateral in May 2010.

102.     In a blatant attempt to evade its express obligations to pay Fine Art Finance its Arranger's Fee from the proceeds of those sales, SageCrest failed to provide notice to ACG-II and Fine Art Finance as it must under Section 9-611 of the New York Uniform Commercial Code, and by so doing, violated New York law and damaged defendants ACG-II and Fine Art Finance.

103.     As a direct and proximate result of the aforesaid wrongful acts of SageCrest, Counterclaim-Plaintiffs have suffered damages in an amount to be determined at trial.

## SEVENTH COUNTERCLAIM FOR RELIEF
### (Accounting)

104.     Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 103 as if fully set forth herein.

105.     SageCrest has obligations under Section 14(b) and (c) of the So-Ordered Settlement Stipulation to provide monthly written reports to ACG-II, Fine Art Finance and ACG Finance detailing, *inter alia*, (i) the balance of the Balance and the ACG-II Notes, (ii) the amounts, if any that were obtained during the previous month and a reconciliation and source for such amounts, and (iii) its collection and enforcement efforts to service the loans.

106.     SageCrest has failed to provide sufficiently detailed monthly reports to ACG-II, Fine Art Finance and ACG Finance as required under the So-Ordered Settlement Stipulation .

107.    As a result, ACG-II, Fine Art Finance and ACG Finance have been unable to, among other things, determine what efforts, if any, SageCrest has taken to collect on the Assigned Loans or to sell the collateral securing the Assigned Loans.

108.    Accordingly, Counterclaim-Plaintiffs seek an accounting of all funds received in connection with and/or on account of the Assigned Loans.

### EIGHTH COUNTERCLAIM FOR RELIEF
### (Declaratory Judgment)

109.    Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 108 as if fully set forth herein.

110.    Despite knowledge of Fine Art Finance and ACG Finance's position, SageCrest has consistently ignored their warnings, and repeatedly and emphatically disputed their right to recover Arranger's Fees on a secured, "first out" basis for any sales of Assigned Loan Collateral or Two-Year Note Collateral.

111.    As described above, SageCrest's conduct in this regard was exemplified in the sale of certain artwork to Evan Tawil.

112.    Thus, a substantial controversy exists between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

113.    Such a judgment would serve a useful purpose in clarifying the legal issues involved and offer relief from uncertainty in that the issue of the fees and commissions due to the Arranger under the Arranger Agreement will be settled.

114.    Accordingly, Counterclaim-Plaintiffs seek a declaratory judgment that Counterclaim-Plaintiffs have a secured, "first out" right to Arranger's Fees from SageCrest and/or any underlying borrower for any sales of Assigned Loan Collateral or Two-Year Note Collateral.

## NINTH COUNTERCLAIM FOR RELIEF
### (Tortious Interference)

115.    Counterclaim-Plaintiffs repeat and reallege paragraphs 1 through 114 as if fully set forth herein.

116.    By engaging in the conduct complained herein, SageCrest has intentionally and tortiously interfered with current and/or prospective contractual and economically advantageous relationships between Counterclaim-Plaintiffs and others.

117.    Counterclaim-Plaintiffs had business relations with, among others, Evan Tawil.

118.    Despite SageCrest's knowledge of Counterclaim-Plaintiffs' business relations with Evan Tawil and others, SageCrest interfered with those business relations without justification by, among other things, disputing Fine Art Finance's right to recover Arranger's Fees on a secured, "first out" basis from the proceeds of any sales of Assigned Loan Collateral or Two-Year Note Collateral.

119.    As a direct and proximate result of the aforesaid wrongful acts of SageCrest, Counterclaim-Plaintiffs have suffered damages in an amount to be determined at trial.

**WHEREFORE**, Counterclaim-Plaintiffs respectfully that the Court enter judgment for ACG Credit Company II, LLC, ACG Finance Company, LLC, Fine Art Finance, LLC, Art Capital Group, LLC, Art Capital Group, Inc., and ACG Credit Company, LLC and against Counterclaim-Defendant on each of the counterclaims and grant relief as follows:

1.    On the first, second, third, fourth, sixth, and ninth counterclaims and the third party claim, compensatory and punitive damages in an amount to be determined at trial;

2.    On the fifth counterclaim, a declaration that: (i) SageCrest's efforts to collect on the Assigned Loans and the Two-Year Note are subject to the UCC; and (ii) with respect to

SageCrest's efforts to collect on the Assigned Loans, that SageCrest has failed to comply with its

UCC obligation to obtain and dispose of the collateral in a commercially reasonable manner,

    3.     On the seventh counterclaim, an accounting of all funds received and actions

taken in connection with and/or on account of the Assigned Loans;

    4.     On the eighth counterclaim, a declaration that Fine Art Finance and/or ACG

Finance have a secured, "first out" right to Arranger's Fees from SageCrest and/or any other

underlying borrower for any sales of Assigned Loan Collateral or Two-Year Note Collateral;

    5.     Attorneys' fees and costs;

    6.     Pre- and post-judgment interest; and

    7.     Such other relief as the Court deems just and proper.

Dated:  July 13, 2010

Respectfully Submitted,

/s/ Elizabeth J. Austin
Elizabeth J. Austin (ct04384)
Jessica Grossarth (ct23975)
PULLMAN & COMLEY, LLC
850 Main Street   P.O. Box 7006
Bridgeport, CT   06601-7006
Phone: (203) 330-2243
Fax: (203) 576-8888
Email: eaustin@pullcom.com
        jgrossarth@pullcom.com

SORINROYERCOOPER LLC
Joshua H. Epstein
1230 Avenue of the Americas, 7th Floor
New York, New York  10020
(212) 618-6324

-and-

Christopher R. Donoho, III, Esq.
Hogan Lovells US LLP
875 Third Avenue
New York, NY  10022
(212) 909-0600
*Attorneys for the ACG Parties*

Attorneys for Defendants-
        Counterclaim Plaintiffs

59

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on July 13, 2010, a true and correct copy

of the ***Defendants' Answer, Counterclaims and Third Party Claim*** was served by electronic

transmission on the parties identified on attached Schedule A.

/s/ Elizabeth J. Austin

Elizabeth J. Austin (ct04384)

## SCHEDULE A

**Via Pacer/ECF Service:**

| | | |
|---|---|---|
| **James Berman**<br>Zeisler and Zeisler<br>558 Clinton Avenue<br>P.O. Box 3186<br>Bridgeport, CT 06605<br>(203) 368-4234<br>jberman@zeislaw.com | representing | **SageCrest II LLC**<br>Three Pickwick Plaza<br>Suite 400<br>Greenwich, CT 06830<br>*(Plaintiff)* |

**Via Email Transmission:**

**Douglas J Buncher**
Neligan Foley LLP
325 N. St. Paul
Suite 3600
Dallas, TX 75201
(214) 840-5300
(214) 840-5301 (fax)
dbuncher@neliganlaw.com

**Mark E McGrath**
Sheppard, Mullin, Richter & Hampton, LLP
30 Rockefeller Plaza, Suite 2400
New York, NY 10112
212-653-8700
212-653-8701 (fax)
mmcgrath@sheppardmillin.com

**Robert S. Friedman**
Sheppard, Mullin, Richter & Hampton, LLP
30 Rockefeller Plaza, Suite 2400
New York, NY 10112
(212) 653-8700
(212) 653-8701 (fax)
rfriedman@sheppardmullin.com

ACTIVE/73355.1/JXG/2197179v1
ACTIVE/73355.1/JXG/2197193v1