# EXHIBIT 14

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: IAS PART 12
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

HAHN & HESSEN LLP,

               Plaintiff,

          -against-

IAN PECK, individually and as Executor of the
Estate of Joan Peck, ART CAPITAL GROUP,
LLC, ART CAPITAL GROUP, INC., FINE ART
FINANCE, LLC, ACG CREDIT COMPANY,
LLC, ACG CREDIT COMPANY II, LLC and
ACG FINANCE COMPANY, LLC

               Defendants.

         Index. No. 08-603122

         Honorable Barbara Jaffe

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## NOTICE OF ENTRY OF DECISION AND ORDER

        PLEASE TAKE NOTICE THAT annexed hereto is a true and correct copy of a Decision and Order in the referenced matter dated November 25, 2013 and entered in the office of the Clerk of this Court.

Dated:     December 2, 2013
          New York, New York

               PADUANO & WEINTRAUB LLP

               By: _Meredith Cavallaro/E.B._
                  Leonard Weintraub
                  Meredith Cavallaro
               1251 Avenue of the Americas
               Ninth Floor
               New York, New York 10020
               (212) 785-9100

-and-

John P. Amato
Stephen J. Grable
HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
(212) 478-7200

Attorneys for Plaintiff
Hahn & Hessen LLP

To:   Joshua H. Epstein
      Michael B. Roth
      Alan S. Gruber
      SorinRand LLP
      515 Madison Avenue, 13th Floor
      New York, New York 10022
      (212) 600-2085

      Attorneys for Defendants
      Ian Peck, Art Capital Group, LLC,
      Art Capital Group, Inc., Fine Art Finance, LLC,
      ACG Credit Company, LLC, ACG Credit Company II, LLC
      and ACG Finance Company, LLC

[FILED: NEW YORK COUNTY CLERK 11/29/2013]   INDEX NO. 603122/2008
NYSCEF DOC. NO. 184                           RECEIVED NYSCEF: 11/29/2013

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT: **BARBARA JAFFE**
_J.S.C._
_Justice_

PART *12*

Index Number : 603122/2008
HAHN & HESSEN LLP
vs.
PECK, IAN
SEQUENCE NUMBER : 012
DISMISS

INDEX NO. *603122/08*
MOTION DATE _____
MOTION SEQ. NO. *012*

*Dismiss*

The following papers, numbered 1 to _____, were read on this motion to/for

Notice of Motion/Order to Show Cause — Affidavits — Exhibits | No(s). _____
Answering Affidavits — Exhibits | No(s). _____
Replying Affidavits | No(s). _____

Upon the foregoing papers, it is ordered that this motion is

*DECIDED IN ACCORDANCE WITH ACCOMPANYING DECISION / ORDER*

Dated: *11/25/13*                                 _BARBARA JAFFE_ J.S.C.
                                                   J.S.C.

1. CHECK ONE: .................... ☐ CASE DISPOSED   ☑ NON-FINAL DISPOSITION
2. CHECK AS APPROPRIATE: ....MOTION IS: ☐ GRANTED ☐ DENIED ☑ GRANTED IN PART ☐ OTHER
3. CHECK IF APPROPRIATE: ........ ☐ SETTLE ORDER   ☐ SUBMIT ORDER
                                   ☐ DO NOT POST  ☐ FIDUCIARY APPOINTMENT ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK   :   IAS PART 12
------------------------------------------------------------x

HAHN & HESSEN LLP,                                    Index No. 603122/08

                        Plaintiff,                   Mot. seq. no. 012

          - against -                                **DECISION AND ORDER**

IAN PECK, individually and as Executor of the
estate of Joan Peck, ART CAPITAL GROUP, LLC,
ART CAPITAL GROUP, INC., FINE ART FINANCE,
LLC, ACG CREDIT COMPANY, LLC, ACG CREDIT
COMPANY II, LLC, and ACG FINANCE COMPANY,
LLC,

