UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAGECREST II, LLC <br><br> Plaintiff, <br><br> - against - <br><br> ACG CREDIT COMPANY II, LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE, LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP, INC., ACG CREDIT COMPANY, LLC, and IAN S. PECK, <br><br> Defendants. | 3:13-cv-973-SRU |
| SAGECREST II, LLC <br><br> Plaintiff, <br><br> - against - <br><br> IAN S. PECK, ACG CREDIT COMPANY II LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP INC., and ACG CREDIT COMPANY, LLC, <br><br> Defendants. | 3:13-cv-974-SRU <br><br><br> June 11, 2014 |

**JOINT PRE-TRIAL MEMORANDUM**

Pursuant to the Pre-Trial Order dated April 23, 2014, and in compliance with Rule 16 of the Local Rules of Civil Procedure Plaintiff John D. Huber, as Trustee of the SageCrest Liquidating Trust[1], and Defendants Ian S. Peck ("Peck"), ACG Credit Company II LLC ("ACG-II"), ACG Finance Company ("ACG Finance"), Fine Art Finance LLC ("Fine Art Finance"), Art Capital Group, LLC ("Art Capital LLC"), Art Capital Group, Inc. ("Art Capital Inc."), and ACG Credit Company, LLC ("ACG-I and, together with Peck, ACG-II, Fine Art Finance, Art Capital LLC, and Art Capital Inc., "Defendants") respectfully submit this joint pre-trial memorandum.

## 1.    TRIAL COUNSEL

### A.    Plaintiff's Counsel

Robert S. Friedman, Esq.
Mark E. McGrath, Esq.
Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Fax: (212) 653-8700

James Berman
Zeisler & Zeisler, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: (203) 368-4234
Fax:  (203) 367-9678

---

[1]    Plaintiff represents that the SageCrest Liquidating Trust is the successor-in-interest to the named Plaintiff, SageCrest II, LLC ("SageCrest"), because all of the assets of SageCrest (and other entities) were assigned to the SageCrest Liquidating Trust pursuant to the terms of a Plan of Reorganization that was confirmed by the United States Bankruptcy Court for the District of Connecticut on December 13, 2011.  Pursuant to that Plan, Mr. Huber serves as the Trustee for the SageCrest Liquidating Trust, and the term "Plaintiff" refers to SageCrest, Mr. Huber, and the SageCrest Liquidating Trust.

**B.**   **Defendants' Counsel**

Ari J. Hoffman
Vincent Marino
Philip C. Pires
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Telephone:  (203) 368-0211
Fax:  (212) 337-5522

## 2.   JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), which grants

to district courts "original but not exclusive jurisdiction of all civil proceedings arising under title

11, or arising in or related to cases under title 11."  Further, this Court has jurisdiction over these

actions pursuant to 28 U.S.C. § 1332 because (a) Plaintiff is a resident of the State of Illinois, (b)

Defendant Peck is a resident of the State of New York, (c) Art Capital LLC is the sole member

of Defendants ACG-I, ACG-II, Fine Art Finance, and ACG Finance and Peck is the sole member

of Art Capital LLC, (d) Art Capital Inc. is a Delaware corporation with its principal place of

business in the State of New York, and (e) the amount in controversy exceeds $75,000.

## 3.   JURY/NON-JURY

This case is to be tried by the Court.

## 4.   LENGTH OF TRIAL

The parties estimate that they will need 5 trial days.  Excluding cross-examination,

Plaintiff estimates that his case-in-chief will last two days (one of the witnesses will be Peck) and

Defendants estimate that their case-in-chief will last 1-2 days.  Plaintiff may present a rebuttal

case, the length of which will depend on the testimony during Defendants' case.  Defendants

reserve their right to object to Plaintiff's presentation of a rebuttal case, and in the alternative,

Defendants may present a rebuttal defense, the length of which will depend on the testimony during Plaintiff's rebuttal case.

Defendants further request that the issue of an award of attorney's fees to either party, if necessary, be adjudicated in a separate hearing.  Plaintiff objects to Defendants' request.

## 5.   FURTHER PROCEEDINGS

Defendants request an adjudication of their Motion to Dismiss.  (Dkt. No. 37.)

## 6.   NATURE OF CASE

### A.   Plaintiff's Claims and Defendants' Affirmative Defenses

Defendants agreed to settle a prior action and a court ordered Defendants to pay to Plaintiff the sum of $29,925,000.  Defendants have failed and refused to pay $11,125,000 after an opportunity to cure.  Of the approximately $18,800,000 that was paid, over $14 million came from an escrow account that was holding funds paid by another borrower and almost $4 million came from a payoff of another borrower.  Thus, Defendants paid less than $1 million out of their own pockets.  Plaintiff's exhaustive efforts to mitigate his damages have reduced the amount outstanding to approximately $6 million, exclusive of Plaintiff's attorneys' fees and costs that are due and owing under the Agreement and as a result of Defendants' contempt.

### 1.   Plaintiff's Claims Regarding the Assigned Loans

The first cause of action is against ACG-II, Fine Art Finance, ACG Finance, and Peck for breach of a Settlement Stipulation and Mutual Release, dated May 19, 2008, which was "so ordered" by the Honorable Eileen Bransten of the Supreme Court of the State of New York and was entered by the Clerk of that court on the same date (the "So-Ordered Settlement Stipulation").  ACG-II breached its obligations to pay to Plaintiff the sum of $6,700,000 (the "Balance") plus interest (the "Additional Interest") on November 19, 2008.  ACG-II, Fine Art Finance, ACG Finance, and Peck breached their obligations to refrain from extending the

maturity dates of certain loans that were assigned to Plaintiff (collectively, the "Assigned Loans"). As a result of those breaches, Defendants frustrated Plaintiff's ability to collect on the terms of Peck's $3 million guarantee securing the payment of the Balance and Additional Interest.    The relief sought is (i) damages in an amount to be determined at trial, but in no event less than $2.6 million and both pre- and post-judgment interest at the Additional Interest rate; (ii) a declaration that the termination provision in the Assigned Loan Guarantee is stricken; and (iii) a finding that Defendants are alter egos of one another and, therefore, all Defendants are jointly and severally liable for any damages.

The second cause of action is against Fine Art Finance, ACG Finance, and Peck for breach of the So-Ordered Settlement Stipulation based on false representations and warranties regarding the outstanding principle balance of the Assigned Loans and the Assigned Collateral. The relief sought is damages in an amount to be determined at trial, but in no event less than $300,000, plus both pre- and post-judgment interest at the statutory interest rate.

The third cause of action is against all Defendants except Art Capital Inc. for breach of the So-Ordered Settlement Stipulation based on interference with the underlying borrowers on the Assigned Loans.   The relief sought is damages in an amount to be determined at trial, plus both pre- and post-judgment interest at the statutory interest rate.

The fourth cause of action is against ACG-II for specific performance of the So-Ordered Settlement Stipulation based on failure to establish a bank account that Plaintiff would control (the "Blocked Account").  The relief sought is specific performance of the obligations in the So-Ordered Settlement Stipulation and the Blocked Account Agreement.