                        Defendants.
------------------------------------------------------------x
ART CAPITAL GROUP, LLC, ART CAPITAL
GROUP, INC., FINE ART FINANCE, LLC, ACG
CREDIT COMPANY, LLC, ACG CREDIT COMPANY
II, LLC, and ACG FINANCE COMPANY, LLC,

                        Counterclaim-Plaintiffs,

          -against-

HAHN & HESSEN LLP,

                        Counterclaim-Defendant.
------------------------------------------------------------x
BARBARA JAFFE, J.:

**For plaintiff/counterclaim-defendant:**          **For defendants/counterclaim-plaintiffs:**
Leonard Weintraub, Esq.                             Joshua H. Epstein, Esq.
Meredith Cavallaro, Esq.                            Michael B. Roth, Esq.
Paduano & Weintraub LLP                             Sorin Rand LLP
1251 Ave. of the Americas                           515 Madison Ave.
New York, NY 10020                                  New York, NY 10022
516-785-9100                                        212-600-2085

Art Capital Group, LLC (ACG) and its related companies, Art Capital Group, Inc, Fine

Art Finance, LLC, ACG Credit Company, LLC, ACG Credit Company II, LLC and ACG

Finance Company, LLC, all owned and operated by Ian Peck (defendants), provide financing

services to art and antique owners. They were represented in various legal matters by plaintiff counterclaim-defendant Hahn & Hessen LLP (plaintiff) until the relationship terminated in or about July 2008. Thereafter, plaintiff sued defendants, alleging their failure to pay legal fees. Defendants assert two counterclaims for attorney malpractice, alleging that plaintiff negligently drafted two settlement agreements.

Plaintiff now moves pursuant to CPLR 3212 for an order dismissing the counterclaims and pursuant to CPLR 4317(b) for an order of reference for a determination of the reasonable value of its fees. Defendants oppose.

## I.   GOVERNING LAW

A party seeking summary judgment must demonstrate, *prima facie*, that it is entitled to judgment as a matter of law, by presenting sufficient evidence to negate any material issues of fact. (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 314 [2004]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If the movant meets this burden, the opponent must offer admissible evidence to demonstrate the existence of factual issues that require a trial. (*Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). If the movant does not meet this burden, the motion must be denied, regardless of the sufficiency of the opposition. (*Winegrad*, 64 NY2d at 853). A defendant moving for summary judgment must negate, *prima facie*, an essential element of the plaintiff's cause of action. (*Rosabella v Metro. Trans. Auth.*, 23 AD3d 365, 366 [2d Dept 2005]). Moreover, to sustain its burden, a movant cannot simply reveal gaps in its opponent's case, but must "affirmatively demonstrate the merit of its claim or defense." (*Mennerich v Esposito*, 4 AD3d 399, 400 [2d Dept 2004]).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate

2

inferences from the facts are jury functions." (*Forrest*, 3 NY3d at 315, *quoting Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 [1986]). Thus, a court does not assess credibility on a motion for summary judgment "unless it clearly appears that the issues are not genuine, but feigned." (*Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439, 441 [1968]).

 To establish a claim for legal malpractice, a party must show that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession, and that the attorney's breach of this duty proximately caused the party to sustain actual and ascertainable damages. (*Rudolph v Shayne, Dachs, Stanisci, Corker & Sauer*, 8 NY3d 438 [2007]). The party asserting the claim must show that it would not have sustained damages but for the attorney's malpractice. (*Id.* at 442; *Waggoner v Caruso*, 14 NY3d 874 [2010]). Demonstrating that the attorney's malpractice was a substantial factor or a proximate cause of the damages is insufficient. (*See* NY PJI 2:152; *Joseph DelGreco & Co., Inc. v DLA Piper L.L.P.* (U.S.), 899 F Supp 2d 268, 282 [SDNY 2012] *aff'd* _ Fed Appx _, 2013 WL 5340403 [2d Cir 2013]). An attorney establishes her *prima facie* entitlement to summary judgment by demonstrating that the plaintiff is unable to prove at least one essential element of its malpractice cause of action. (*Schurz v Bodian*, 92 AD3d 753, 754 [2d Dept 2012]).