The fifth cause of action is against ACG-II, Fine Art Finance, and ACG Finance for specific performance of the So-Ordered Settlement Stipulation based on failure to provide

required monthly reporting.  The relief sought is specific performance of the reporting requirements contained in the So-Ordered Settlement Stipulation and a declaration that ACG-II, Fine Art Finance, and ACG Finance are not entitled to any reimbursement for any costs or expenses incurred after June 30, 2008 because they failed to comply with the reporting requirements.

The sixth cause of action is against all Defendants for conversion based on failure to remit to SageCrest funds that were entrusted to the Defendants on behalf of SageCrest.  The relief sought is damages in an amount to be determined at trial, but in no event less than $650,000, plus both pre- and post-judgment interest at the statutory interest rate.

The seventh cause of action is against Fine Art Finance, ACG Finance, and Art Capital Inc. for turnover of assets pursuant to Article 9 of the New York Uniform Commercial Code ("UCC") based on failure to turn over to SageCrest assets received on account of or with respect to the Assigned Loans and the Assigned Collateral despite SageCrest's perfected security interest.  The relief sought is the turnover of any and all funds that Fine Art Finance, ACG Finance, and Art Capital Inc. received from the underlying borrowers, plus both pre- and post-judgment interest at the statutory interest rate.

The eighth cause of action is against all Defendants except Art Capital Inc. for civil contempt based on failure to comply with a number of the provisions of the So-Ordered Settlement Stipulation and a Court Order.  The relief sought is an Order of Contempt directing Defendants to wire transfer to SageCrest the remaining Balance, the accrued Additional Interest, all of SageCrest's fees and costs, and all other remedies under the law.  The eighth cause of action also seeks to recover all of Plaintiff's attorneys' fees and costs.

The ninth cause of action is against all Defendants for civil contempt based on the withdrawal, use, and transfer of funds from the Art Capital Inc. account and failure to comply with Court Orders.  The relief sought is an entry of an Order of Contempt directing Defendants to immediately wire transfer to SageCrest an amount equal to all amounts withdrawn, paid out of, or transferred out of the Art Capital Inc. account after February 13, 2009, plus attorneys' fees, costs, both pre- and post-judgment interest at the statutory interest rate, and all other remedies under the law.

The tenth cause of action is against all Defendants for tortious interference for repeated interference with SageCrest's rights under the Assigned Loans and with the underlying borrowers.  The relief sought is damages in an amount to be determined at trial, plus both pre- and post-judgment interest at the statutory interest rate.

The eleventh cause of action is against Fine Art Finance and Art Capital Inc. for fraudulent inducement based on false representations and warranties in the form of due diligence disclosures to induce SageCrest to accept less than a $21 million cash payment on May 19, 2008.  The relief sought is damages in an amount to be determined at trial, plus attorneys' fees, costs, and both pre- and post-judgment interest at the statutory interest rate.

The twelfth cause of action is against all Defendants for fraud based on false and misleading statements and representations intended to deceive SageCrest regarding the amount(s) of funds received from the underlying borrowers on the Assigned Loans and the locations of the Assigned Collateral.  The relief sought is damages in an amount to be determined at trial, plus attorneys' fees, costs, and both pre- and post-judgment interest at the statutory interest rate.

2.      Causes of Action Regarding the 2-Year Note

The first cause of action is against all Defendants (based on alter ego) for nonpayment of a two-year note in the amount of $4,425,000 (the "2-Year Note") based on their failure to pay the 2-Year Note on May 19, 2010. The relief sought is damages in an amount to be determined at trial, but in no event less than $3,710,154.20, plus attorneys' fees, costs, and both pre- and post-judgment interest.

The second cause of action is against all Defendants for breach of the IPFP Agreement, as defined in the So-Ordered Settlement Stipulation, based on the movement of at least one piece of the IPFP Collateral without notice to SageCrest or SageCrest's consent. The relief sought is damages in an amount to be determined at trial, plus both pre- and post-judgment interest.

The third cause of action is against all Defendants for breach of the So-Ordered Settlement Stipulation based on movement of the Other Art Loan Collateral, as defined therein, without notifying SageCrest and failure to notify SageCrest of any materially adverse change in the financial condition of the underlying borrowers of the Socolof loan or the Bailey loan. The relief sought is damages in an amount to be determined at trial, but in no event less than $2 million, plus attorneys' fees, costs, and both pre- and post-judgment interest.

The fourth cause of action is against all Defendants for conversion based on Defendants' failure to remit to SageCrest funds received on behalf of SageCrest. The relief sought is damages in an amount to be determined at trial, but in no event less than $310,000, plus punitive damages, attorneys' fees, costs, and both pre- and post-judgment interest.

The fifth cause of action is against all Defendants for turnover of assets pursuant to Section 542 of the Federal Bankruptcy Code and the UCC based on SageCrest's first priority perfected security interest in the Other Art Loan Collateral, the Gill Furniture Lot, and the IPFP Collateral and ACG-II's failure to pay the $4,425,000 under the 2-Year Note. The relief sought

is the turnover of the remaining collateral and any and all funds or records relating to the Other

Art Loans, the Other Art Loan Collateral, the IPFP Collateral, the American Furniture Judgment

and the Gill Furniture Lot, plus attorneys' fees, costs, and both pre- and post-judgment interest at

the statutory interest rate. Additionally, Plaintiff seeks an accounting relating to the Other Art

Loans, the Other Art Loan Collateral, the IPFP Collateral, the American Furniture Judgment and

the Gill Furniture Lot.

The sixth cause of action is against Peck for enforcement of the Peck Personal Guarantee

based on Defendants' recovery of only $885,000 of the collateral securing the 2-Year Note and a

deficiency on the collateral of more than $1 million. The relief sought is payment of $1 million,

plus SageCrest's fees and costs including, but not limited to, attorneys' fees, costs, and both pre-

and post-judgment interest.

As a result of the breaches of the So-Ordered Settlement Stipulation relating to the 2-

Year Note claims, Defendants are again in contempt and liable to Plaintiff for all of his

attorneys' fees and costs.

### B.      Defendants' Counterclaims/Defenses and Plaintiff's Affirmative Defenses

#### 1.      Defendants' Counterclaims/Defenses

The First Counterclaim is straightforward: it asserts that SageCrest breached and

knowingly violated Sections 20 (general release) and 21 (covenant not to sue) of the Settlement

Stipulation. Pursuant to Section 20 of the Settlement Stipulation, SageCrest released all claims

against Counterclaim Plaintiffs for events that occurred prior to or including the effective date of

the Settlement Stipulation (May 19, 2008), other than for breach of the Settlement Stipulation.

Pursuant to Section 21 of the Settlement Stipulation, SageCrest was explicitly prohibited from

ever filing or pursuing any claim against Counterclaim Plaintiffs based on events that took place

prior to May 19, 2008. To further deter SageCrest from asserting such claims, the

Settlement Stipulation goes so far as to provide that SageCrest "will be liable to [Counterclaim Plaintiffs] for *all* damages, fees and expenses incurred by [Counterclaim Plaintiffs] to enforce [these Sections]." (Emphasis added.)