 When the malpractice claim concerns matters not within the ken of an ordinary person, an attorney must proffer an expert opinion that one or all of the elements of the claim is absent in order to prevail on a motion for summary judgment. (*Cosmetics Plus Group, Ltd. v Traub*, 105 AD3d 134, 141 [1ˢᵗ Dept 2013] *lv denied* 2013 NY Slip Op 91096; *Wo Yee Hing Realty, Corp. v Stern*, 99 AD3d 58, 63 [1ˢᵗ Dept 2012]). Once the attorney-movant establishes its *prima facie* entitlement to summary judgment, the opponent must submit its own expert testimony to raise a

3

triable issue. (*Orchard Motorcycle Distributors, Inc. v Morrison Cohen Singer & Weinstein, LLP*, 49 AD3d 292, 293 [1st Dept 2008]).

## II. THE SAGECREST COUNTERCLAIM

### A. Background

In 2007, SageCrest II, LLC (SageCrest), a private equity firm, sued defendants, alleging that they had defaulted under the terms of a loan. (*SageCrest II LLC v ACG Credit Company, LLC, et al.*, index No. 600195/2007). (NYSCEF 157). On or about September 11, 2007, another justice of this court granted an *ex parte* order of attachment against defendants ACG Credit Company, LLC and Art Capital Group II, LLC (ACG II), securing $29,841,156.19 allegedly owed SageCrest. Following a mediation session on January 25, 2008, the parties signed a short-form settlement agreement, which, *inter alia*, requires that defendants pay SageCrest $29,925,000, $21 million of which would effectively vacate the order of attachment. The agreement is subject to further revisions and final documentation, and either party is authorized to submit it to the court to be so-ordered. (*Id.*, Exh. B).

Unable to secure the $21 million, defendants, represented by plaintiff, sought to renegotiate the terms of the settlement, offering $14.3 million in cash and an assignment of $6.7 million in loans due defendant ACG II. SageCrest rejected defendants' offer and sought by motion to have the court so-order the short-form agreement. (NYSCEF 157, Exh. C). In response, defendants sought, also by motion, to have the proposed assignment treated as the "cash equivalent" of the $6.7 million. They attached to their motion an affidavit from Peck asserting his repeated and unsuccessful efforts to assure SageCrest that the loans would be paid. (*Id.*, Exh. D).

4

On April 7, 2008, at oral argument on the motions, at which Peck was present, another justice of this court declined to modify the settlement, indicating on the record that SageCrest was warranted in being skeptical about the value of the proposed assignment of the loans. (*Id.*, Exh. E). On April 15, 2008, upon learning that the parties had still not reached a settlement, the justice renewed her attempt to persuade defendants to provide security for the loans. (*Id.*, Exh. F).

By email dated April 17, 2008, plaintiff, through member Zachary Newman, sought Peck's approval of a draft term sheet to be sent to SageCrest reflecting, among other things, that SageCrest's sole recourse to collecting the $6.7 million in the event of default would be against the assigned loans, not defendants ("sole recourse provision"). Newman nonetheless attached to the email the transcript of the April 15 oral argument and advised Peck of the court's position that security for the loans was essential. (NYSCEF 170). Later that day, plaintiff emailed the term sheet to SageCrest's counsel. (NYSCEF 171).

On April 21, 2008, when next before the court, SageCrest's counsel complained of defendants' refusal to offer any security for the loans, and the court reiterated her view that absent an offer of sufficient security by April 30, she would so-order the short-form agreement. (NYSCEF 179). The deadline was subsequently extended to May 19. (NYSCEF 157).

By email dated May 9, 2008, plaintiff sent Peck a new draft of the settlement documents for his review. Peck's desired sole recourse provision was prominently deleted. (NYSCEF 157, Exhs. H, I). Over the next few days, Peck and Newman repeatedly communicated. (*Id.*, Exhs. J-P). Peck insisted that he would not close until he was completely comfortable with the settlement terms, disdainfully disregarding the court's position and predicting that SageCrest would cave in at the "last minute." (*Id.*, Exh. N). Newman disagreed and advised Peck to settle

5

as further negotiations would be fruitless and a failure to come up with sufficient security by the May 19 deadline would result in defendants having to pay the full amount pursuant to the short-form settlement agreement. (*Id.*, Exh. O).