Notwithstanding the stark clarity of these Sections, SageCrest has twice filed such claims. On January 20, 2009 – only 8 months after the effective date of the Settlement Stipulation – SageCrest asserted claims in a state court action against Counterclaim Plaintiffs Art Finance and Art Capital Inc. based on alleged misconduct occurring before May 19, 2008. Then, on or about May 19, 2009, SageCrest again asserted claims in an Amended Complaint against Counterclaim Plaintiffs Fine Art Finance and Art Capital Inc. for purported "fraudulent misrepresentations," which SageCrest alleges were made by Fine Art Finance and Art Capital Inc. before May 19, 2008. Notably, Sections 20 and 21 of the Settlement Stipulation expressly included a release of any and all claims for fraud and fraudulent inducement. Thus, SageCrest's breaches of the Settlement Stipulation are flagrant and easily proven.

Counterclaim Plaintiffs have been (and continue to be) damaged and prejudiced by SageCrest's violations of Sections 20 and 21 of the Settlement Stipulation by being forced to expend tens of thousands of dollars in legal fees and other costs in defending the barred claims.

The Second Counterclaim is similarly straightforward and asserts another breach of the Settlement Stipulation. Section 33 of the Settlement Stipulation provides that the Assigned Loans were "not to be assigned, transferred or pledged absent the written consent of ... ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which consent may be withheld for any reason whatsoever and ACG-II, ACG Finance and Ian Peck shall not be required to disclose or justify their reason ...)." SageCrest's bankruptcy filings reveal that it holds only a 23% interest

in the Assigned Loans. Inexplicably, SageCrest "participated out" (i.e., sold or assigned) the remaining 77% interest to "offshore entities." Neither ACG II, ACG Finance, Fine Art Finance, nor Ian Peck provided written consent to SageCrest's assignment of its interests. Importantly, SageCrest's breach of Section 33 of the Settlement Stipulation occurred *before* any purported breach by Counterclaim Plaintiffs.

SageCrest's knowing and deliberate breach of Section 33 of the Settlement Stipulation has damaged and prejudiced Counterclaim Plaintiffs, particularly ACG II and Fine Art Finance (which assigned the relevant rights under the Assigned Loans to SageCrest). The prohibition on assignments or transfers in Section 33 of the Settlement Stipulation was a specific, bargained for benefit for Counterclaim Plaintiffs, intended to guard against certain risks. However, because SageCrest violated Section 33 of the Settlement Stipulation, and assigned a majority interest in the Assigned Loans to "offshore entities," Counterclaim Plaintiffs have now lost the benefit of this bargain. There is now no way for Counterclaim Plaintiffs to control any further transfers or assignments of these loans, which — now in the hands of Bermuda-based entities that are not under SageCrest's control — could end up in the portfolios of Counterclaim Plaintiffs' competitors. The assignment also denies Counterclaim Plaintiffs' rights to certain fees and commissions, known as Arranger's Fees. (In connection with the Assigned Loans and the loans securing the Two Year Note, each underlying borrower executed an arranger agreement with Fine Art Finance, whereby Fine Art Finance (the Arranger) performs a variety of functions with respect to each loan and charges certain fees and commissions ("Arranger's Fees"), including fees triggered by the borrower's default.) Counterclaim Plaintiffs have sustained damages in an amount to be determined at trial.

The Fourth Counterclaim seeks an order of Contempt given SageCrest's complete

disregard of the Settlement Stipulation.  The Settlement Stipulation is an order of the New York State Supreme Court, entered in the action captioned, *SageCrest II, LLC v. ACG Credit Company LLC, et al.,* Index No. 600195/08.  SageCrest failed to comply with a number of the provisions of the Settlement Stipulation including, but not limited to, the provision (i) prohibiting it from filing or pursuing any claim against Counterclaim Plaintiffs based on events that took place prior to May 19, 2008, and (ii) providing that the Assigned Loans were "not to be assigned, transferred or pledged absent the written consent of . . . ACG-II, ACG Finance, Fine Art Finance, and Ian Peck."

As a result of SageCrest's clear and unequivocal failure to comply with a court order, Counterclaim Plaintiffs have been prejudiced and SageCrest is in contempt.  Accordingly, Counterclaim Plaintiffs are entitled to the entry of an Order of Contempt directing SageCrest to pay, *inter alia,* all of Counterclaim Plaintiffs' fees and costs including, but not limited to, attorneys' fees, and all other remedies under the law.

The Fifth Counterclaim seeks an order from this Court declaring that (i) SageCrest's efforts to collect on the Assigned Loans and the Two-Year Note are subject to the U.C.C.; and (ii) with respect to SageCrest's efforts to collect on the Assigned Loans, that SageCrest has failed to comply with its U.C.C. obligation to obtain and dispose of the collateral in a commercially reasonable manner.

The Assigned Loans, and their underlying collateral (the "Assigned Collateral"), were SageCrest's collateral for a $6.7 million secured obligation, which was part of the Initial Consideration.  After ACG II's purported default in November 2008 in paying the $6.7 million, SageCrest "foreclosed" on the Assigned Loans by electing to manage, administer and service them under the terms of the Settlement Stipulation.

SageCrest's rights with respect to the Assigned Loans are governed by the New York U.C.C. Through the execution of the Settlement Stipulation and a Collateral Assignment, SageCrest created a security interest in the Assigned Loans and the Assigned Collateral under U.C.C. Article 9. To attempt to ensure that its security interest took precedence over any potential competing creditors, SageCrest sought to perfect its security interest in the Assigned Loans by obtaining the original notes and in the Assigned Collateral by filing U.C.C. financing statements.

Accordingly, SageCrest became subject to the "good faith" requirements of Article 9 of the New York U.C.C., which provides at 9-207(c)(2) that "a secured party having possession of collateral or control [over it] ... shall apply money or funds received from the collateral to reduce the secured obligation . . . ." Thus, SageCrest must first attempt to reduce the amount of the $6.7 million by disposing of, or collecting upon, the Assigned Loans and the Assigned Collateral *before* seeking to recover any deficiency against ACG II. However, after SageCrest took over the right to service, administer and collect upon the Assigned Loans in November 2008, it: (i) failed to use commercially reasonably methods in servicing and/or enforcing its rights under those loans, and (ii) did not sell or otherwise dispose of the collateral it has in its possession in compliance with the U.C.C., and (iii) as a result, there are no amounts due and owing to SageCrest from Counterclaim-Plaintiffs.

Moreover, "[e]very aspect of a disposition of collateral, including the method, manner, time, and place, and other terms must be commercially reasonable." N.Y.U.C.C. 9610(b). SageCrest has the burden of establishing its compliance with Article 9. *See N.Y. U.C.C.C. 9-626(a)(2)* ("If the secured party's compliance is placed in issue, the secured party has the burden of establishing that the collection, enforcement, disposition, or acceptance was conducted in

accordance with this part."). SageCrest acquired all necessary legal and equitable rights relating to those Assigned Loans in November 2008, but has failed to service, administer and collect upon those loans in the commercially reasonable fashion as required by the U.C.C.

SageCrest has repeatedly and wrongly disputed that it has any obligations under the U.C.C. with respect to the Assigned Loans. Accordingly, ACG-II, Fine Art Finance and ACG Finance seek a declaratory judgment that: (i) SageCrest's efforts to collect on the Assigned Loans and the Two-Year Note are subject to the U.C.C.; and (ii) with respect to SageCrest's efforts to collect on the Assigned Loans, that SageCrest has failed to comply with its U.C.C. obligation to obtain and dispose of the collateral in a commercially reasonable manner.