Pursuant to the final agreement, all rights under the loans are assigned to SageCrest, and after six months, ACG II would transfer to SageCrest the remaining balance on any of the outstanding assigned loans, upon which Peck would provide a limited personal guarantee of $1 million. (NYSCEF 157, Exh. A). Expressly excluded from the loan assignment to SageCrest are any rights to receive various expenses associated with the sale of a defaulting borrower's collateral (arranger's fees), which defendant companies would retain for their own use and benefit. However, defendants would retain no rights to arranger's fees if they fail to pay the balance of the $6.7 million assignment. (NYSCEF 174). The parties also certified having read the agreement and fully understanding all of its terms. (NYSCEF 157, Exh. A).

On May 18, Peck reviewed and signed the final agreement without a sole recourse provision. (*Id.*, Exh. A). The following day, the agreement was so-ordered. (*Id.*). On or about January 20, 2009, SageCrest sued defendants for breaching the terms of the settlement agreement. (*SageCrest II, LLC v Ian S. Peck, et al.*, index No. 600166/2009). (*Id.*, Exh. R). In the course of that litigation, SageCrest indicated, *inter alia*, that the provision divesting defendants' of their rights to arranger's fees in the event of their default was included at SageCrest's repeated insistence during negotiations. (NYSCEF 180).

At examinations before trial (EBT) held on June 14, 2011 and August 2, 2012, Newman testified that Peck was actively involved in the negotiations and attended numerous negotiating sessions with SageCrest, and that he and Peck were in regular contact, discussing every aspect of

6

the agreement. He specifically recalls discussing with Peck the deletion of the sole recourse provision on either May 8 or 9, and recounts that on May 18, Peck spent several hours carefully reading the agreement, and that he and Peck discussed various provisions at length prior to closing. (NYSCEF 181, 182).

At an EBT held on June 27, 2011, Peck testified that he recalled questioning Newman on May 18 as to whether the agreement protected him personally, and that Newman responded that the pledged loans were the sole security for the assignment, along with the "credit enhancement of my limited personal guarantee," and that this limitation of liability was the "beauty of the settlement." (NYSCEF 168). Although Peck conceded that he had no reason to believe that SageCrest had agreed to the sole recourse provision, he nonetheless maintained that he thought that the sole recourse provision was included in the final agreement. (NYSCEF 168).

## B. Contentions

Defendants allege that plaintiff's deletion of the sole recourse provision was without Peck's knowledge or consent, and that the 2009 SageCrest action is the direct and proximate result of plaintiff having Peck sign an agreement which exposed defendants to additional liability. They also argue that plaintiff should have added a provision ensuring their right to arranger's fees, and that plaintiff's failure to do so has left them with little to no leverage against defaulting borrowers, who are now making principal and interest payments to SageCrest. (NYSCEF 166).

Plaintiff maintains that SageCrest would never have agreed to the sole recourse provision in the final agreement, and that Peck's continued involvement in the negotiations reflects his awareness that it was deleted from the final agreement. It argues that Peck's acknowledgment

7

that he had read and understood the terms of the agreement precludes the malpractice claim and

that defendants cannot show that the deletion of the sole recourse provision resulted in the 2009

action, as SageCrest would have rejected it in any event.  Rather plaintiff claims that the 2009

action resulted from defendants' default, for which plaintiff cannot be held liable.

Plaintiff observes that defendants identify no arranger's fees that they have failed to

recover due to the alleged negligence, and that SageCrest has made it clear that it would not

agree to any provision entitling defendants to any fees before being paid the $6.7 million in full.

(NYSCEF 158, 159, 175, 176).

By affidavit dated January 11, 2013, Peck denies that Newman discussed the deletion of

the sole recourse claim with him, and that to the contrary, Newman assured him that the

agreement contained the "protective language." (NYSCEF 169).