The Sixth Counterclaim asserts that SageCrest additionally violated the New York U.C.C. by failing to notify Counterclaim Plaintiffs of the sale of collateral securing the Assigned Loans. Since taking over the Assigned Loans in November 2008, SageCrest has sold, or attempted to sell, only a handful of items of the Assigned Loan Collateral. SageCrest arranged for the sale of 3 paintings that formed part of the collateral for the Assigned Loan borrower Evan Tawil in late 2009, and two paintings that formed part of the Barquet loan collateral in May 2010. In a blatant attempt to evade its express obligations to pay Fine Art Finance its Arranger's Fees from the proceeds of those sales, SageCrest failed to provide notice to ACG II and Fine Art Finance as it must under Section 9-611 of the New York U.C.C., and by so doing, violated New York law and damaged Counterclaim Plaintiffs ACG II and Fine Art Finance.

The Seventh Counterclaim is an accounting claim. SageCrest has obligations under Section 14(b) and (c) of the Settlement Stipulation to provide monthly written reports to ACG II, Fine Art Finance and ACG Finance detailing, *inter alia,* (i) the balance of the Balance and the ACG II Notes, (ii) the amounts, if any that were obtained during the previous month

and a reconciliation and source for such amounts, and (iii) its collection and enforcement efforts to service the loans.  However, SageCrest has failed to provide sufficiently detailed monthly reports to ACG II, Fine Art Finance and ACG Finance as required under the Settlement Stipulation.  As a result, ACG II, Fine Art Finance and ACG Finance have been unable to, *inter alia*, determine what efforts, if any, SageCrest has taken to collect on the Assigned Loans or to sell the collateral securing the Assigned Loans.  Accordingly, Counterclaim Plaintiffs seek an accounting of all funds received in connection with and/or on account of the Assigned Loans.

The Eighth Counterclaim seeks a declaratory judgment that Counterclaim Plaintiffs have a secured right to Arranger's Fees from SageCrest and/or any underlying borrower for any sales of Assigned Loan Collateral or Two-Year Note Collateral.  Despite knowledge of Fine Art Finance and ACG Finance's position, SageCrest has consistently ignored their warnings, and repeatedly and emphatically disputed their right to recover Arranger's Fees on a secured, "first out" basis for any sales of Assigned Loan Collateral or Two-Year Note Collateral.  In fact, SageCrest's conduct in this regard was exemplified in the sale of certain artwork to Evan Tawil.  Thus, a substantial controversy exists between the parties having adverse legal interests to warrant the issuance of a declaratory judgment.  Accordingly, Counterclaim-Plaintiffs seek a declaratory judgment that Counterclaim Plaintiffs have a secured, "first out" right to Arranger's Fees from SageCrest and/or any underlying borrower for any sales of Assigned Loan Collateral or Two-Year Note Collateral.

The Ninth Counterclaim claims that SageCrest tortiously interfered with Counterclaim Plaintiffs' contractual relationships and has denied Fine Art Finance's contractual right to recover Arranger's Fees.  For example, SageCrest had knowledge of Counterclaim Plaintiffs' business relations with Evan Tawil and others, and SageCrest interfered with those business

relations without justification by, among other things, disputing Fine Art Finance's right to recover Arranger's Fees on a secured, "first out" basis from the proceeds of any sales of Assigned Loan Collateral or Two-Year Note Collateral.  As a result of this conduct, including SageCrest's denial of Fine Art Fine Art Finance's right to recover Arranger's Fees, Counterclaim Plaintiffs have suffered damages.

   2. <u>Plaintiff's Affirmative Defenses Regarding Defendants' Counterclaims</u>

  Defendants improperly combine Counterclaims and Defenses above, but Plaintiff responds as follows.

  With respect to the First and Fourth Counterclaims relating to SageCrest's assertion of a fraud claim against Fine Art Finance and Art Capital Inc., neither the release provision nor the merger clause prevent SageCrest from asserting this claim.  Rather, the release provision does not apply to all of the Defendants herein.  The release only applies to ACG-I, ACG-II, Art Capital LLC, ACG Finance, and Ian Peck.  SageCrest did not release any claims against Fine Art Finance or Art Capital Inc.  Fine Art Finance made the representations and warranties in Section 4(a) of the So-Ordered Settlement Stipulation regarding the value of the Assigned Loans and the Assigned Collateral.  As Fine Art Finance and Art Capital Inc. were not party to the release, they cannot rely on it.

  Defendants also argue that the merger clause, which is contained in Section 30 of the So-Ordered Settlement Stipulation, bars SageCrest from relying on any representations made by any of the Defendants.  However, SageCrest's claim arises out of the So-Ordered Settlement Stipulation itself, not any of the representations made prior to May 19, 2008.  Since the merger clause has no effect on the representations contained in the So-Ordered Settlement Stipulation, Defendants' argument is a red-herring.

Defendants' Second and Fourth Counterclaims are meritless on their face. The agreements between SageCrest and the offshore entities, which granted the offshore entities a participation interest in the assets, have nothing to do with ownership of the assets. SageCrest entered into two separate agreements granting participation interests to offshore entities in 2006, well before the execution of the So-Ordered Settlement Stipulation. Those agreements explicitly provide that the participation interests are not an assignment of the assets and that SageCrest must continue to hold legal title to the assets in its own name. Furthermore, SageCrest retained the right to control the assets and the participants had no ability to control the assets. Defendants therefore cannot demonstrate a breach of the So-Ordered Settlement Stipulation by SageCrest based on the offshore participation interests.

Moreover, because all of the assets were transferred and assigned to the SageCrest Liquidating Trust, for which Plaintiff serves as the Trustee, Defendants cannot establish the necessary element of harm on this counterclaim. Accordingly, Defendants' Second and Fourth Counterclaims lack any merit and are moot. Specifically with respect to Defendants' Fourth Counterclaim for contempt – because that claim is based on SageCrest's supposed breach of the So-Ordered Settlement Stipulation, and because, as discussed in detail above, Defendants cannot establish any breach by SageCrest – Defendants cannot establish that Plaintiff disobeyed a lawful judicial order expressing an unequivocal mandate. Because Defendants cannot prove this essential element of their civil contempt claim, this counterclaim must fail.

With respect to Defendants' Fifth and Sixth Counterclaims, Article 9 of the UCC does not apply. Rather, Article 9 of the UCC applies to security agreements, namely agreements that create or provide for a security interest. *See* N.Y. U.C.C. §§ 9-102, 9-109. SageCrest owned the Assigned Loans as of May 19, 2008, when the Collateral Assignment was executed.

Accordingly, SageCrest did not need to foreclose after ACG-II's default in November 2008. Therefore, the obligations contained in Article 9, such as to dispose of the collateral in a commercially reasonable manner, are inapplicable to the Assigned Loans and Assigned Collateral.

Even assuming *arguendo* that UCC Article 9 applies to the Assigned Loans (which Plaintiff does not concede), it is well established that a secured creditor is entitled to pursue a money judgment for the amount owed and, simultaneously attempt to collect on the collateral, so long as any amounts collected on the collateral are deducted from the total amount owed. In addition, by virtue of the Collateral Assignment and Defendants' default on the Assigned Loans, Defendants lack any interest in the Assigned Loans and thereby do not have standing to assert challenges based upon the UCC.