<u>C. Analysis</u>

Here, plaintiff has established with admissible evidence that SageCrest rejected

defendants' offer of $13.3 million in cash and $6.7 million in unsecured loans, a position

sanctioned by the court at oral argument.  Thus, plaintiff had no basis to include the sole recourse

provision in subsequent drafts of the agreement.

Moreover, it is undisputed that SageCrest repeatedly rejected defendants' assurances that

the $6.7 million loan assignment was equivalent to cash, that SageCrest intended to have the

short-form settlement so-ordered in response to defendants' offer, that Peck was present at oral

argument when the court stated that additional security for the loans was essential, that Newman

advised Peck that the court had reiterated that defendants should provide additional security, that

Newman emailed Peck the draft agreement in which the deletion of the sole recourse provision is

8

highlighted, and that Peck acknowledged his awareness of the court's view by expressing disdain

for it. Consequently, Peck's claim that he was unaware that the sole recourse provision was

included in the final agreement appears feigned and designed to avoid the consequence of having

to pay plaintiff's fees. Plaintiff has also demonstrated that it duly advised defendants on the

agreement. The undisputed facts also reflect that SageCrest would have rejected an assignment

of unsecured loans.

Plaintiff has thus established, *prima facie*, that it did not breach the standard of

professional care and that its actions were not the proximate cause of the 2009 action. (*See*

*Engelke v Brown Rudnick Berlack Israels LLP*, _ NYS2d _, 2013 NY Slip Op 07419 [1st Dept

2013] [plaintiff could not show with sufficient certainty that, absent alleged malpractice, he

would have been able to avert defending second lawsuit]; *Natural Organics Inc. v Anderson Kill*

*& Olick, P.C.*, 67 AD3d 541, 542 [1st Dept 2009], *lv dismissed* 14 NY3d 881 [2010] [plaintiff

failed to demonstrate causal connection between alleged malpractice and injuries]; *Cohen v*

*Weitzner*, 47 AD3d 594, 595 [1st Dept 2008] [typographical error on defendant attorneys'

spreadsheet not proximate cause of plaintiffs' injury]; *Leder v Speigel*, 31 AD3d 266, 268 [1st

Dept 2006], *affd* 9 NY3d 836 [2007], *cert denied* 552 US 1257 [2008] [plaintiff's malpractice

claim based on unsupported, conclusory assertion that defendant's alleged erroneous advice

proximately caused injury]; *Merz v Seaman*, 265 AD2d 385, 389 [2d Dept 1999] [defendant

attorneys who allegedly negligently drafted contract not liable for failing to warn banker-client

about repercussions of personal guarantee]; *Levine v Lacher & Lovell-Taylor*, 256 AD2d 147 [1st

Dept 1998] [plaintiff's disposition of collateral in disregard of court order was sole proximate

cause of his injury; that alleged negligent drafting of loan agreement contributed to injury

9

speculative]).

Defendants also fail to identify any assigned loan which would have entitled them to arranger's fees but for plaintiff's negligence. Consequently, their claim in this regard is fatally conclusory. (*See Rudolf*, 8 NY3d at 442 [plaintiff's *prima facie* burden to show actual and ascertainable damages]). In any event, plaintiff succeeded in procuring for defendants entitlement to arranger's fees, and defendants' unsupported claim that plaintiff should have secured an enforcement mechanism to ensure the payment of fees in the event of their own default upon the $6.7 million, is meritless. (*Giambroni v Bank of New York*, 253 AD2d 786, 787 [2d Dept 1998] [mere speculation of loss insufficient to establish damages]). And, SageCrest would have rejected an agreement allowing for defendants to collect fees while in default.