Additionally, Defendants are precluded based on collateral estoppel from arguing that collecting on the collateral was Plaintiff's sole recourse in the event of default. Defendants already litigated the issue of whether the collateral for the Assigned Loans and the 2-Year Note was the sole recourse for Plaintiff in *Hahn & Hessen LLP v. Peck, et al.*, Index No. 603122/2008 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 25, 2013) (the "*Hahn & Hessen* Opinion"). In the *Hahn & Hessen* Opinion the court made clear that the collateral was not the sole recourse for Plaintiff because, among other reasons, the So-Ordered Settlement Stipulation explicitly provides otherwise. The *Hahn & Hessen* court heard and subsequently rejected the Defendants' argument that the collateral was Plaintiff's sole recourse under the So-Ordered Stipulation. and the *Hahn & Hessen* court further held that the facts demonstrated that Plaintiff never agreed to accept a sole recourse provision and that Defendants were aware of that fact. Thus, SageCrest was under no obligation to liquidate the collateral, whether or not the collateral was in its possession.

-17-

Defendants' Seventh Counterclaim for an accounting must fail, because Plaintiff did provide reports to Defendants, and has provided documents showing the receipt of all funds that have been received pursuant to the So Ordered Settlement Stipulation.  In addition to the reports, Plaintiff produced all non-privileged time entries relating to its collection efforts, many of which are or were the subject of litigations against the underlying borrowers.  Plaintiff also produced the email correspondence with underlying borrowers.  Accordingly, the accounting claim is entirely without merit.

Defendants' Eighth and Ninth Counterclaims with respect to Arranger's Fees are also without merit.  Defendants are not entitled to Arranger's Fees, because nothing in the So-Ordered Settlement Stipulation obligates Plaintiff to pay Arranger's Fees.  To the contrary, if Arranger's Fees are recoverable, they can only be recovered from the underlying borrowers.  There is no grant of any security interest to relating to the Arranger's Fees.

More damaging to Defendants' with respect to these counterclaims is the fact that ACG Finance and Fine Art Finance assigned the arranger's agreements to Plaintiff.  ACG Finance and Fine Art Finance also lost any rights to Arranger's Fees when ACG-II failed to pay the Balance and Additional Interest on November 19, 2008 and cure that default.  Finally, Defendants' entitlement to Arranger's Fees has already been considered and rejected in *In re Barquet Group*, 477 B.R. 454 (Bankr. S.D.N.Y. 2012), *aff'd*, *ACG Credit Company, LLC v. Barquet Group, Inc.*, 486 B.R. 68 (S.D.N.Y. 2012).  Accordingly, Plaintiff is the only party that might be entitled to Arranger's Fees relating to the Assigned Collateral and Defendants' Eighth and Ninth Counterclaims should be rejected.

7.    **STATEMENT OF THE CASE**

a.    **Plaintiff's Statement of the Case**

These actions arise out of alleged breaches of the So-Ordered Settlement Stipulation, tortious conduct, and fraud.  Plaintiff contends that Defendants repeatedly breached their court-ordered obligations and engaged in tortious and fraudulent conduct.  Defendants' conduct caused Plaintiff to be damaged in an amount not less than $6 million plus attorneys' fees and costs. Plaintiff alleges that each defendant is an alter ego of every other defendants and, therefore, all Defendants are liable.  In addition, Peck is liable on his $1 million personal guarantee for nonpayment of the 2-Year Note.

b.    **Defendants' Statement of the Case**

On or about May 19, 2008, Defendants and SageCrest entered into the So-Ordered Settlement Stipulation (the "Settlement Stipulation") to resolve litigation entitled *SageCrest II, LLC v. ACG Credit Company LLC, et al.*, Index No. 600195/08 (the "First State Court Action").  SageCrest had agreed to settle the First State Court Action within weeks of the Counterclaim Plaintiffs filing counterclaims against it for purported fraud and other tortious conduct.

The Settlement Stipulation imposed respective obligations and restrictions on the parties. It required ACG II to pay SageCrest $29,925,500.00, which included an initial payment of $21,000,000.00 (the "Initial Consideration"), a six-month note in the amount of $4,500,000.00, and a two-year interest-free note in the amount of $4,425,000.00 (the "Two Year Note").  The Initial Consideration consisted of a $14,300,000.00 cash payment to be made at the time of closing and an assignment of certain rights with respect to loans and collateral (the "Assignment").

Similarly, the Settlement Stipulation imposed obligations and express restrictions on

SageCrest. However, SageCrest, in concert with its principal Milton, from the outset and *before any purported breach by Counterclaim Plaintiffs*, blatantly disregarded those obligations and restrictions. For example, the Settlement Stipulation prohibited SageCrest from asserting certain claims against Counterclaim Plaintiffs – however, since the effective date of the Settlement Stipulation, SageCrest has *twice* filed such prohibited claims. The Settlement Stipulation proscribed SageCrest from transferring its interest in the Assigned Loans and the Two Year Note to SageCrest's offshore affiliates – however, SageCrest transferred *over 75%* of its interest in the Assigned Loans and the Two Year Note to such offshore affiliates. Additionally, SageCrest has utterly failed to secure, obtain or dispose of the collateral for the Assigned Loans as required by the Uniform Commercial Code ("U.C.C.") and has repeatedly refused to give the requisite statutory notice of SageCrest's sales of the Assigned Loan collateral. Further, SageCrest has repeatedly and wrongfully interfered with Counterclaim Plaintiff Fine Art Finance's efforts to obtain its rightful fees and commissions, known as Arranger's Fees, due to it under the Settlement Stipulation.

At its crux, SageCrest has alleged that Defendants failed to pay $6,700,000 on or before November 19, 2008 and the $4,425,000 Two Year Note. However, SageCrest wholly ignores its own wrongdoing (e.g., its violations of the U.C.C. in failing to properly dispose of the collateral), and it fails to recognize or show candor to the parties or the tribunal that it, in fact, recouped the majority of the owed amounts through the bankruptcy proceeding. Thus, irrespective of Defendants' Counterclaims, while SageCrest's claims sound large, they in fact are not.

SageCrest also overreaches in its attempt to hold each Defendant liable in this action on the Two-Year Note and the $6,700,000 Assignment, notwithstanding that ACG II was the sole maker of the Two-Year Note and only ACG II had the option to pay $6,700,000 pursuant to

Paragraph 4(c) of the Settlement Stipulation. Quite simply, SageCrest cannot hope to meet its exceedingly heavy burden of demonstrating that piercing the corporate veil is warranted in this case.

SageCrest cannot prevail on its claims because 1) SageCrest has breached its obligations under the Settlement Stipulation and 2) SageCrest cannot meet its burden of showing that it has liquidated all of the collateral in a commercially reasonable manner. Moreover, because SageCrest is still in the process of liquidating the Assigned Collateral and collecting upon the Assigned Loans, its claims in this action are not yet ripe. Any damages it may have are contingent on the results of its collection efforts – all of which must be done in a commercially reasonable manner.

## 8.    TRIAL BY MAGISTRATE JUDGE

The parties have not consented to trial of the case by a magistrate judge.