<u>III. THE TUNKL COUNTERCLAIM</u>

<u>A. Background</u>

On or about September 12, 2007, defendants ACG Finance Company, LLC (ACG Finance) and Fine Art Finance, LLC (Fine Art Finance) commenced an action in Los Angeles Superior Court against California art dealer David Tunkl, alleging that he had defaulted on a loan agreement. By email dated February 8, 2008, Ryan Baird, managing director of defendant companies and a named party in the Tunkl lawsuit, advised Peck that he had reviewed a settlement offer from Tunkl and indicated that he was in favor of it. (NYSCEF 157, Exh. X).

The parties thus drafted an agreement, dated February 29, 2008, directing Tunkl to pay defendants $1,050,000 and transfer to them two Andy Warhol prints. All of the parties signed the agreement on April 22, 2008, acknowledging, in pertinent part, that they had read and fully understood its terms. (NYSCEF 157, Exh. V).

10

In their counterclaim, defendants allege that Peck directed Newman to include attorney fees in the agreement, and that Newman failed to do so. (NYSCEF 166).

At an EBT held on June 29, 2011, Baird testified that the Tunkl settlement was favorable to defendants, that Peck never complained to him about the terms, and that he recalled nothing negative about plaintiff's work in connection with the settlement. (NYSCEF 158, Exh. E). At an EBT held on August 16, 2011, Peck testified that he valued the Warhol prints at approximately $150,000, and the total settlement at $1,180,000. (*Id.*, Exh D). By affirmation dated November 27, 2012, Newman denies that Peck directed him to recover the fees in addition to the $1,180,000, and characterizes the settlement as generous enough to have encompassed most of the fees. (NYSCEF 157, Newman Aff.).

<u>B.  Contentions</u>

Plaintiff alleges that defendants have produced no documents during discovery evidencing the extent of damages, if any, that they suffered as a result of the Tunkl settlement, and further, that Peck's admission in the agreement that he read and understood its terms, along with Baird's acknowledgment that the settlement was favorable, demonstrate that defendants cannot establish, *prima facie*, their malpractice claim. (NYSCEF 159, 175).

Defendants maintain, relying solely on Peck, that the Tunkl note expressly entitles them to fees in the event of default, and that Newman's failure to secure these fees constitutes malpractice.  They deny that Peck's signature on the agreement establishes Newman's freedom from fault. (NYSCEF 165).

<u>C.  Analysis</u>

Here, plaintiff has demonstrated, through Baird's acknowledgment, that the settlement

11

was favorable to defendants, and has therefore established, *prima facie*, an absence of malpractice. Defendants' conclusory assertion that the settlement was unfavorable solely by virtue of the absence of a provision for attorney fees fails to raise a triable issue. (*Kluczka v Lecci*, 63 AD3d 796, 798 [2d Dept 2009] [on issue of damages, opponent of summary judgment must submit evidentiary proof that he would have reached more favorable agreement but for attorney's negligence]). Moreover, whether attorneys' fees in addition to the $1,180,000 was recoverable but for plaintiff's negligence is not within the ken of an ordinary person, as it necessarily requires a determination as to the legitimacy of defendants' underlying suit to recover on the note against Tunkl. Therefore, expert testimony is required. (*See Wo Yee Hing Realty, Corp. v Stern*, 99 AD3d 58, 63 [1st Dept 2012] [malpractice claims requiring complex and byzantine matters of law require expert testimony]). And, defendants do not even submit the Tunkl note.

### IV.  ORDER OF REFERENCE

Absent any indication that plaintiff has prevailed on its underlying causes of action against defendants, an order of reference is premature.

### V.  CONCLUSION

Accordingly, it is hereby

ORDERED, that plaintiff/counterclaim-defendant Hahn & Hessen LLP's motion for summary judgment as to defendants/counterclaim-plaintiffs Art Capital Group, LLC, Art Capital Group, Inc, Fine Art Finance, LLC, ACG Credit Company, LLC, ACG Credit Company II, LLC and ACG Finance Company, LLC's third and fourth counterclaim is granted; it is further

ORDERED, that Plaintiff's motion for an order of reference is denied; and it is further

12

ORDERED, that the Clerk is directed to enter judgment accordingly.

ENTER:

Barbara Jaffe, JSC

DATED:      November 25, 2013
            New York, New York

13