## 9.    LIST OF WITNESSES

### A.    Plaintiff's List of Witnesses

1.    <u>Witnesses Plaintiff Expects To Call At Trial</u>

| Witness | Address | Anticipated Testimony |
|---|---|---|
| John D. Huber | c/o Plaintiff's counsel | Mr. Huber is expected to testify about the So-Ordered Settlement Stipulation, Defendants' nonpayment and noncompliance with their obligation, Plaintiff's efforts to collect, and the damages that have been suffered. |
| Ian S. Peck | c/o Defendants' counsel | Mr. Peck is expected to testify that ACG-II failed to pay Plaintiff, that Defendants are alter egos of one another, and that Defendants committed tortious acts. |
| Laurel Choate | c/o Plaintiff's counsel | Ms. Choate is expected to testify about Plaintiff's efforts to collect and Plaintiff's damages. |

2.    Witnesses Plaintiff May Call At Trial If The Need Arises

| Witness | Address | Anticipated Testimony |
|---|---|---|
| Alan Milton | 16 Lexington Drive Croton-on-Hudson, NY | Mr. Milton might testify regarding the efforts to collect and the So-Ordered Settlement Stipulation. |
| Shida Yeung | 22 Porter Road Cambridge, MA | Mr. Yeung might testify regarding the efforts to collect and the So-Ordered Settlement Stipulation. |
| Ferdousi Islam | 756 Greenwich Street Apartment 3R New York, NY | Ms. Islam was an employee of "Art Capital Group." Ms. Islam might testify to her inability to distinguish between the "Art Capital Group" of companies as well as the conversion and tortious conduct. |
| Carter Pennington | 59 Gedney Road Lawrenceville, NJ | Mr. Pennington was the Chief Restructuring Officer of the Barquet Group, Inc. and currently serves as the Trustee of the Barquet Liquidating Trust and the Administrator, pursuant to the Barquet Group's confirmed Plan of Reorganization. Mr. Pennington may testify about the negotiations of the Barquet Group's and Mr. Barquet's Plans of Reorganization, his efforts to sell the assets of the Barquet Liquidating Trust, and any distributions from that trust. |
| Zachary Newman | c/o Hahn & Hessen 488 Madison Avenue New York, NY | Mr. Newman represented Defendants in connection with the prior litigation and the So-Ordered Settlement Stipulation. Mr. Newman may testify regarding the negotiation of the So-Ordered Settlement Stipulation, to authenticate documents, his dealings with Defendants, and the dispute between Hahn & Hessen and Defendants.<br><br>Defendants state that they object to Plaintiff calling Mr. Newman as a witness because Plaintiff did not disclose Mr. Newman as a possible trial witness until the afternoon of June 11, 2014 |

| Witness | Address | Anticipated Testimony |
|---|---|---|
| Alastair Crawford | | Mr. Crawford may testify regarding the sales of the collateral for his loan as well as his communications with Mr. Peck and "Art Capital Group." |

**B.   Defendants' List of Witnesses**

　　　　1.   <u>Witnesses Defendants Expect to Call at Trial</u>

| Witness | Address | Anticipated Testimony |
|---|---|---|
| Ian S. Peck | | Mr. Peck will testify about, inter alia, the history of the dispute between Defendants and Plaintiff SageCrest II, LLC ("SageCrest"); the negotiation and execution of the So-Ordered Settlement Stipulation; the rights and duties created by the So-Ordered Settlement Stipulation including all exhibits annexed thereto; his understanding of the structure and operation of the Corporate Defendants; his role in the Corporate Defendants; the alter ego claims against him; the conditions precedent necessary to enforce the Limited Guarantees of Collection that he signed in his individual capacity; SageCrest's claims against him to enforce the Limited Guarantees of Collection; the Corporate Defendants' relationship with the underlying borrowers on the Assigned Loans and the Two-Year Notes; the Corporate Defendants' attempts to service, administer and collect on the loans and judgments securing the Assigned Loans and the Two Year Note; the efforts of SageCrest to service, administer and collect on the Assigned Loans; the funds that have been escrowed in these proceedings; and all other subject matters involved in these proceedings. |
| Ramis Barquet | | Mr. Barquet will testify about his loan (and the collateral securing that loan) with certain of the Corporate Defendants and subsequently assigned to SageCrest; communications between he and Messrs. Milton and Yeung with respect to that loan and these |

| Witness | Address | Anticipated Testimony |
|---|---|---|
| | | proceedings; and SageCrest's efforts to service, administer and collect on his loan. Mr. Barquet will also testify about the possibility of Plainitff recovering additional funds from him and/or Barquet Group, Inc. |
| John D. Huber | | Mr. Huber is expected to testify about the So-Ordered Settlement Stipulation, Plaintiff's allegations in the claims, Defendants' counterclaims and any purported defenses thereto, Plaintiff's efforts to collect, and the purported damages that have been suffered. |
| Mark Alimena, CPA, CFE, CFF | | Mr. Alimena is an auditor of the Corporate Defendants. He will testify about the structure and operation of the Corporate Defendants. He will further testify about the work he did as an auditor for the Corporate Defendants. |
| Mary Amato, CPA | | Ms. Amato is an accountant who performed work for the Corporate Defendants and Peck individually. She will testify about the structure and operation of the Corporate Defendants. She will further testify about the work she did as an accountant for the Corporate Defendants and Peck individually. |
| Robert Leeds | | Mr. Leeds is expected to testify regarding his negotiations with John D. Huber to purchase the Barquet note. |

2.    <u>Witnesses Defendants May Call At Trial If The Need Arises</u>

Defendants have not identified any witness that they may call.

10.    **DEPOSITION TESTIMONY**

    A.    **Plaintiff's Deposition Designations With Defendants' Objections and Cross-Designations**

| Alan Milton (November 17, 2010) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 6:7-6:9 | | | |
| 15:17-16:13 | | | |
| 19:4-21:15 | 20:3 to 21:15: Relevance FRE 401; objection to form | | |
| 23:23-24:19 | | | |
| 25:14-26:5 | | | |
| 28:12-29:6 | | | |
| 30:9-30:13 | | | |
| 41:25-42:25 | | | |
| 44:13-44:17 | | | |
| 46:5-46:14 | 46:8 objection to form | | |
| 46:19-47:3 | Relevance FRE 401 | | |
| 47:15-48:22 | Relevance FRE 401 | | |
| 55:22-56:5 | Relevance FRE 401 | | |
| 56:18-56:23 | Relevance FRE 401 | | |
| 58:5-58:15 | Relevance FRE 401; 58:5-58:9 objection to form | | |
| 58:24-59:14 | Relevance FRE 401; 58:24-59:2 objection to form | | |
| 64:24-65:24 | Relevance FRE 401; 65:13-65:15 objection to | | |

| Alan Milton (November 17, 2010) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| | form | | |
| 79:2-79:23 | | | |
| 82:9-89:20 | Relevance FRE 401 as to 83:16-84:5 | | |
| 86:16-87:3 | | | |
| 91:6-92:21 | Relevance FRE 401 as to 91:22-92:8 | | |
| 104:7-104:9 | | | |
| 105:12-106:3 | | | |
| 105:4-106:24 | | | |
| 108:18-110:8 | | | |
| 110:10-113:25 | | | |
| 115:10-117:22 | | | |
| 118:4-118:6 | | 118:14-118:24 | 118:14-118:24 – Foundation |
| 119:14-120:13 | | | |
| 123:6-123:25 | | | |
| 126:6-126:16 | | | |
| 127:18—128:4 | | | |
| 132:18-133:17 | | | |
| 134:7-134:11 | | | |
| 136:17-137:6 | | | |
| 137:15-137:18 | | | |

| Alan Milton (November 17, 2010) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 139:24-141:15 | | | |
| 148:3-149:6 | | | |
| 152:4-152:13 | | | |
| 155:5-155:15 | | | |
| 158:25-160:22 | | | |
| 161:2-161:7 | | | |
| 165:20-167:7 | | | |
| 169:12-170:7 | | | |
| 171:16-172:19 | | | |
| 172:20-174:5 | | | |
| 177:21-178:6 | | | |

| Alastair Crawford (November 16, 2010) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 4:9-4:14 | | | |
| 10:6-10:17 | | | |
| 12:12-12:16 | | | |
| 12:22-13:19 | | | |
| 14:2-14:23 | | | |
| 15:15-16:14 | | | |
| 16:22-17:7 | | | |
| 17:20-17:24 | | | |
| 19:7-20:9 | Questions all concern Deposition Ex. 4, which is hearsay and inadmissible. | | |
| 21:4-22:3 | Questions all concern Deposition Ex. 6, which is hearsay and inadmissible. | | |
| 22:4-22:19 | | | |
| 24:3-24:23 | 24:9-24:10 objection to form | | |
| 34:3-34:9 | 34:6-34:9 Hearsay FRE 401; improper foundation; speculation | | |
| 35:25-36:4 | 36:2-36:4 Hearsay FRE 401 | | |
| 39:9-39:15 | | | |
| 40:16-41:5 | | | |
| 41:8-41:10 | | | |
| 41:20-41:22 | | | |

| 46:22-48:6 | Questions all concern Deposition Ex. 11, which is hearsay and inadmissible. | | |
|------------|------------|------------|------------|
| 50:25-51:7 | | 51:8-51:11 | 51:8-51:11 – Foundation |
| 51:21-52:3 | 51:21-51:25 objection to form | | |
| 53:7-54:11 | | | |

| Ferdousi Islam (November 8, 2013) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 4:9-4:13 | | | |
| 5:5-5:14 | | | |
| 6:3-6:7 | | | |
| 6:22-7:24 | | | |
| 7:25-8:20 | | | |
| 8:21-9:8 | | | |
| 9:15-9:21 | | | |
| 9:22-11:7 | | | |
| 12:16-13:3 | | | |
| 13:4-13:7 | | | |
| 13:14-13:20 | | | |
| 16:19-20:6 | | | |
| 24:23-26:13 | | | |
| 26:20-27:6 | | | |
| 35:8-35:13 | | | |
| 35:18-36:18 | | | |
| 36:19-39:3 | | | |
| 39:22-41:20 | | | |
| 42:13-43:21 | | | |
| 44:3-44:13 | | | |
| 45:7-45:12 | | | |
| 45:18-46:3 | 45:18-45:21 objection to form | | |

| Ferdousi Islam (November 8, 2013) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 46:20-46:24 | | 47:3 | |
| 47:4-47:10 | | | |
| 47:11-47:15 | | | |
| 47:16-47:18 | | | |
| 48:6 | | | |
| 49:23-50:25 | | | |
| 55:2-55:11 | | | |
| 64:16-65:7 | | | |
| 69:2-71:25 | | | |
| 74:6-75:17 | | | |
| 77:22-78:19 | | | |
| 79:4-79:23 | | | |
| 79:24-80:16 | | | |
| 80:17-80:24 | | | |
| 93:18-94:4 | | | |
| 95:21-96:10 | | | |
| 96:17-96:20 | | | |
| 96:21-96:25 | | | |
| 104:8-105:3 | 104:8-104:10 objection to form | | |
| 105:4-105:14 | | | |
| 106:4-106:22 | | | |

| Ferdousi Islam (November 8, 2013) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
|  |  |  |  |
|  |  |  |  |
| 108:16-109:11 | 109:5-109:8 objection to form, relevance FRE 401, document speaks for itself |  |  |
| 109:12-109:19 |  |  |  |
| 109:20-110:7 | 109:24-110:2 Relevance FRE 401 |  |  |
| 128:25-129:5 |  |  |  |
| 129:6-129:21 |  |  |  |
| 130:13-131:25 | 130:13-130:18 objection to form, relevance FRE 401, document speaks for itself<br><br>130:22-130:25 objection to form<br><br>131:14-131:16 relevance FRE 401 |  |  |
| 132:6-133:16 |  |  |  |

| Carter Pennington (May 29, 2014) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 3:13-17 | | | |
| 6:15-21 | | | |
| 8:22-9:7, 9:20-21 | | | |
| 9:22-10:11 | | | |
| 10:19-21 | | | |
| 29:8-23 | | | |
| 30:14-22 | | | |
| 31:5-34:1 | | | |
| 35:2-36:16 | | | |
| 41:17-42:6 | | | |
| 42:17-43:6 | | | |
| 44:21-45:5 | | | |
| 45:19-22 | | | |
| 46:14-47:2 | | | |
| 48:23-49:2 | | | |
| 49:15-24 | | | |
| 61:14-62:8 | | | |
| 64:9-23 | | | |
| 68:2-6 | | | |

| Carter Pennington (May 29, 2014) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 68:10-72:15 | 68:16-68:18 objection to form; lack of foundation; question calls for speculation and/or response based on hearsay<br><br>70:4-71:6 objection to form | | |
| 73:6-74:12 | | | |
| 74:18-75:5 | 74:18-74-20 objection to form<br>75:1-75:5 objection to form; lack of foundation | | |
| 77:14-80:4 | | | |
| 85:9-86:15 | | | |
| 86:23-88:19 | | | |
| 89:15-91:5 | 89:21-89:23 objection to form; question calls for response based on hearsay | | |
| 91:10-93:2 | 92:23-92:25 objection to form | | |
| 93:11-94:16 | 93:22 objection to form<br><br>94:5-94:7 objection to form | | |
| 95:25-97:14 | | | |
| 98:1-7 | | | |
| 98:19-100:5 | | | |
| 100:14-101:24 | 100:20-100:22 objection to form | | |

| Carter Pennington (May 29, 2014) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 105:9-107:4 | 105:9-105:11 lack of foundation<br><br>106:25-107:2 objection to form | | |
| 107:21-109:12 | 108:08-108:09 objection to form<br><br>108:15-108:18 objection to form; relevance FRE 401; calls for opinion testimony, not fact testimony | | |
| 109:19-111:6 | | | |
| 112:16-113:1 | | | |
| 113:17-114:5 | | | |
| 116:1-20 | | | |
| 117:1-12 | | | |
| 117:18-118:25 | | | |
| 119:15-120:25 | 120:18-120:22 objection to form | | |
| 124:6-16 | 124:6-124:16 relevance FRE 401; beyond the scope of direct examination | | |
| 124:23-126:25 | 124:23-126:25 relevance FRE 401; beyond the scope of direct examination | | |

**B.     Defendants' Deposition Designations With Plaintiff's Objections**

| Alan Milton (November 17, 2010) | | | |
|---|---|---|---|
| **Designations** | **Plaintiff's Objections** | **Cross-Designations** | **Defendants' Objections** |
| 15:6-18:23 | | | |
| 23:23-28:4 | 26:6-28:4 – Relevance | | |
| 28:12-45:2 | 29:23-30:8 – Compound<br>30:21-40:25 – Relevance | | |
| 52:13-52:20 | 52:13-52:20 – Foundation, relevance | | |
| 70:10-73:6 | | 73:7-76:4 | 73:7-73:21 relevance<br>FRE 401 |
| 76:5-77:8 | | | |
| 77:24-79:11 | | | |
| 84:24-87:22 | | | |
| 92:9-94:5 | | | |
| 96:7-96:13 | | 96:14-96:23 | |
| 97:4-113:25 | 99:14-100:6 – Foundation<br>106:25-108:17 – Foundation, relevance | | |
| 120:6-155:16 | 124:13-124:18 – Foundation<br>127:4-127:17 – Foundation<br>128:12-130:11 – Relevance<br>134:12-136:13 – Foundation<br>141:16-142:18 – Foundation<br>144:6-144:13 – Foundation<br>147:6-147:3 – Foundation, hearsay | | |
| 164:22-167:23 | | | |
| 174:6-175:3 | | 175:4-175:10 | |
| 176:11-177:10 | | | |

| Alan Milton (November 17, 2010) | | | |
|---|---|---|---|
| **Designations** | **Plaintiff's Objections** | **Cross-Designations** | **Defendants' Objections** |
| 177:11-179:12 | 177:11-179:12 – Foundation, relevance, hearsay | | |
| 183:5-186:9 | 183:5-186:9 - Foundation | | |

| Alastair Crawford (November 16, 2010) | | | |
|---|---|---|---|
| **Designations** | **Plaintiff's Objections** | **Cross-Designations** | **Defendants' Objections** |
| 52:11-56:22 | 54:18-56:22 – Foundation, hearsay | 56:25-59:18 | |

| Ferdousi Islam (November 8, 2013) | | | |
|---|---|---|---|
| **Designations** | **Plaintiff's Objections** | **Cross-Designations** | **Defendants' Objections** |
| 30:21-35:4 | | | |
| 48:14-49:22 | 49:13-49:19 – Foundation | | |
| 55:15-55:18 | | | |
| 58:6-58:12 | | | |
| 63:23-64:15 | | | |
| 67:14-68:19 | | | |
| 94:5-94:12 | | | |

| Carter Pennington (May 29, 2014) | | | |
|---|---|---|---|
| **Designations** | **Defendants' Objections** | **Cross-Designations** | **Plaintiff's Objections** |
| 6:2-7:20 | | | |
| 8:7-8:21 | | 8:22-9:7, 9:20-21 | |
| 9:22-28:18 | 13:10-13:22 – Foundation<br>14:11-14:22 – Foundation<br>16:10-17:8 – Foundation<br>24:3-24:21 – Hearsay | 102:3-104:13 | 102:16-102:19 objection to form |

| | 25:17:25:24 – Foundation | | |
|---|---|---|---|
| 29:3-34:1 | | | |
| 35:1-37:4 | 36:17-37:4 – Hearsay | | |
| 37:9-54:6 | 47:3-47:23 – Foundation | | |
| 57:22-58:20 | | | |
| 95:3-95:24 | 95:3-95:24 – Foundation, hearsay, speculation | | |
| 127:16-128:18 | 127:16-128:18 – Foundation, hearsay, speculation | If objections overruled, 127:8-127:15 | |

## 11.  EXHIBITS

### A.  Plaintiff's Exhibit Lists

Plaintiff's Exhibit List is attached hereto as Exhibit A.

### B.  Defendants' Exhibit List

Defendants' Exhibit List is attached hereto as Exhibit B.

## 12.  ANTICIPATED EVIDENTIARY PROBLEMS/MOTIONS *IN LIMINE*

### A.  Plaintiff's Anticipated Evidentiary Problems And Motions *In Limine*

Pursuant to this Court's Pre-Trial Order, Plaintiff anticipates the following evidentiary problems, which are addressed in Plaintiff's Motions *in Limine*, filed concurrently with this Pre-Trial Memorandum:

a)  Motion *in Limine* No. 1 [Dkt. No. 53], requesting the Court take judicial notice of and introduce into evidence the Opinion and Order dated November 20, 2012 in the action captioned in *Hilton Head Holdings b.v. v. Peck et al.*, No. 1:11-c.v.-7768-KBF, in the United States District Court for the Southern District of New York.

b)  Motion *in Limine* No. 2 [Dkt. No. 54], requesting the Court take judicial notice of decision and order dated November 25, 2013 in the action captioned *Hahn & Hessen LLP v. Ian Peck, et al.,* Index No. 603122/08 in the Supreme

Court of the State of New York, New York County, , and bar Defendants from introducing certain evidence under the doctrine of *res judicata*.

c)      Motion *in Limine* No. 3 [Dkt. No. 55], requesting the Court preclude Defendants based on the doctrines of *res judicata* and collateral estoppel from offering evidence relating to Defendants' claim to arranger's fees arising from its loan to the Barquet Group, Inc. and the other Assigned Loans.

**B.      Defendants' Anticipated Evidentiary Problems And Motions *In Limine***

Pursuant to this Court's Pre-Trial Order, Defendants anticipate the following evidentiary problems, which are addressed in Defendants' Motions *in Limine*, filed concurrently with this Pre-Trial Memorandum:

a)      Motion *in Limine* No. 1 [Dkt. No. 51], to limit evidence concerning piercing the corporate veil to the time of the transaction at issue – the May 19, 2008 Settlement Stipulation.

b)      Motion *in Limine* No. 2 [Dkt. No. 52], to preclude all evidence related to a vacated judgment in a prior action.

**13.      STIPULATIONS OF FACT AND LAW**

**A.      Statement of Uncontroverted Facts**

*See* Exhibit C hereto

**B.      Agreed Statement Of Contested Issues Of Facts And Law**

*See* Exhibit D hereto

**14.      TRIAL TO COURT/JURY**

**A.      Plaintiff's Proposed Findings of Fact and Conclusions of Law**

*See* Exhibit E hereto

**B.      Defendants' Proposed Findings of Fact and Conclusions of Law**

*See* Exhibit F hereto

## 15.    AVAILABILITY OF WITNESSES

The parties each ensure the availability at trial of each witness listed herein unless the

Court and counsel are advised to the contrary not less than forty-eight (48) hours prior to the

commencement of the evidence.

Dated:  June 11, 2014

PLAINTIFF JOHN D. HUBER, as Trustee of the
SageCrest Liquidating Trust

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By: /s/Robert S. Friedman
       Robert S. Friedman (admitted *pro hac vice*)
       Mark E. McGrath (ct28814)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700

- and -

ZEISLER & ZEISLER, P.C.
James Berman (ct06027)
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: (203) 368-4234


THE DEFENDANTS,

By:   /s/ Ari J. Hoffman
Ari J. Hoffman, Esq.
Federal Bar No. ct22516
Vincent M. Marino
Federal Bar No. ct17186
Philip C. Pires
   Federal Bar No. Ct28138
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT  06604
Tele:  203.368.0211
Fax:  (203) 394-9901
E-mail: ahoffman@cohenandwolf.com
E-mail: vmarino@cohenandwolf.com
Email:  ppires@cohenandwolf.com

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

JOINT PRE-TRIAL MEMORANDUM and EXHIBITS was electronically filed via ECF, which

effects service upon all parties who have entered an appearance in this case.

Dated this 11th day of June, 2014.


_____/s/Robert S. Friedman_____