# EXHIBIT F

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAGECREST II, LLC,<br><br>               Plaintiff,<br><br>     vs.<br><br>IAN S. PECK, ACG CREDIT COMPANY II LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP INC., and ACG CREDIT COMPANY, LLC,<br><br>          Defendants. | Case Nos.<br><br><br><br><br>3:13-cv-973-SRU<br><br><br>3:13-cv-974-SRU |
| SAGECREST II, LLC,<br><br>               Plaintiff,<br><br>     vs.<br><br>ACG CREDIT COMPANY II, LLC,<br>ACG FINANCE COMPANY, LLC,<br>FINE ART FINANCE, LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP, INC., ACG CREDIT COMPANY, LLC, and IAN S. PECK,<br><br>          Defendants. | <br><br><br><br><br><br><br><br>JUNE 11, 2014 |

## DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

1

## Proposed Findings of Fact

### Defendants' Defenses/Counterclaims

**First Counterclaim:  SageCrest II, LLC Breached the So-Ordered Settlement Stipulation by Suing Defendants for Released Claims.**

1.      The So-Ordered Settlement Stipulation was signed by SageCrest II, LLC,

Windmill Management, LLC, and Alan Milton, individually, on May 19, 2008.  Exhibit

2500 at p. 25, § 20; Peck Testimony.

2.      Section 20 of the So-Ordered Settlement Stipulation states:

> 20.    <u>Release</u>.  SageCrest, Windmill, and Mr. Milton, individually, and on behalf of their respective successors, assigns, affiliates, executors, predecessors, heirs, present and former directors, officers, shareholders, managers, members, partners, employees, representatives, agents and attorney's hereby remise, covenant not to sue, and release, [ACG Credit Company, LLC, ACG Credit Company II, LLC, Art Capital Group, LLC, ACG Finance Company, LLC], and Ian Peck and their respective (a) successors and assigns, (b) affiliates, (c) executors, (d) predecessors, (e) heirs, and (f) present and former directors, officers, shareholders, managers, members, partners, employees, representatives, agents, and attorneys (collectively, the "ACG Release Parties") from any and all manner of actions, causes of action, suits, proceedings, debts, dues, judgments, damages, claims, property damages, expenses, liabilities, rights to payments, fraudulent inducement claims, acts and/or omissions, demands, and all other claims of every kind, nature and descriptions, whatsoever, liquidated and unliquidated, fixed and/or contingent, matured and unmatured, priority or non-priority, disputed and/or undisputed, legal or equitable, secured and unsecured, accrued and unaccrued, known and unknown, choate and inchoate, whether based on statutory law, common law, federal law, state law, local law or otherwise, that they have, may have, or could have against the ACG Release Parties, accruing or arising from the beginning of time to and through the day of this Settlement Stipulation.

Exhibit 2500 at p. 25, § 20.

3.      Thus, Section 20 of the So-Ordered Settlement Stipulation provides that

SageCrest released all claims against Defendants for events that occurred prior to or

including May 19, 2008 other than for breach of the So-Ordered Settlement Stipulation.

Exhibit 2500 p. 25, § 20.

4.     Section 21 of the So-Ordered Settlement states:

> 21.   Covenant Not To Sue:  SageCrest, Windmill and Mr. Milton, individually
> and collectively, do hereby covenant and agree that SageCrest, Windmill and Mr.
> Milton will hold the ACG Release Parties harmless and will forever forbear from
> pursuing, and do hereby waive any right to make, any demand or claim against
> the ACG Release Parties concerning any act, conduct, commission, omission, or
> claim arising out of or related to the facts or occurrences underlying the above-
> captioned litigation or with respect to any and all events, occurrences, and
> circumstances through the Closing Date (including, without limitation, fraudulent
> conveyance, conversion, and fraudulent inducement claims) other than for
> breach of this Settlement Stipulation or the Additional Agreements.  In the event
> SageCrest, Windmill and/or Mr. Milton breach this section of the Settlement
> Stipulation, SageCrest, Windmill and/or Mr. Milton will be liable to the ACG
> Release Parties for all damages, fees and expenses incurred by the ACG
> Release Parties to enforce this section.

5.     SageCrest's original state court complaint filed on January 20, 2009 asserted a

fraud claim against all Defendants other than Art Capital Group, Inc., which claim was

based on purported "fraudulent misrepresentations" SageCrest alleges were made by

Defendants Fine Art Finance, LLC and ACG Finance LLC before May 19, 2008.

6.     Specifically, the Tenth Cause of Action of SageCrest's January 20, 2009

Complaint asserted a claim for fraud against "all Defendants except Art Capital, Inc."

based on "representations and warranties" which "SageCrest relied on in signing the

So-Ordered Settlement Stipulation and releasing the Order of Attachment."  Exhibit

2769, January 20, 2009 Complaint at ¶ 252.

7.     The Tenth Cause of Action further admitted that "[t]hose representations and

warranties are essentially the same as those that were made to induce SageCrest into

accepting less than $21 million in cash at closing, namely, that the principal balance of

the Assigned Loans was in excess of $6.7 million and that the Assigned Collateral

3

consisted of 35 pieces of artwork with an appraised value of approximately $14 million."

Exhibit 2769, January 20, 2009 Complaint at ¶ 250.

8.      SageCrest's Amended Complaint filed on or about May 19, 2009 asserts a claim

against Defendants Fine Art Finance, LLC and Art Capital, Inc. for fraudulent

inducement based on purported "fraudulent misrepresentations" that SageCrest alleges

were made by Fine Art Finance, LLC and Art Capital Group, Inc. before May 19, 2008.

Exhibit 2501.

9.      Specifically, the Eleventh Cause of Action in SageCrest's Amended Complaint –

which is the operative complaint in the Assigned Loans Case – alleges a claim for

fraudulent inducement against Defendants Fine Art Finance, LLC and Art Capital

Group, Inc.  In this claim, SageCrest alleges that "Defendants made numerous due

diligence materials available to SageCrest including, but not limited to, the underlying

loan documents, lists of the collateral for those loans, valuations of the collateral, and

UCC financing statements . . . [h]owever, a number of the disclosures made to

SageCrest to induce SageCrest to accept less than a $21 million cash payment on the

Closing Date regarding the Assigned Loans and the Assigned Collateral were false."

Exhibit  2501 at ¶¶ 292-293.

10.     The alleged fraudulent representations that SageCrest relies on for its claims in

the Complaint and the Amended Complaint were, according to SageCrest, made on or

prior to May 19, 2008.  Exhibit 2769 and Exhibit  2501.

11.     Defendants have been damaged in having to incur legal fees to defend these two

complaints.  Exhibit 2654, 2655; Peck Testimony.

**Second Counterclaim:  SageCrest II, LLC Breached the So-Ordered Settlement Stipulation by Assigning 77% of its Interest in the So-Ordered Settlement Stipulation to Off-Shore Entities**

12.     Section 33 of the So-Ordered Settlement Stipulation states in pertinent part:

> 33.    Assignability.
>
> (a)     This Settlement Stipulation and the Additional Agreements and the rights created thereunder are not to be assigned, transferred or pledged absent the written consent of the [sic] ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which consent may be withheld for any reason whatsoever and ACG-II, ACG Finance, Fine Art Finance and Ian Peck shall not be required to disclose or justify their reason) . . . .

13.     SageCrest "assigned, transferred or pledged" certain of its rights under the So-Ordered Settlement Stipulation and the Additional Agreements by virtue of an Amended and Restated Master Investment Agreement between SageCrest and SCFR Limited dated September 21, 2006 and an Amended and Restated Master Investment Agreement between SageCrest and SageCrest Ltd.  Ex. 2503, 2731, 2732, 2759, 2762, 2765.

14.     SageCrest admits that "it entered into commercial transactions with offshore entities years before the So-Ordered Settlement Stipulation was entered into pursuant which those offshore entities purchased participation interests in certain assets including, but not limited to, obligations owed by ACG-II to SageCrest."  Plaintiff's Reply to Counterclaims, Response to Second Counterclaim, ¶ 71.

15.     SageCrest admits that "ACG-II, ACG Finance, Fine Art Finance and Peck did not consent to the granting of the participation interests."  Plaintiff's Reply to Counterclaims, Response to Second Counterclaim, ¶ 72.

16.     SageCrest alleges and admits that "the commercial transactions that resulted in the purchase of the participation interests occurred years before the So-Ordered

Settlement Stipulation was entered into and, thus, before Defendants breached the So-Ordered Settlement Stipulation."  Plaintiff's Reply to Counterclaims, ¶ 30.

**Fourth Counterclaim:  SageCrest is liable for Civil Contempt**

17.    SageCrest has failed to comply with a number of the provisions of the So-Ordered Settlement Stipulation including, but not limited to, the provision (i) prohibiting it from filing or pursuing any claim against Defendants based on events that took place on or prior to May 19, 2008 (the closing date); and (ii) providing that "the Settlement Stipulation and the Additional Agreements and the rights created thereunder are not to be assigned, transferred or pledged absent the written consent of the [sic] ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which consent may be withheld for any reason whatsoever and ACG-II, ACG Finance, Fine Art Finance and Ian Peck shall not be required to disclose or justify their reason) . . . ."  *See, supra,* analysis regarding First and Second Counterclaims.

**Fifth Counterclaim:  Declaratory Judgment**

18.    Through the execution of the So-Ordered Settlement Stipulation and the Collateral Assignment, SageCrest created a security interest in the Assigned Loans and the Assigned Collateral under Article 9 of the Uniform Commercial Code.  Ex. 2500.

19.    SageCrest sought to perfect its security interest in the Assigned Loans by obtaining the original notes, and in the Assigned Collateral by filing U.C.C. financing statements.  Testimony of Plaintiff; Deposition of Alan Milton.

6

20.     SageCrest admits that as of August 3, 2010, it had "not commenced an action against Barquet."  Plaintiff's Reply to Counterclaims, ¶ 44.

21.     SageCrest admits that as of August 3, 2010, "Barquet has not paid all amounts due and owing to SageCrest . . . ."  Plaintiff's Reply to Counterclaims, ¶ 41.

22.     SageCrest admits that "each of the underlying borrowers on the Assigned Loans executed an arranger's agreement."  Plaintiff's Reply to Counterclaims, ¶ 54.

23.     SageCrest "admits it has certain reporting requirements under Section 14(b) and (c) of the So-Ordered Settlement Stipulation . . . ."  Plaintiff's Reply to Counterclaims, Response to Seventh Counterclaim, ¶ 105.

24.     SageCrest did not dispose of the Assigned Collateral and collect on the Assigned Loans in a commercially reasonable manner.  Ex. 2504, 2599-2608, 2735.  Deposition of Alan Milton; Deposition of Alastair Crawford; Testimony of Ian Peck; Testimony of Plaintiff.

**Sixth Counterclaim:  Breach of the New York U.C.C.**

25.     SageCrest failed to notify Defendants prior to the sale of collateral securing the Assigned Loans.  Testimony of Ian Peck.

**Seventh Counterclaim:  Accounting**

26.     Section 14(b) of the So-Ordered Settlement Stipulation provides:

> SageCrest shall provide a monthly written report to [ACG Credit Company II, LLC, Fine Art Finance, LLC, and ACG Finance, LLC] setting forth (i) the balance of the Balance and the ACG-II Notes and (ii) the amount(s), if any ,that were deposited in the Blocked Account during the previous month and a reconciliation and source of such amounts.

7

27.    Section 14(c) of the So-Ordered Settlement Stipulation provides in pertinent part:

>    SageCrest shall provide [ACG Credit Company II, LLC, Fine Art Finance, LLC and ACG Finance, LLC] a similar monthly report and the same disclosures for any loans it is collecting and enforcing pursuant to Section 15 of this Settlement Stipulation or the Collateral Assignment.

28.    SageCrest has failed to provide accountings and reports in accordance with Sections 14(b) and 14(c) of the So-Ordered Settlement Stipulation. Testimony of Ian Peck; Testimony of Plaintiff.


**Eighth Counterclaim: Declaratory Relief**

29.    Fine Art Finance, LLC and ACG Finance, LLC have secured rights to their Arranger's Fees on a "first out" basis for the sale of Assigned Loan Collateral or Two-Year Note Collateral. Ex. 2500, 2523, 2527, 2538, 2539, 2540, 2545, 2547, 2553, 2557, 2558, 2569, 2570, 2576; Testimony of Ian Peck.


**Ninth Counterclaim for Relief: Tortious Interference**

30.    SageCrest has disputed the rights of Fine Art Finance, LLC and ACG Finance, LLC to receive payments of Arranger's Fees pursuant to Arranger's Agreements with borrowers. Testimony of Plaintiff; Testimony of Ian Peck

31.    In early November 2009, Fine Art Finance, LLC learned that art auction house Phillips de Pury & Co. ("Philips") was going to sell at public auction certain artwork securing the $220,000 loan from ACG Credit Company II, LLC to Evan Tawil ("Tawil") (the "Tawil Artwork"). Testimony of Ian Peck.

32.    Fine Art Finance, LLC is owed the sum of $54,625 as an arranger fee for sale of the Tawil Artwork.

8

33.    SageCrest has collected and refused to turnover to Fine Art Finance, LLC or ACG Finance, LLC Arranger's Fees owed to them. Ex. 2500, 2523, 2527, 2538, 2539, 2540, 2545, 2547, 2553, 2557, 2558, 2569, 2570, 2576; Testimony of Ian Peck; Testimony of Plaintiff.

**The Defendants**

    **a.    Art Capital Group, Inc.**

34.    The Defendant Art Capital Group, Inc. is a Delaware corporation.  Ex. 2618, 2619, 2661, 2662; 2729; Testimony of Ian Peck.

35.    The Defendant Ian Peck ("Mr. Peck") is a resident of New York and the majority shareholder of Art Capital Group, Inc.  Ex. 2614, 2707, 2708; Testimony of Ian Peck.

36.    Art Capital Group, Inc. issued stock certificates to Mr. Peck.  Ex. 2614, 2707, 2708; Testimony of Ian Peck.

37.    Art Capital Group, Inc. was originally known as "FineArtLease.com, Inc."  Ex. 2662; Testimony of Ian Peck.

38.    FineArtLease.com, Inc. was founded in or about 1999.  Ex. 2662; Testimony of Ian Peck.

39.    On or about February 6, 2001, the name of FineArtLease.com, Inc. was changed to Art Capital Group, Inc.  Ex. 2662; Testimony of Ian Peck.

40.    Art Capital Group, Inc. has corporate bylaws.  Ex. 2617; Testimony of Ian Peck.

41.    Art Capital Group, Inc. filed its own tax returns.  Ex. 2517, 2518, 2612, 2615, 2619, 2620, 2621, 2622, 2690, 2691;Testimony of Mary Amato; Testimony of Ian Peck.

    **b.    Art Capital Group, LLC**

42.     Art Capital Group, LLC is a Delaware limited liability company.  Ex. 2656, 2719, 2720; Testimony of Ian Peck.

43.     Art Capital Group, LLC was formed on August 14, 2003.  Ex. 2655; Testimony of Ian Peck.

44.     Art Capital Group, LLC has an operating agreement. Ex. 2721; Testimony of Ian Peck.

45.     Mr. Peck is the sole member of Art Capital Group, LLC.  Ex. 2721; Testimony of Ian Peck

46.     Art Capital Group, LLC issued resolutions.  Ex. 2724; Testimony of Ian Peck.

    c.     **Fine Art Finance, LLC**

47.     Fine Art Finance, LLC is a Delaware Limited Liability Company.  Ex. 2658, 2659.

48.     Fine Art Finance, LLC was formed on May 6, 2003.  Ex. 2658.

49.     Fine Art Finance, LLC has an operating agreement.  Ex. 2659; Testimony of Ian Peck.

50.     Art Capital Group, LLC is the sole member of Fine Art Finance, LLC.  Ex. 2659; Testimony of Ian Peck.

    e.     **ACG Finance Company, LLC**

51.     ACG Finance Company, LLC is a Delaware limited liability company.  Ex. 2726; Testimony of Ian Peck.

52.     ACG Finance Company, LLC was formed on October 11, 2005.  Ex. 2726.

53.     Art Capital Group, LLC is the sole member of ACG Finance Company, LLC. Testimony of Ian Peck.

54.    ACG Finance Company, LLC issued resolutions.  Ex. 2714; Testimony of Ian Peck.

### d.    ACG Credit Company, LLC

55.    ACG Credit Company, LLC is a Delaware limited liability company.  Ex. 2710, 2711; Testimony of Ian Peck.

56.    ACG Credit Company, LLC was formed on August 14, 2003.  Ex. 2649; Testimony of Ian Peck.

57.    ACG Credit Company, LLC has an operating agreement.  Ex. 2712; Testimony of Ian Peck.

58.    Art Capital Group, LLC is the sole member of ACG Credit Company, LLC.  Ex. 2712; Testimony of Ian Peck.

### f.    ACG Credit Company II, LLC

59.    ACG Credit Company II, LLC is a Delaware limited liability company.  Ex. 2508, 2660, 2730.

60.    ACG Credit Company II, LLC was formed on November 14, 2005. Ex. 2652, 2653; Testimony of Ian Peck.

61.    Art Capital Group, LLC is the sole member of ACG Credit Company II, LLC. Testimony of Ian Peck.

**The Management Services Agreement Among Defendants**

62.     On or about August 14, 2003, Art Capital Group, LLC, ACG Credit Company,

LLC, Fine Art Finance, LLC and Art Capital Group, LLC entered into a Management

Services Agreement.  Ex. 2663; Testimony of Ian Peck.

63.     The Management Services Agreement provides that Art Capital Group, Inc., as

the Management Company, is appointed to perform and agrees to perform the services

contemplated in the Management Services Agreement on behalf Art Capital Group,

LLC, ACG Credit Company, LLC, and Fine Art Finance, LLC.  Ex. 2663; Testimony of

Ian Peck.

64.     Under the Management Services Agreement, the services that Art Capital Group,

Inc., as the Management Company, was to perform for Art Capital Group, LLC, ACG

Finance, LLC and Fine Art Finance, LLC as provided therein:

> "2.     <u>Provision of Services by [Art Capital Group, Inc.].</u>  [Art Capital Group, Inc.]
> shall engage and maintain personnel for the purpose of providing the services
> contemplated in this Agreement.  Subject to the terms of this Agreement, [Art
> Capital Group, Inc.], on behalf of [Art Capital Group, LLC, ACG Credit Company,
> LLC and Fine Art Finance, LLC], shall perform and render management,
> administrative, consulting and other services to [Art Capital Group, LLC, ACG
> Credit Company, LLC and Fine Art Finance, LLC] as may be required by [Art
> Capital Group, LLC, ACG Credit Company, LLC and Fine Art Finance, LLC] to
> conduct their respective businesses, including without limitation the following:
>
>> a.  "providing general business advice, including recommendations as to, and
>>     identification of, potential lending opportunities;"
>>
>> b.  "conducting due diligence in connection with potential lending
>>     opportunities;"
>>
>> c.  "negotiating lending transactions;"
>>
>> d.  "identifying, structuring, negotiating, obtaining bank, institutional and other
>>     sources of financing necessary or appropriate in connection with any
>>     proposed lending transaction;"

12

e.  "supervising the preparation and review of all documents required to complete a proposed lending transaction;"

f.  "monitoring and servicing any loans made by [Art Capital Group, LLC, ACG Credit Company, LLC and Fine Art Finance, LLC];"

g.  "providing management and financial planning, including advice on the utilization of assets;"

h.  "furnishing data processing services, telephone and telecopy services, office space and utilities, computer services, clerical services, executive and administrative services, stationary and other office supplies and other general purpose office equipment;"

i.  "providing accounting and bookkeeping services (other than auditing services);"

j.  "opening, maintaining and closing bank accounts and drawing checks or other orders for the payment of monies, in each case on behalf of [Art Capital Group, LLC, ACG Credit Company, LLC and Fine Art Finance, LLC];"

k.  "providing such assistance to [Art Capital Group, LLC, ACG Credit Company, LLC and Fine Art Finance, LLC] and their counsel and auditors as generally may be required to properly carry on the business and operations of [Art Capital Group, LLC, ACG Credit Company, LLC and Fine Art Finance, LLC]."  Ex. 2663; Testimony of Ian Peck."

Ex. 2663; Testimony of Ian Peck.

65.    The Management Services Agreement further provides that Art Capital Group, Inc. is paid by ACG Credit Company, LLC, Fine Art Finance, LLC, and/or Art Capital Group, LLC, for the services of Art Capital Group, Inc. as the Management Company. Ex. 2663 at p. 2; Testimony of Ian Peck.

66.    The Management Services Agreement was created with advice of counsel. Testimony of Ian Peck.

**Defendant entities were subjected independent audits**

67.    Art Capital Group, LLC and its wholly owned subsidiaries (i.e., ACG Finance

Company, LLC, ACG Credit Company, LLC, ACG Credit Company II, LLC, and Fine Art

Finance, LLC, the "Subsidiaries") were the subject of independent audits by the

accounting firms of Marden, Harrison & Kreuter, J.H. Cohn LLP for the years of 2004,

2006, 2007, 2008, and 2009 (the "Independent Audits").  Ex. 2668, 2669, 2670, 2671,

2672, 2673; Testimony of Mark Alimena and Ian Peck.

68.    The 2005 Independent Audit reached the conclusion that the consolidated

financial statements of Art Capital Group, LLC, which included its subsidiaries ACG

Credit Company, LLC and Fine Art Finance, LLC, "present fairly, in all material respects,

the consolidated financial position of Art Capital Group, LLC . . . and the consolidated

results of its operations and its cash flows for the year then ended in conformity with

accounting principles generally accepted in the United States." Ex. 2668; Testimony of

Mark Alimena.

69.    The 2006 Independent Audit reached the reached the conclusion that the

consolidated financial statements of Art Capital Group, LLC, which included the

Subsidiaries, "present fairly, in all material respects, the consolidated financial position

of Art Capital Group, LLC . . . and the consolidated results of its operations and its cash

flows for the year then ended in conformity with accounting principles generally

accepted in the United States." Ex. 2669; Testimony of Mark Alimena.

70.    The 2007 Independent Audit reached the conclusion that the consolidated

financial statements of Art Capital Group, LLC, which included the Subsidiaries,

"present fairly, in all material respects, the consolidated financial position of Art Capital

Group, LLC as of December 31, 2007, and the results of its operations, changes in member's equity and cash flows for the year then ended, in conformity with accounting principles generally accepted in the United States." Ex. 2670; Testimony of Mark Alimena.

71.    The 2008 Independent Audit reached the reached the conclusion that the consolidated financial statements of Art Capital Group, LLC, which included the Subsidiaries, "present fairly, in all material respects, the consolidated financial position of Art Capital Group, LLC as of December 31, 2008 and December 31, 2007, and their results of operations and cash flows for the years then ended, in conformity with accounting principles generally accepted in the United States." Ex. 2671; Testimony of Mark Alimena.

72.    The 2009 Independent Audit reached the reached the conclusion that the consolidated financial statements of Art Capital Group, LLC, which included the Subsidiaries, "present fairly, in all material respects, the consolidated financial position of Art Capital Group, LLC as of December 31, 2009 and December 31, 2008, and their results of operations and cash flows for the years then ended, in conformity with accounting principles generally accepted in the United States." Ex. 2672; Testimony of Mark Alimena.

**Defendant entities followed corporate formalities**

73.    The defendant entities were all separately formed and have separate EIN numbers.  Ex. 2580; Testimony of Ian Peck.  *See also, supra*, section entitled Defendants.

74.    Art Capital Group, Inc. Art Capital Group, LLC, Fine Art Finance, LLC, ACG Credit Company, LLC, ACG Credit Company II, LLC, and ACG Finance Company, LLC have separate financial records.  Ex. 2509, 2511-2514, 2522, 2585-2586, 2598, 2611, 2616, 2643-2647, 2664-2689, 2703-2706.

75.    Ian Peck made a loan to Fineartlease.com, Inc., now known as Art Capital Group, Inc., which was memorialized in a promissory note.  Ex. 2623.

76.    Art Capital Group, Inc. Art Capital Group, LLC, Fine Art Finance, LLC, ACG Credit Company, LLC, ACG Credit Company II, LLC, and ACG Finance Company, LLC maintained separate bank accounts.  Testimony of Ian Peck; Testimony of Mark Alimena; Ex. 2510, 2515-2516, 2519-2521, 2642, 2693-2694, 2700-2701, 2755

77.    Art Capital Group, Inc. Art Capital Group, LLC, Fine Art Finance, LLC, ACG Credit Company, LLC, ACG Credit Company II, LLC, and ACG Finance Company, LLC served separate functions.  Ex. 2580; Testimony of Ian Peck.

## CONCLUSIONS OF LAW

### Plaintiff's Assigned Loans Amended Complaint

**First Count:  Breach of the So-Ordered Settlement Stipulation as to ACG Credit Company II, LLC, Fine Art Finance, LLC, ACG Finance, LLC and Ian Peck**

1.      Pursuant to New York law, a plaintiff bringing a breach of contract action must prove the following: (1) the existence of a contract between the plaintiff and the defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform; and (4) damages resulting from the defendant's failure to perform. VisionChina Media, Inc. v. Shareholder Representative Servs., LLC, 967 N.Y.S.2d 338, 345, 109 A.D.3d 49, 58 (App. Div. 1st Dep't 2013) (citing Noise In Attic Prods., Inc. v. London Records, 782 N.Y.S.2d 1, 3, 10 A.D.3d 303, 306 (App. Div. 1st Dep't 2004)); Furia v. Furia, 498 N.Y.S.2d 12, 13, 116 A.D.2d 694, 695 (App. Div. 2d Dep't 1986).

2.      It is well established that the material breach of a contract by one party discharges the contractual obligations of the other party.  See, e.g., ASM Fin. Funding Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (dismissing breach of contract claim where plaintiff first materially breached, reasoning that "…a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); see also, Seitz v. Freund Corporation, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under New York law, excuse defendants from further compliance with the terms of the Agreement….").

3.      Plaintiff breached the So-Ordered Settlement Stipulation which relieved Defendants of any obligations under the So-Ordered Settlement Stipulation.

4.    ACG Credit Company II, LLC is the only entity that had any obligation to pay the Balance and Additional Interest, assuming *arguendo* that the So-Ordered Settlement Stipulation provides any obligation to pay that amount.  Ex. 2500 at § 4.

5.    Section 19(a) of the So-Ordered Settlement Stipulation defines default: "[i]t shall constitute a "Payment Default" hereunder if ACG-II fails to pay under the 6-Month Note or 2-Year Note when due."  Ex. 2500 at § 19(a).

6.    Section 19(a), and the entire So-Ordered Settlement Stipulation, do <u>not</u> provide that it is a "payment default" if ACG Credit Company II, LLC fails to pay the Balance and Additional Interest by November 19, 2008.  Ex. 2500.

7.    Although ACG Credit Company II, LLC executed a 2-Year Note and a 6-Month Note for two of the payment obligations under the So-Ordered Settlement Stipulation, there is no note for the $6.7 Million Assignment.  Ex. 2500.

8.    Under the terms of the So-Ordered Settlement Stipulation, the Assignment was a conditional assignment until November 19, 2008, on which date ACG Credit Company II, LLC could have paid the Balance and Additional Interest to revoke the Assignment.  Ex. 2500.

9.    Upon a failure to pay the Balance and Additional Interest by November 19, 2008, the Assignment becomes "unconditional."  Ex. 2500 at § 4(e).

10.    Section 4(e) of the Settlement Stipulation provides in pertinent part:

> If ACG-II fails to pay the Balance and any Additional Interest (as defined below) by November 19, 2008 and following five (5) business days written notice to ACG-II to cure the failure, **then SageCrest shall have the absolute right to service, manage, and administer the Assigned Loans as per the terms of the Collateral Assignment . . . ."**

Ex. 2500 at § 4(e)(emphasis added).

11.    Not only is a failure to pay the Balance and Additional Interest by November 19, 2008 not characterized as a "payment default" under Section 19(a) of the So-Ordered Settlement Stipulation, Section 19(c) articulates Plaintiff's specific "default rights."  Ex. 2500 at § 19(c).

12.    Section 19(c) provides in pertinent part that "[a] failure to pay the balance and any interest by November 19, 2008 following five (5) business days written notice to ACG-II to cure the payment failure **shall vest SageCrest with the rights set forth in Section 33(a) below**."  Ex. 2500 at § 19(c) (emphasis added).

13.    Section 33 of the So-Ordered Settlement Stipulation provides only the following with respect to the Assignment and the payment of the Balance and Additional Interest:

> . . . SageCrest may assign or transfer all of its rights and obligations under this Settlement Stipulation or the Additional Agreements to any person or entity other than those persons or entities listed in Section 25 of this Settlement Stipulation following . . . (ii) a failure to pay the Balance and Any Additional Interest . . . by November 19, 2008 . . . .

Ex. 2500 at § 33.

14.    Thus, the So-Ordered Settlement Stipulation provides that upon a failure to pay the Balance and Additional Interest, SageCrest is vested with the right to "assign or transfer" its rights under Section 33.  Ex. 2500.

15.    Accordingly, there has been no breach of the So-Ordered Settlement Stipulation with respect to the payment of the Balance and Additional Interest related to the Assignment.

16.    The language of the Collateral Assignment also refutes Plaintiff's theory that there was a "payment default" due to the failure to pay the Balance and Additional Interest on or before November 19, 2008:

19

[I]f Assignee does not receive the Balance plus any Additional Interest and any Assigned Loans Costs in available funds on or before the expiration of the Grace Period and after five (5) business days written notice to Borrower and Assignor, then Assignor shall have no interest in the Assigned Loans unless and until all such amounts are paid to Assignee at which time this Collateral Assignment shall expire and be null and void.

Ex. 2500 at SCII_009827.

17.    Under the terms of the So-Ordered Settlement Stipulation, there was no default with respect to the payment of the Balance and the Additional Interest.

18.    To the extent that there is <u>any</u> claim in regard to the Assigned Loans against ACG II (or any of the other Defendants), Plaintiff's damages cannot be ascertained unless and until Plaintiff has finished collecting on the Assigned Loans and has established that it will not recover the full amount of the Assignment.

19.    It is well-established that where the existence of a plaintiff's injury is contingent on other events, a plaintiff's claim is unripe. *See, e.g.*, <u>Cadle Co. v. D'Addario</u>, 111 Conn. App. 80, 83-84 (2008) (granting motion to dismiss for lack of ripeness); <u>Pall v. KPMG, LLP</u>, 2006 WL 2800064, *3 (D. Conn. Sept. 29, 2006) (same).

20.    Thus, in <u>Associates Commercial Corporation v. Liberty Truck Sales & Leasing, Inc.</u>, 286 A.D.2d 311 (2001), plaintiff entered into a security agreement with the defendant where plaintiff would advance money to defendant, who would then sell or lease trucks to third parties. The collateral included all present and future vehicles in defendant's inventory. <u>Id.</u> at 312. After defendant's default, the plaintiff sold various trucks within the collateral and commenced an action for a deficiency judgment. <u>Id.</u> The court found that the proof submitted by the plaintiff to support the commercial reasonableness of its sale did not account for the sale of four trucks included as part of the defendant's collateral. <u>Id.</u> The court ruled that the failure to

20

show that **all of the collateral** seized was disposed of in a commercially-reasonable

manner precluded the plaintiff from obtaining their deficiency judgment.  Thus, the court

reversed the trial court decision to grant summary judgment against the appellant in

favor of the deficiency judgment.  Id. at 312-13.

21.     A case, such as this one, is not ripe for review when a party seeking damages

has failed to exhaust its bargained-for remedies prior to seeking a deficiency.  *See* First

Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994).  In First Nationwide

Bank, the plaintiff brought a RICO claim alleging that defendant fraudulently induced

plaintiff into procuring a loan that was undersecured. 27 F.3d at 768.  While

acknowledging that the loan may have been procured through fraud, the Court noted

that any amounts paid on the debt would reduce the amount the plaintiff could claim as

damages resulting from the fraud.  Id.  The Court determined that the case was not ripe

for review because "*the amount of loss cannot be established until it is finally*

*determined whether the collateral is insufficient to make the plaintiff whole, and if so, by*

*how much.*"  (Emphasis added.)  Id.  "[O]nly after the lender has exhausted the

bargained-for remedies available to it can the lender assert that it was damaged by the

fraud, and then only to the extent of the deficiency."  Id.

22.     In Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 395 (S.D.N.Y. 2000), plaintiffs

were the lenders on a series of loans to various defendants that were secured by

mortgages and notes.  The plaintiffs brought a RICO claim against the defendants

alleging that they engaged in real estate transactions with the plaintiffs for the sole

purpose of obtaining money through false pretenses.  Id. at 396.  All of the loans lent by

the plaintiffs were secured by a mortgage and a note.  Id. at 397.  The court found that

21

plaintiffs made no effort to enforce their rights under the mortgages or notes prior to bringing the RICO claim.  Id.  Citing First Nationwide, the court held that the plaintiffs' claims were not ripe because they had "not exhausted the bargained-for remedies, which they admit [were] available to them."  Id.  "Plaintiffs cannot claim that their loans are uncollectible *before* making any effort to collect them 'through the traditional legal means available to them.'"  Id. at 399 citing Burke v. Dowling, 944 F.Supp. 1036 (E.D.N.Y.1995) (emphasis in original).

23.    Here, Plaintiff's injury, if any, is contingent on the recovery Plaintiff makes on the Assigned Loans, which Plaintiff does not dispute it is still collecting upon.

24.    Because Plaintiff's injury is contingent on these future events, Plaintiff's claims are unripe.

25.    Plaintiff has failed to meet its burden that Fine Art Finance, LLC, ACG Finance, LLC, and Ian Peck breached the So-Ordered Settlement Stipulation.

26.    Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

27.    Plaintiff cannot prove its damages, and its claims are unripe, because:

> a. Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.
>
> b. There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127: 8-128:18.

   c. It is possible that Plaintiff will be paid its full claim in the Barquet

      Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

   d.

28.    Even if Plaintiff prevails on this count, it is not entitled to any interest beyond the

Grace Period under the terms of the So-Ordered Settlement Stipulation.  Ex. 2500 at §

6(c) ("If Fine Art Finance, ACG Finance and ACG-II cannot, or do not procure the RVI,

the Balance, or remaining portion thereof, shall accrue simple interest from the Closing

Date at a rate of the posted yield for the 6-month U.S. Treasury Bill (1.86% as of

5/17/08) plus 2% per annum **during the Grace Period** (the "Additional Interest").

29.    Plaintiff admits that it has already received a total of $6,472,622.56 towards the

Assignment.  Ex. 631, 2735.

30.    Plaintiff also admits that in May 2011 it received a total $150,000 from Ramis

Barquet, and this $150,000 is unaccounted for in Plaintiff's accounting.  Ex. 518, 631,

2735, 2736, 2737, 2738; Testimony of Huber.

31.    As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this

claim even if it prevails.  Ex. 2650 at p. 20.

32.    Accordingly, even assuming, *arguendo,* that Plaintiff prevails on this count, all

Plaintiff can recover on the Assignment from Defendants is $77,377.44, plus the

Additional Interest that accrued during the Grace Period in the amount of $126,457.45.


**Second Count:  Breach of the So-Ordered Settlement Stipulation as to Fine Art
Finance, LLC, ACG Finance, LLC and Ian Peck**

33.    Pursuant to New York law, a plaintiff bringing a breach of contract action must

prove the following: (1) the existence of a contract between the plaintiff and the

defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform; and (4) damages resulting from the defendant's failure to perform. VisionChina Media, Inc. v. Shareholder Representative Servs., LLC, 967 N.Y.S.2d 338, 345, 109 A.D.3d 49, 58 (App. Div. 1st Dep't 2013) (citing Noise In Attic Prods., Inc. v. London Records, 782 N.Y.S.2d 1, 3, 10 A.D.3d 303, 306 (App. Div. 1st Dep't 2004)); Furia v. Furia, 498 N.Y.S.2d 12, 13, 116 A.D.2d 694, 695 (App. Div. 2d Dep't 1986).

34.     It is well established that the material breach of a contract by one party discharges the contractual obligations of the other party.  See, e.g., ASM Fin. Funding Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (dismissing breach of contract claim where plaintiff first materially breached, reasoning that "...a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); see also Seitz v. Freund Corporation, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under New York law, excuse defendants from further compliance with the terms of the Agreement....").

35.     Plaintiff breached the So-Ordered Settlement Stipulation which relieved Defendants of any obligations under the So-Ordered Settlement Stipulation.

36.     Plaintiff has failed to meet its burden that Fine Art Finance, LLC and ACG Finance, LLC made misrepresentations in the representations and warranties of the So-Ordered Settlement Stipulation.

37.     The representations referenced in this Second Count were not made by Ian Peck individually.

24

38.    Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans.

39.    As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this claim.  Ex. 2650 at p. 20.


**Third Count:  Breach of the So-Ordered Settlement Stipulation against All Defendants except Art Capital Group, Inc.**

40.    Pursuant to New York law, a plaintiff bringing a breach of contract action must prove the following: (1) the existence of a contract between the plaintiff and the defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform; and (4) damages resulting from the defendant's failure to perform. VisionChina Media, Inc. v. Shareholder Representative Servs., LLC, 967 N.Y.S.2d 338, 345, 109 A.D.3d 49, 58 (App. Div. 1st Dep't 2013) (citing Noise In Attic Prods., Inc. v. London Records, 782 N.Y.S.2d 1, 3, 10 A.D.3d 303, 306 (App. Div. 1st Dep't 2004)); Furia v. Furia, 498 N.Y.S.2d 12, 13, 116 A.D.2d 694, 695 (App. Div. 2d Dep't 1986).

41.    It is well established that the material breach of a contract by one party discharges the contractual obligations of the other party.  See, e.g., ASM Fin. Funding Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (dismissing breach of contract claim where plaintiff first materially breached, reasoning that "…a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); see also Seitz v. Freund Corporation, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under

25

New York law, excuse defendants from further compliance with the terms of the Agreement....").

42.     Plaintiff breached the So-Ordered Settlement Stipulation which relieved Defendants of any obligations under the So-Ordered Settlement Stipulation.

43.     Plaintiff has failed to meet its burden that Defendants breached the So-Ordered Settlement Stipulation.

44.     Even assuming, arguendo, the truth of Plaintiff's factual allegations, the only Defendants that have any obligation not to interfere with Plaintiff's servicing, managing and administration of the Assigned Loans are Fine Art Finance, LLC and ACG Finance, LLC, and accordingly, Plaintiff's claim for breach of contract must fail as to the remaining Defendants. Ex. 2500 at § 4(e).

45.     Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits. Testimony of Huber.

46.     Plaintiff cannot prove its damages, and its claims are unripe, because:

   a. Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest. Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

   b. There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full. Deposition of Carter Pennington 94:24-95:2; 127:8-128:18..

   c. It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years. Deposition of Carter Pennington 9:24-95:8.

47.    As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this claim.  Ex. 2650 at p. 20.

## Fourth Count:  Specific Performance of the So-Ordered Settlement Stipulation against ACG Credit Company II, LLC

48.    A plaintiff in a contract action seeking specific performance must prove: (1) that there was a contract between the parties; (2) that the plaintiff substantially performed its contractual obligations; (3) that the plaintiff was willing to perform its remaining contractual obligations; (4) that the defendant was able to convey the remaining property; and (5) that there was no adequate remedy at law. EMF Gen. Contracting Corp. v. Bisbee, 774 N.Y.S.2d 39, 44, 6 A.D.3d 45, 51 (App. Div. 1st Dep't 2004) (*citing* Piga v. Rubin, 751 N.Y.S.2d 195, 196, 300 A.D.2d 68, 69 (App. Div. 1st Dep't 2002)).

49.    "[T]he right to specific performance is not automatic, and a court has the discretion to deny this remedy where it would cause unreasonable hardship or injustice." Spira v. Acceus, 979 N.Y.S.2d 836, 837, 114 A.D.3d 663, 663 (App. Div. 2d Dep't 2014) (internal quotation marks and citations omitted).

50.    It is well established that the material breach of a contract by one party discharges the contractual obligations of the other party.  *See, e.g.,* ASM Fin. Funding Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (dismissing breach of contract claim where plaintiff first materially breached, reasoning that "...a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); *see also* Seitz v. Freund Corporation, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under

New York law, excuse defendants from further compliance with the terms of the Agreement....").

51.     Plaintiff breached the So-Ordered Settlement Stipulation which relieved Defendants of any obligations under the So-Ordered Settlement Stipulation.

52.     Plaintiff cannot establish that it substantially performed all of its contractual obligations.  *See* analysis herein of Defendants' counterclaims.

53.     The So-Ordered Settlement Stipulation does not impose a unilateral obligation on ACG Credit Company II, LLC to create the Blocked Account.  Rather, the So-Ordered Settlement Stipulation required both SageCrest and ACG Credit Company II, LLC to "present the blocked account agreement . . . to a mutually acceptable financial institution."  Ex. 2500 at § 13.

54.     SageCrest did not meet its obligations under § 13 of the So-Ordered Stipulation.

55.     Plaintiff has failed to meet its burden that Defendants breached the So-Ordered Settlement Stipulation.

56.     Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

57.     Plaintiff cannot prove its damages, and its claims are unripe, because:

    a.  Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

28

    b.  There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as

        Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2;

        127:8-128:18.

    c.  It is possible that Plaintiff will be paid its full claim in the Barquet

        Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

58.     As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this

claim.  Ex. 2650 at p. 20.


**Fifth Count:  Specific Performance of the So-Ordered Settlement Stipulation against ACG Credit Company II, LLC, Fine Art Finance, LLC, and ACG Finance, LLC**

59.     A plaintiff in a contract action seeking specific performance must prove: (1) that

there was a contract between the parties; (2) that the plaintiff substantially performed its

contractual obligations; (3) that the plaintiff was willing to perform its remaining

contractual obligations; (4) that the defendant was able to convey the remaining

property; and (5) that there was no adequate remedy at law. EMF Gen. Contracting

Corp. v. Bisbee, 774 N.Y.S.2d 39, 44, 6 A.D.3d 45, 51 (App. Div. 1st Dep't 2004) (citing

Piga v. Rubin, 751 N.Y.S.2d 195, 196, 300 A.D.2d 68, 69 (App. Div. 1st Dep't 2002)).

60.     "[T]he right to specific performance is not automatic, and a court has the

discretion to deny this remedy where it would cause unreasonable hardship or

injustice." Spira v. Acceus, 979 N.Y.S.2d 836, 837, 114 A.D.3d 663, 663 (App. Div. 2d

Dep't 2014) (internal quotation marks and citations omitted).

61.     It is well established that the material breach of a contract by one party

discharges the contractual obligations of the other party.  See, e.g., ASM Fin. Funding

29

<u>Corp. v. K-Sher Corp.</u>, 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (dismissing breach of contract claim where plaintiff first materially breached, reasoning that "...a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); *see also* <u>Seitz v. Freund Corporation</u>, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under New York law, excuse defendants from further compliance with the terms of the Agreement....").

62.     Plaintiff breached the So-Ordered Settlement Stipulation which relieved Defendants of any obligations under the So-Ordered Settlement Stipulation.

63.     ACG Credit Company II, LLC, Fine Art Finance, LLC, and ACG Finance, LLC were relieved of their reporting obligations by virtue of Plaintiff's breaches of the So-Ordered Settlement Stipulation.

64.     Moreover, Plaintiff took possession and control of the Assigned Loans and Assigned Collateral, and accordingly, doing so relieved Defendants of any reporting obligations as to those items within Plaintiff's exclusive control.

65.     As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this claim.  Ex. 2650 at p. 20.


**Sixth Count:  Conversion against all Defendants**

66.     To establish a conversion claim, a plaintiff must prove the following elements: (1) plaintiff's immediate superior right of possession; (2) to the identifiable fund or chattel; and (3) the defendant's exercise of unauthorized dominion over the money or chattel in

question; (4) to the exclusion of the plaintiff's rights. See Fitzpatrick House III, LLC v. Neighborhood Youth and Family Servs., 868 N.Y.S.2d 212, 213, 55 A.D.3d 664, 664 (App. Div. 2d Dep't 2008).

67.     Plaintiff fails to allege which of Defendants "exercised unauthorized dominion over the money . . . in question" as is required under New York law.

68.     Plaintiff has received the enumerated funds it seeks in this count, and accordingly, Plaintiff's claims in this count are moot.

69.     Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

70.     Plaintiff cannot prove its damages, and its claims are unripe, because:

   a.  Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

   b.  There is a likelihood that 4B creditor's in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2.

   c.  It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

   d.  If the Barquet Liquidating Trust remains open for another seven years so, there would be a good chance that Plaintiff's claim (not including interest) could be paid in full.  Deposition of Carter Pennington 127:8-128:18.

    e.  If the Barquet Liquidating Trust remains open for 12 years, it is very likely

        that Plaintiff's claim will be paid in full.  Deposition of Carter Pennington

        127:8-128:18.

71.    As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this

claim.  Ex. 2650 at p. 20.

**Seventh Count:  Turnover of Assets Pursuant to Article 9 of the Uniform Commercial Code against Fine Art Finance, LLC, ACG Finance, LLC and Art Capital, LLC**

72.    Plaintiff's complaint cites no section of the Uniform Commercial Code for

"turnover" against parties who are not in privity of contract with a secured creditor.

73.    Article 9 of the Uniform Commercial Code provides no basis for a claim of

"turnover" against parties which do not have privity of contract with a secured creditor.

74.    To the extent this count identifies any amounts owing to Plaintiff, Plaintiff has

received the enumerated amounts, mooting this count.

75.    Plaintiff further cannot prove that it has any damages resulting from certain of

Defendants' alleged failures to perform because Plaintiff has not finished collecting on

the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

76.    Plaintiff cannot prove its damages, and its claims are unripe, because:

    a.  Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy

        which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex.

        2768; Testimony of Huber; Deposition of Carter Pennington.

    b.  There is a likelihood that 4B creditor's in the Barquet Bankruptcy, such as

        Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2.

c. It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years. Deposition of Carter Pennington 9:24-95:8.

d. If the Barquet Liquidating Trust remains open for another seven years so, there would be a good chance that Plaintiff's claim (not including interest) could be paid in full. Deposition of Carter Pennington 127:8-128:18.

e. If the Barquet Liquidating Trust remains open for 12 years, it is very likely that Plaintiff's claim will be paid in full. Deposition of Carter Pennington 127:8-128:18.

77.   As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this claim. Ex. 2650 at p. 20.

**Eighth Count:   Civil Contempt against All Defendants Except Art Capital Group, Inc.**

78.   In order to establish a claim for civil contempt in New York, a plaintiff must successfully show: (1) that a lawful order of court, clearly expressing an unequivocal mandate, was in effect; (2) that—to a degree of reasonable certainty—the party to be held in contempt disobeyed the order and had knowledge of the order, although it is not necessary that the order actually have been served upon the party; and (3) that the rights of the moving party were prejudiced as a result of such disobedience. McCormick v. Axelrod, 59 N.Y.2d 574, 453 N.E.2d 508, amended 60 N.Y.2d 652, 454 N.E.2d 1314 (1983); Bernard-Cadet v. Gobin, 943 N.Y.S.2d 164, 166, 94 A.D.3d 1030, 1031 (App. Div. 2d Dep't 2012);

79.   The So-Ordered Settlement Stipulation does not require the payment of $6.7 million plus the Additional Interest.

33

80.     Rather, upon the non-payment of the Balance and the Additional Interest, under the So-Ordered Settlement Stipulation, Plaintiff acquired the rights provided therein. *See, supra*, analysis of First Count.

81.     Section 19(a), and the entire So-Ordered Settlement Stipulation, do <u>not</u> provide that it is a "payment default" if ACG Credit Company II, LLC fails to pay the Balance and Additional Interest by November 19, 2008.  Ex. 2500.

82.     Plaintiff's breaches of the So-Ordered Settlement Stipulation relieved Defendants of their obligations under the So-Ordered Settlement Stipulation. *See,* discussion of Defendants' counterclaims herein.

83.     Plaintiff further cannot establish all of the elements for Civil Contempt.

84.     Plaintiff further cannot prove that it has been prejudiced by any of Defendants' alleged acts because Plaintiff has not finished collecting on the Assigned Loans.

85.     Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

86.     Plaintiff cannot prove its damages, and its claims are unripe, because:

      a.  Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

      b.  There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127:8-128:18.

c.  It is possible that Plaintiff will be paid its full claim in the Barquet

Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.


**Tenth Cause of Action:  Tortious Interference against All Defendants**

87.     A plaintiff bringing a claim for tortious interference with a contractual relationship

must prove: (1) the existence of a valid contract between the plaintiff and a third party;

(2) the defendant's knowledge of that contract; (3) the defendant's intentional

procurement of the third party's breach of that contract without reasonable justification;

(4) actual breach of the contract; and (5) damages resulting therefrom. White Plains

Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426, 867 N.E.3d 381, 383 (2007)

(citing Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 668 N.E.2d 1370, 1375

(1996)); AREP Fifty-Seventh, LLC v. PMGP Assoc., L.P., 981 N.Y.S.2d 406, 407, 115

A.D.3d 402, 402 (App. Div. 1st Dep't 2014).

88.     Plaintiff's breaches of the So-Ordered Settlement Stipulation relieved Defendants

of their obligations under the So-Ordered Settlement Stipulation. See, discussion of

Defendants' counterclaims herein.

89.     Plaintiff further cannot establish all of the elements for Tortious Interference with

Contract.

90.     Plaintiff further cannot prove that it has any damages resulting from certain of

Defendants' alleged failures to perform because Plaintiff has not finished collecting on

the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

91.     Plaintiff cannot prove its damages, and its claims are unripe, because:

    a. Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

    b. There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127:8-128:18.

    c. It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

92.    As ruled by Judge Branston, Plaintiff cannot recover its attorney's fees for this claim.  Ex. 2650 at p. 20.


**Eleventh Cause of Action:  Fraudulent Inducement against Fine Art Finance, LLC and Art Capital Group, Inc.**

93.    To establish fraudulent inducement under New York law, a plaintiff must prove: (1) that the defendant made a representation; (2) as to a material fact; (3) which was false; (4) which the defendant knew to be false; (5) for the purpose of inducing the other party to rely on it; and (6) that the other party justifiably relied on the statement; (7) in ignorance of its falsity; (8) to his or her injury. Lama Holding Co.v. Smith Barney Inc., 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373 (1996); Brown v. Lockwood, 432 N.Y.S.2d 186, 193, 76 A.D.2d 721, 730 (App. Div. 2d Dep't1980); Perez v. Hempstead Motor Sales, Ltd., 662 N.Y.S.2d 184, 188, 173 Misc.2d 710, 717 (1997); Clarke v. Max Advisors, LLC, 235 F. Supp.2d 130, 142 (N.D.N.Y. 2002). A fraudulent inducement claim also requires that the plaintiff show proximate causation between the allegedly fraudulent representation and the loss or injury that resulted. See Suez Equity Investors,

L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 104-05 (2d Cir. 2001) ("The [fraud] claim also requires a showing of proximate causation, such that the injury 'is the natural and probable consequence of the defrauder's misrepresentation or . . . the defrauder ought reasonably to have foreseen that the injury was a probable consequence of his fraud.'") (quoting Cumberland Oil Corp. v. Thropp, 791 F.2d 1037, 1044 (2d Cir. 1986)).

94.     Plaintiff must prove this claim by clear and convincing evidence. Vermeer Owners v. Guterman, 78 N.Y.2d 1114, 1116 (1991)(holding that plaintiffs bringing a fraud claim must prove material representation element by clear and convincing evidence).

95.     Plaintiff cannot establish all of the elements for Fraudulent Inducement.

96.     Plaintiff released Fine Art Finance, LLC and Art Capital Group, Inc. of all claims of Fraudulent Inducement in the So-Ordered Settlement Stipulation, and therefore, Plaintiff's claim must fail.  Ex. 2500.  See Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 901 N.Y.S.2d 618, 627 (N.Y. Supreme Ct. App. Div. 2010) aff'd, 17 N.Y.3d 269 (2011) ("Centro I") (dismissing plaintiffs' claim for fraudulent inducement to sell their minority interest in a company (TWE) based on misrepresentations made to them by the defendants concerning the value of the underlying venture where sale contract contained "a broad release of any and all claims, 'whether past, present or future, actual or contingent,' arising from 'the ownership of membership interests in [TWE] or having taken or failed to take any action in any capacity on behalf of [TWE] or in connection with the business of [TWE]'" and the release was not conditioned on the truth of the financial information provided by the defendants) ; see also Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 17 N.Y.3d 269, 278 (2011)

("Centro II") (affirming Centro I, recognizing that "a party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release," and holding that the plaintiffs' claim regarding misrepresentations in the value of the entity sold was directly related to the release); Bd. of Managers of NV 101 N 5th St. Condo. v. Morton, 39 Misc. 3d 1212(A), at *11-*13, 975 N.Y.S.2d 365 (Sup. Ct. 2013) (applying Centro II, dismissing claim of fraudulent inducement - based on alleged material misrepresentations made in a settlement - where the settlement agreement contained a general release).

97.     Plaintiff cannot establish proximate causation to any damages unless and until it has finished collecting on the Assigned Loans.

98.     Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

99.     Plaintiff cannot prove its damages, and its claims are unripe, because:

   a. Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

   b. There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127:8-128:18

   c. It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

100.    Art Capital Group, Inc. is not a party to the So-Ordered Settlement Stipulation, and accordingly, it cannot be held liable on a fraudulent inducement claim as a matter of law. C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d 419, 431 (S.D.N.Y. 2005) ("Plaintiff's claims of fraudulent inducement against Webpay, Webpay AG, Siegel and Stangl must be dismissed because those defendants were not parties to the Separation Agreement. . . . Fraud by a third party is not effective to vitiate contractual obligations.").

### Twelfth Counterclaim:  Fraud against all Defendants

101.    Thus, the plaintiff "must show that: (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19 (2d Cir. 1996) (quoting Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 153 (2d Cir.1995)); Xiotech Corp. v. Express Data Prods. Corp., No. 6:13–CV–861 (MAD/TWD), 2014 WL 1314279 at *9 (N.D.N.Y. 2014); Lama Holding Co.v. Smith Barney Inc., 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373 (1996).

102.    Like a fraudulent inducement claim, a plaintiff alleging general fraud must show proximate causation. Suez Equity Investors, L.P. v. Toronto-Dominion Bank, 250 F.3d 87, 104-05 (2d Cir. 2001).

103.    Unlike negligence, actual fraud always consists of positive and intentional action. See Maher v. Hibernia Ins. Co., 67 N.Y. 283, 292 (1876) (distinguishing fraud from a false assertion and noting that the former requires harmful intent).

39

104.   Plaintiff must prove this claim by clear and convincing evidence. Vermeer
Owners v. Guterman, 78 N.Y.2d 1114, 1116 (1991)(holding that plaintiffs bringing a
fraud claim must prove material representation element by clear and convincing
evidence).

105.   Plaintiff cannot establish all of the elements for Fraud.

106.   Plaintiff released Defendants of all claims in the So-Ordered Settlement
Stipulation, and therefore, Plaintiff's claim must fail. Ex. 2500. See Centro Empresarial
Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 901 N.Y.S.2d 618, 627 (N.Y. Supreme Ct.
App. Div. 2010) aff'd, 17 N.Y.3d 269 (2011) ("Centro I") (dismissing plaintiffs' claim for
fraudulent inducement to sell their minority interest in a company (TWE) based on
misrepresentations made to them by the defendants concerning the value of the
underlying venture where sale contract contained "a broad release of any and all claims,
'whether past, present or future, actual or contingent,' arising from 'the ownership of
membership interests in [TWE] or having taken or failed to take any action in any
capacity on behalf of [TWE] or in connection with the business of [TWE]'" and the
release was not conditioned on the truth of the financial information provided by the
defendants) ; see also Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.,
17 N.Y.3d 269, 278 (2011) ("Centro II") (affirming Centro I, recognizing that "a party that
releases a fraud claim may later challenge that release as fraudulently induced only if it
can identify a separate fraud from the subject of the release," and holding that the
plaintiffs' claim regarding misrepresentations in the value of the entity sold was directly
related to the release); Bd. of Managers of NV 101 N 5th St. Condo. v. Morton, 39 Misc.
3d 1212(A), at *11-*13, 975 N.Y.S.2d 365 (Sup. Ct. 2013) (applying Centro II,

dismissing claim of fraudulent inducement - based on alleged material misrepresentations made in a settlement - where the settlement agreement contained a general release).

107.    Plaintiff cannot establish proximate causation to any damages unless and until it has finished collecting on the Assigned Loans.

108.    Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

109.    Plaintiff cannot prove its damages, and its claims are unripe, because:

> a. Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.
>
> b. There is a likelihood that 4B creditor's in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127:8-128:18.
>
> c.  It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

**Plaintiff's 2-Year Note Complaint**

**First Count:  Nonpayment of the 2-Year Note against all Defendants**

110.    The elements for recovery on a promissory note require the plaintiff to establish:

> (1)The defendant signed the note, UCC § 3–401; (2)The note contains an unconditional promise to pay, UCC § 3–106; (3)The promise is to pay a sum certain or fixed amount of money, UCC § 3–104(a); (4) The note is payable on demand or at a definite time, UCC § 108; (5) The plaintiff is entitled to enforce the note, UCC § 3–301; (6) A default has occurred-that is, if the note is demand paper, that due demand has been made, UCC §§ 3–104, 3–108; and (7) If the note is due at a definite time, that time has past [sic] without payment, UCC § 3–108(b).

Thomas v. Thomas, 36 Misc. 3d 1239(A) 1, 6 (N.Y. Sup. Ct. 2012).

111.    Plaintiff has failed to allege and prove the elements for a claim of breach of promissory note.

112.    It is well established that the material breach of a contract by one party discharges the contractual obligations of the other party.  *See, e.g.,* ASM Fin. Funding Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (dismissing breach of contract claim where plaintiff first materially breached, reasoning that "…a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); *see also* Seitz v. Freund Corporation, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under New York law, excuse defendants from further compliance with the terms of the Agreement….").

113.    Plaintiff breached the So-Ordered Settlement Stipulation which relieved Defendants of any obligations under the So-Ordered Settlement Stipulation.

114.   Any overpayments on the Assigned Loans are owed to Defendants under the terms of the So-Ordered Settlement Stipulation.  Ex. 2500 at § 7(a) (**Upon receipt by SageCrest of payment of the principal balance due** by Lealma, Malca, Hearst, Socolof, Bailey, ACG-II with respect to the American Furniture Judgment and the Gill Furniture Lot, ACG-II with respect to the IPFP Collateral, and by any of the underlying borrowers on the Assigned Loans (as set forth in Section 1 or in Exhibit K for each of the Assigned Loans) plus any costs recoverable by SageCrest under the specific loans (or in the case of the (i) American Furniture Judgment and the Gill Furniture Lot, the full amount of the American Furniture Judgment and (ii) IPFP Collateral, the prices set forth in the January 2006 Bill of Sale), **SageCrest shall be deemed to have released any and all security interests and liens in that particular loan**, the American Furniture Judgment, or the IPFP Collateral, and ACG-II, Fine Art Finance and ACG Finance are permitted to release all liens and security interests in the affected collateral artwork." (Emphasis added.)), 7(c) ("If SageCrest receives payment in excess of the Settlement Amount, the Additional Interest, if applicable, and the reasonable collection and/or enforcement costs SageCrest is entitled to recover under this Settlement Stipulation and Additional Agreements (as defined below), the excess proceeds shall be turned over to ACG-II or ACG Art Finance (whichever is the applicable party) within five (5) business days of receipt . . . .").

115.   Because Plaintiff is limited in its ability to collect on the Assigned Loans under Section 7 of the So-Ordered Settlement Stipulation, Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform

because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

116.    In that regard, Plaintiff cannot prove its damages, and its claims are unripe, because:

> a.  Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.
>
> b.  There is a likelihood that 4B creditor's in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127:8-128:18.
>
> c.  It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

117.    Moreover, pursuant to Section 15 of the Settlement Stipulation, Plaintiff had the right, in the event of a default, to take over the collection, enforcement and execution of certain of the 2-Year Note collateral:

> 15.    <u>Take Over Rights</u>.
>
> . . .
>
> (b)    Post-Default:
>
> (ii)    Following a Default under the 2-Year Note, SageCrest may takeover the collection, enforcement or execution of the Other Art Loans and American Furniture Judgment on the conditions set forth above without having to provide the Credit.  Instead, the amounts due shall only be credited upon receipt without the need to satisfy any of the conditions or abide by any of the restrictions contained in Section 15(a).

Ex. 2500 at § 15.

118.    The Plaintiff did not attempt to exercise any of its rights to take over the collection, enforcement or execution of the collateral identified in Section 15 of the Settlement Stipulation.  Because Plaintiff has not exhausted its bargained-for remedies in connection with the 2-Year Note, its claim for the money owed in connection with ACG-II's alleged failure to pay the 2-Year Note is not ripe for review.  See First Nationwide, 27 F.3d at 768.  Plaintiff's claim on the balance of the 2-Year Note is contingent on their enforcement of the designated collateral.


**Second Count:  Breach of the IPFP Agreement against all Defendants**

119.    Pursuant to New York law, a plaintiff bringing a breach of contract action must prove the following: (1) the existence of a contract between the plaintiff and the defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform; and (4) damages resulting from the defendant's failure to perform. VisionChina Media, Inc. v. Shareholder Representative Servs., LLC, 967 N.Y.S.2d 338, 345, 109 A.D.3d 49, 58 (App. Div. 1st Dep't 2013) (citing Noise In Attic Prods., Inc. v. London Records, 782 N.Y.S.2d 1, 3, 10 A.D.3d 303, 306 (App. Div. 1st Dep't 2004)); Furia v. Furia, 498 N.Y.S.2d 12, 13, 116 A.D.2d 694, 695 (App. Div. 2d Dep't 1986).

120.    ACG Credit Company II, LLC is the only entity that signed the IPFP Agreement.

121.    Plaintiff has failed to meet its burden that all Defendants breached the IPFP Agreement.

122.    It is well established that the material breach of a contract by one party discharges the contractual obligations of the other party. See, e.g., ASM Fin. Funding Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008)

(dismissing breach of contract claim where plaintiff first materially breached, reasoning that "...a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); *see also* <u>Seitz v. Freund Corporation</u>, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under New York law, excuse defendants from further compliance with the terms of the Agreement....").

123.   ACG Credit Company II, LLC was relieved of its obligations under the IPFP Agreement by virtue of Plaintiff's breaches of the So-Ordered Settlement Stipulation.

124.   Under Section 7 of the So-Ordered Settlement Stipulation, to the extent that amounts are realized on a particular loan that exceed the amounts owed with respect to that particular loan, Defendants are entitled to receive that overage amount; and that amount, which could be applied as a setoff against any claim of damages by Plaintiff, cannot be known unless and until all of the collateral identified in Section 7 of the Settlement Stipulation has been liquidated.  Ex. 2500 at § 7.

125.   Section 7 of the So-Ordered Settlement Stipulation applies equally to the Assigned Loans and the 2-Year Note collateral (as it is identified in Section 7), a recovery in excess of the amount identified in Section 7 would <u>reduce</u> Plaintiff's claim of damages in either the Assigned Loans Case or the 2-Year Note Case.

126.   Because Plaintiff is limited in its ability to collect on the Assigned Loans under Section 7 of the So-Ordered Settlement Stipulation, Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform

because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

127.    In that regard, Plaintiff cannot prove its damages, and its claims are unripe, because:

> a.  Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.
>
> b.  There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127:8-128:18
>
> c.  It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

**Third Count:  Breach of the So-Ordered Settlement Stipulation against all defendants**

128.    Pursuant to New York law, a plaintiff bringing a breach of contract action must prove the following: (1) the existence of a contract between the plaintiff and the defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform; and (4) damages resulting from the defendant's failure to perform. VisionChina Media, Inc. v. Shareholder Representative Servs., LLC, 967 N.Y.S.2d 338, 345, 109 A.D.3d 49, 58 (App. Div. 1st Dep't 2013) (citing Noise In Attic Prods., Inc. v. London Records, 782 N.Y.S.2d 1, 3, 10 A.D.3d 303, 306 (App. Div. 1st Dep't 2004)); Furia v. Furia, 498 N.Y.S.2d 12, 13, 116 A.D.2d 694, 695 (App. Div. 2d Dep't 1986).

129.   ACG Credit Company II, LLC, Fine Art Finance, LLC and ACG Finance, LLC are the only Defendants that have any obligations under Section 14(d) of the So-Ordered Settlement Stipulation.

130.   Plaintiff has failed to meet its burden that all Defendants the So-Ordered Settlement Stipulation.

131.   It is well established that the material breach of a contract by one party discharges the contractual obligations of the other party.  *See, e.g.,* ASM Fin. Funding Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008) (dismissing breach of contract claim where plaintiff first materially breached, reasoning that "...a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach."); *see also* Seitz v. Freund Corporation, 2009 WL 1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under New York law, excuse defendants from further compliance with the terms of the Agreement....").

132.   ACG Credit Company II, LLC was relieved of its obligations under the So-Ordered Settlement Stipulation by virtue of Plaintiff's breaches of the So-Ordered Settlement Stipulation.

133.   Under Section 7 of the So-Ordered Settlement Stipulation, to the extent that amounts are realized on a particular loan that exceed the amounts owed with respect to that particular loan, Defendants are entitled to receive that overage amount; and that amount, which could be applied as a setoff against any claim of damages by Plaintiff,

cannot be known unless and until all of the collateral identified in Section 7 of the Settlement Stipulation has been liquidated.  Ex. 2500 at § 7.

134.    Section 7 of the So-Ordered Settlement Stipulation applies equally to the Assigned Loans and the 2-Year Note collateral (as it is identified in Section 7), a recovery in excess of the amount identified in Section 7 would reduce Plaintiff's claim of damages in either the Assigned Loans Case or the 2-Year Note Case.

135.    Accordingly, Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans.

136.    Because Plaintiff is limited in its ability to collect on the Assigned Loans under Section 7 of the So-Ordered Settlement Stipulation, Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

137.    In that regard, Plaintiff cannot prove its damages, and its claims are unripe, because:

    a.  Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

    b.  There is a likelihood that 4B creditor's in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2.

    c.  It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

    d.  If the Barquet Liquidating Trust remains open for another seven years so,

        there would be a good chance that Plaintiff's claim (not including interest)

        could be paid in full.  Deposition of Carter Pennington 127:8-128:18.

    e.  If the Barquet Liquidating Trust remains open for 12 years, it is very likely

        that Plaintiff's claim will be paid in full.  Deposition of Carter Pennington

        127:8-128:18.

138.   Plaintiff further cannot prove any damages for Defendants' alleged breaches of

the So-Ordered Settlement Stipulation.


**Fourth Count:  Conversion against all Defendants**

139.   To establish a conversion claim, a plaintiff must prove the following elements: (1)

plaintiff's immediate superior right of possession; (2) to the identifiable fund or chattel;

and (3) the defendant's exercise of unauthorized dominion over the money or chattel in

question; (4) to the exclusion of the plaintiff's rights. See Fitzpatrick House III, LLC v.

Neighborhood Youth and Family Servs., 868 N.Y.S.2d 212, 213, 55 A.D.3d 664, 664

(App. Div. 2d Dep't 2008).

140.   Plaintiff fails to allege which of Defendants "exercised unauthorized dominion

over the money . . . in question" as is required under New York law.

141.   Plaintiff has received the enumerated funds it seeks in this count, and

accordingly, Plaintiff's claims in this count are moot.

142.   Under Section 7 of the So-Ordered Settlement Stipulation, to the extent that

amounts are realized on a particular loan that exceed the amounts owed with respect to

that particular loan, Defendants are entitled to receive that overage amount; and that

amount, which could be applied as a setoff against any claim of damages by Plaintiff, cannot be known unless and until all of the collateral identified in Section 7 of the Settlement Stipulation has been liquidated.  Ex. 2500 at § 7.

143.    Section 7 of the So-Ordered Settlement Stipulation applies equally to the Assigned Loans and the 2-Year Note collateral (as it is identified in Section 7), a recovery in excess of the amount identified in Section 7 would reduce Plaintiff's claim of damages in either the Assigned Loans Case or the 2-Year Note Case.

144.    Because Plaintiff is limited in its ability to collect on the Assigned Loans under Section 7 of the So-Ordered Settlement Stipulation, Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits.  Testimony of Huber.

145.    In that regard, Plaintiff cannot prove its damages, and its claims are unripe, because:

> a.   Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest.  Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.
>
> b.   There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full.  Deposition of Carter Pennington 94:24-95:2; 127:8-128:18.
>
> c.   It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years.  Deposition of Carter Pennington 9:24-95:8.

146.    Plaintiff cannot prove any damages for this count.

**Fifth Count:  Turnover of assets pursuant to Section 542 of the Bankruptcy Code and the U.C.C. against all Defendants**

147.   Plaintiff cites no section of the Uniform Commercial Code for "turnover" against parties who are not in privity of contract with a secured creditor.

148.   Article 9 of the Uniform Commercial Code provides no basis for a claim of "turnover" against parties which do not have privity of contract with a secured creditor.

149.   To the extent this count identifies any amounts owing to Plaintiff, Plaintiff has received the enumerated amounts, mooting this count.

150.   Section 13(d) of the So-Ordered Settlement Stipulation allows ACG Credit Company II, LLC to be reimbursed its collection and enforcement costs and Administrative Costs.  Ex. 2500 at § 13(d).

151.   Section 15(b) of the So-Ordered Settlement Stipulation provides:

> 15.   <u>Take Over Rights</u>.
>
> . . .
>
> (b)   Post-Default:
>
> (ii)   Following a Default under the 2-Year Note, SageCrest may takeover the collection, enforcement or execution of the Other Art Loans and American Furniture Judgment on the conditions set forth above without having to provide the Credit.  Instead, the amounts due shall only be credited upon receipt without the need to satisfy any of the conditions or abide by any of the restrictions contained in Section 15(a).

152.   Plaintiff failed to exercise its rights to take over the servicing and administration of the Other Art Loans, the Other Art Loan Collateral, the American Furniture Judgment and the Gill Furniture Lot pursuant to Section 15(b)(ii) of the So-Ordered Settlement

Stipulation, and accordingly, Plaintiff cannot assert a claim for "turnover" of these assets while simultaneously refusing to exercise these rights. Ex. 2500 at § 15(b)(ii).

153.    Because Plaintiff is limited in its ability to collect on the Assigned Loans under Section 7 of the So-Ordered Settlement Stipulation, Plaintiff further cannot prove that it has any damages resulting from certain of Defendants' alleged failures to perform because Plaintiff has not finished collecting on the Assigned Loans, which Plaintiff admits. Testimony of Huber.

154.    In that regard, Plaintiff cannot prove its damages, and its claims are unripe, because:

      a. Plaintiff is still pursuing collection on its claim in the Barquet Bankruptcy which currently has an unpaid balance of $4,275,745.55 plus interest. Ex. 2768; Testimony of Huber; Deposition of Carter Pennington.

      b. There is a likelihood that 4B creditors in the Barquet Bankruptcy, such as Plaintiff, will be paid in full. Deposition of Carter Pennington 94:24-95:2;; 127:8-128:18.

      c. It is possible that Plaintiff will be paid its full claim in the Barquet Bankruptcy within three years. Deposition of Carter Pennington 9:24-95:8.

**Sixth Count:  Enforcement of the Peck Personal Guarantee (i.e., the 2-Year Note Guarantee) against Ian Peck[1]**

155.    Pursuant to New York law, a plaintiff bringing a breach of contract action must prove the following: (1) the existence of a contract between the plaintiff and the defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform; and

---

[1] Plaintiff's Amended Complaint in the Assigned Loans Case does not assert a claim to enforce the Assigned Loans Guarantee.

(4) damages resulting from the defendant's failure to perform. VisionChina Media, Inc.

v. Shareholder Representative Servs., LLC, 967 N.Y.S.2d 338, 345, 109 A.D.3d 49, 58

(App. Div. 1st Dep't 2013) (citing Noise In Attic Prods., Inc. v. London Records, 782

N.Y.S.2d 1, 3, 10 A.D.3d 303, 306 (App. Div. 1st Dep't 2004)); Furia v. Furia, 498

N.Y.S.2d 12, 13, 116 A.D.2d 694, 695 (App. Div. 2d Dep't 1986).

156.    It is well established that the material breach of a contract by one party

discharges the contractual obligations of the other party.  See, e.g., ASM Fin. Funding

Corp. v. K-Sher Corp., 21 Misc. 3d 1102(A), 873 N.Y.S.2d 231 (Sup. Ct. 2008)

(dismissing breach of contract claim where plaintiff first materially breached, reasoning

that "…a party's performance under a contract is excused where the other party has

substantially failed to perform its side of the bargain or, synonymously, where that party

has committed a material breach."); see also Seitz v. Freund Corporation, 2009 WL

1011617 (W.D.N.Y 2009) ("material breach of the Agreement by [plaintiff] would, under

New York law, excuse defendants from further compliance with the terms of the

Agreement.…").

157.    Plaintiff breached the So-Ordered Settlement Stipulation which relieved Peck of

any obligations under the So-Ordered Settlement Stipulation.

158.    Section 12 of the Settlement Stipulation provides the following:

> 12.    Limited Personal Guarantee.  Simultaneously with the execution of this Settlement Stipulation and as part of the security for the ACG-II Notes only, Mr. Peck shall execute and deliver a limited, conditional guarantee of collection in the amount of $1,000,000.00 in the form annexed hereto as Exhibit Q (the "Limited Personal Guarantee").

> Ex. 2500 at § 12.

54

159.   The 2-Year Note Guarantee contains the following conditions precedent to its enforcement in Paragraph 2(b):

(b)   THIS LIMITED GUARANTEE IS A GUARANTEE OF COLLECTION ONLY AND NOT A GUARANTEE OF PAYMENT. BEFORE ENFORCING LENDER'S RIGHTS AND REMEDIES UNDER THIS LIMITED GUARANTEE, LENDER MUST FIRST:

(i)   USE BEST EFFORTS TO REPLEVY AND REPOSSESS ALL OF THE COLLATERAL SECURING THE NOTES AND TO FORECLOSE THEREON TO THE EXTENT THAT SUCH COLLATERAL HAS NOT BEEN PREVIOUSLY SOLD, WHICH FORECLOSURE MUST BE IN A COMMERCIALLY REASONABLE MANNER (A) AT THE LOWER OF  (i) A FAIR MARKET VALUE APPRAISAL OF EACH COLLATERAL PIECE TO BE CONDUCTED BY GAYLE M. SKLUZACEK, AAA OR ANOTEHR APPRAISER SELECTED BY BORROWER AND PAID BY BORROWER, WHICH APPRAISAL BORROWER SHALL REQUEST WITHIN FIVE (5) BUSINESS DAYS OF THE CLSOING DATE AND TO BE COMPLETED AND PROVIDED TO LENDER WITHIN NINETY (90) DAYS OF THE AFOREMENTIONED REQUEST BY BORROWER OR (ii) A PRE-LIQUIDATION FAIR MARKET VALUE APPRAISAL OF EACH COLLATERAL PIECE TO BE CONDUCTED BY GAYLE M. SKLUZACEK, AAA OR ANOTEHR APPRAISER SELECTED BY BORROWER AND PAID BY BORROWER (EACH APPRAISAL VALUE FOR EACH PIECE, A "STRIKE PRICE") OR (B) AT A PUBLIC AUCTION HOUSE AT CHRISTIE'S, INC. OR SOTHEBY'S, INC. (OR ANOTHER AUCTION HOUSE APPROVED BY BORROWER, APPROVAL NOT TO BE UNREASONABLY WITHHELD) PROVIDED MINIMUM RESERVES FOR EACH COLLATERAL PIECE ARE ESTABLISHED AT THE LOWER STRIKE PRICE;

(ii)   USE COMMERCIALLY REASONABLE EFFORTS TO OBTAIN AND ENFORCE A JUDGMENT AGAINST MALCA, LEALMA AND HEARST BORROWERS FOR ANY AMOUNTS DUE AND OWING BY THE MALCA, LEALMA OR HEARST BORROWERS;

(iii)   USE COMMERCIALLY REASONABLE EFFORTS TO ENFORCE THE AMERICAN FURNITURE JUDGMENT, IF ANY AMOUNTS REMAIN DUE THEREUNDER;

(iv)   LIQUIDATED THE IPFP COLLATERAL IN A COMMERCIALLY REASONABLE MANNER (A) AT THE LOWER

STRIKE PRICE FOR EACH COLLATERAL PIECE OR (B) AT A PUBLIC AUCTION AT CHRISTIE'S, INC. OR SOTHEBY'S, INC. (OR ANOTHER AUCTION HOUSE APPROVED BY BORROWER, APPROVAL NOT TO BE UNREASONABLY WITHHELD) (i) PROVIDED MINIMUM RESERVES FOR EACH COLLATERAL PIECE ARE ESTABLISHED AT THE LOWER STRIKE PRICE, AND (ii) IF ANY COLLATERAL FAILS TO SELL AT SUCH AUCTION THEN THE LENDER MAY THEREAFTER LIQUIDATE THE UNSOLD COLLATERAL EITHER PRIVATELY OR PUBLICLY AT OR ABOVE EIGHTY (80%) PERCENT OF THE LOWER STRIKE PRICE FOR EACH COLLATERAL PIECE; AND

      (v)    **IF, AFTER ALL SUCH ENFORCEMENT CONDITIONS HAVE BEEN SATISFIED, THE NOTES REMAIN UNPAID, THEN GUARANTOR SHALL PERFORM ITS OBLIGATIONS UNDER AND IN ACCORDANCE WITH THE TERMS OF THIS LIMITED GUARANTEE AND LENDER MAY ENFORCE ITS RIGHTS AND REMEDIES UNDER THIS LIMITED GUARANTEE.**

Ex. 2500.

160.   It is well-established that a party cannot bring an action to enforce a personal guaranty until the agreed-upon conditions to enforcement have been met. See Israel v. Chabra, 537 F.3d 86 (2d Cir. 2008).

161.   In Israel, the plaintiffs sought to enforce the defendant's obligations on a personal guaranty for quarterly bonus payments that were not made by a third party. Id. at 89. The Court found that the language in the personal guaranty contained a condition precedent requiring the plaintiff to provide 60-days written notice of the failure to make a bonus payment before the guaranty was enforceable. Id. at 93. "[Defendant's] obligation to compensate for a specific missed payment only arises, however, upon Plaintiffs' satisfaction of the condition precedent created by the Notice." Id. at 95. The Court ruled that the plaintiff could not enforce defendant's obligations under the personal guaranty because plaintiff failed to meet the required notice condition. Id.

162.   In <u>Boscov's Department Stores, LLC v. AKS Intern. AA Corp.</u>, 2004 WL 205825 at *2 (S.D.N.Y. Feb. 4, 2004), plaintiff sued defendant for payment on a personal guaranty.  Under the terms of the personal guarantee, defendant agreed to be liable for failure to satisfy a future order plaintiff may place with the co-defendant corporation.  <u>Id.</u> The defendant argued that the plaintiff failed to present any evidence that the conditions to the personal guaranty had been met, and thus summary judgment should be entered. <u>Id.</u> at *3.  The Court agreed with defendant's argument that plaintiff failed to present any admissible evidence showing that it met the condition precedent to the personal guaranty.  <u>Id.</u>  Thus, the defendant was entitled to summary judgment on the basis that the required condition to the personal guaranty had not been fulfilled.  <u>Id.</u>

163.   Here, the parties do not dispute that Plaintiff has failed to satisfy <u>all</u> of the enforcement conditions of the 2-Year Note Guarantee.  The Plaintiff's right to payment under the 2-Year Note Guarantee is contingent on the satisfaction of these conditions. <u>See</u> <u>Simmonds</u>, 326 F.3d at 359.

164.   Accordingly, Plaintiff's claim on the 2-Year Note Guarantee is unripe and must be denied.

165.   Even assuming that Plaintiff can prevail on this claim, because Plaintiff admits that it has already received $714,845.82 towards the 2-Year Note, the most that Plaintiff can receive is the balance of the $1,000,000 guarantee in the amount of $285,154.18. Ex. 631; 2739.

**Plaintiff cannot establish that piercing the corporate veil is warranted**

166.    "Those seeking to pierce a corporate veil of course bear a heavy burden of showing that the corporation was dominated as to the transaction attacked and that such domination was the instrument of fraud or otherwise resulted in wrongful or inequitable consequences." TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339 (N.Y. 1998). *See also* Etex Apparel, Inc. v. Tractor Int'l Corp., 83 A.D.3d 587, 587 (NY. Sup. Ct. App. Div. 1st Dept. 2011) (noting the "'heavy burden' necessary to pierce the corporate veil or to establish an alter ego relationship").

167.    To prevail, "[a] party seeking to pierce the corporate veil must establish that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury." Millennium Const., LLC v. Loupolover, 44 A.D.3d 1016 (N.Y. App. Div. 2007). *See also* Aetna Elec. Distrib. Co. v. Homestead Elec., Ltd., 279 A.D.2d 541 (N.Y. App. Div. 2001) (Entering summary judgment on a piercing claim, and holding that "to pierce the corporate veil, the plaintiff must show that the owner exercised complete domination of the corporation with respect to the transaction attacked, and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury."

168.    Accordingly, the Court must evaluate the alleged domination of the entities with respect to the "transaction attacked," which here is the So-Ordered Settlement Stipulation. *See, e.g.*, Letizia v. Executive Coach Auto Repair, Ltd., 213 A.D.2d 382 (N.Y. App. Div. 1995) ("Indeed, we note that there is no indication that the transaction at issue was in any way related to the corporation, or the judgment debtor's position as

president of the corporation."); Millennium Const., LLC v. Loupolover, 44 A.D.3d 1016

(N.Y. App. Div. 2007); Aetna Elec. Distrib. Co. v. Homestead Elec., Ltd., 279 A.D.2d

541 (N.Y. App. Div. 2001).

169.    "Evidence of domination alone does not suffice without an additional showing

that it led to inequity, fraud or malfeasance." TNS Holdings, Inc. v. MKI Sec. Corp., 92

N.Y.2d 335, 339 (N.Y. 1998); Goldman v. Chapman, 44 A.D.3d 938, 939 (N.Y. App. Div.

2007) ("The mere claim that the corporation was completely dominated by the owners,

or conclusory assertions that the corporation acted as their "alter ego," without more,

will not suffice to support the equitable relief of piercing the corporate veil.").

170.    Moreover, in order to prevail on a piercing claim, the plaintiff must establish that

the use of the corporate form must be "for the purpose of committing some wrongful act

or avoiding its obligations." TNS Holdings, Inc. v. MKI Sec. Corp., 92 N.Y.2d 335, 339

(1998).   See also Island Seafood Co., Inc. v. Golub Corp., 303 A.D.2d 892, 895 (N.Y.

App. Div. 2003) ("Thus, Supreme Court properly determined that petitioner failed to

meet its burden of demonstrating that Tuccillo, through his domination, abused his

power over both corporations to commit a wrong or injustice to the detriment of

petitioner.").

171.    Under New York law, a creditor may not recover from a parent entity or an owner

of that entity under it has exhausted its legal remedy against the corporation "by

recovery of a judgment against it, and return of an execution wholly or partly unsatisfied,

unless they show that this was impossible or would have been useless." Eskimo Pie

Corp. v. Whitelawn Dairies, Inc., 266 F. Supp. 79, 82 (S.D.N.Y. 1967) (granting

summary judgment in favor of the individual defendants).   See also D'Ambrosi v. Bayly

Martin & Fay Int'l, Inc., 1987 WL 16591 (S.D.N.Y. Sept. 2, 1987) (following Eskimo Pie

Corp. in requiring that plaintiff must exhaust its remedy against the corporation first, and

refusing to vacate an order dismissing the plaintiff's piercing claim, where plaintiff could

not establish that it had first obtained a judgment against the corporation and an

execution on the judgment had been wholly or partially unsatisfied).

172.    Plaintiff has failed to establish that it has already obtained a judgment against

ACG Credit Company II, LLC, that it obtained an execution on that judgment, and that

the execution has been returned wholly or partially unsatisfied.

173.    A parent company may not be held liable for the wrongs of its subsidiary solely

based on the parent's ownership of the subsidiary.  Astrocom Electronics, Inc. v.

Lafayette Radio Electronics Corp., 63 A.D.2d 765 (N.Y. App. Div. 1978).

174.    Even where a party is the sole stockholder, director and officer of multiple

corporations, and even where that same person "seems to exhibit disregard of

corporate formalities," that "in and of itself, constitutes insufficient proof of complete

domination and control which permit a corporate veil to be pierced."  Island Seafood

Co., Inc. v. Golub Corp., 303 A.D.2d 892, 895 (N.Y. App. Div. 2003).  See also Waite v.

Schoenbach, 2010 WL 4456955, *4 (S.D.N.Y. Oct. 29, 2010) (dismissing alter ego claim

because plaintiff's "unsupported assertions" that owners and officers of one company

"exercised complete dominion and control" over other company, "that companies

operate at the same location and share employees, officers, owners, and bank

accounts," and that companies "shift money and assets between themselves in an effort

to defraud creditors," were "insufficient to pierce the corporate veil" (internal quotation

marks omitted)); Kalin v. Xanboo, Inc., 526 F.Supp.2d 392, 404 (S.D.N.Y.2007)

(allegations of a common address, common ownership, and common principals, without more, are insufficient to plead piercing the corporate veil).

175.    A plaintiff must allege that the defendant's conduct constituted an abuse of the privilege of doing business in the corporate form, otherwise the complaint fails to allege a material element of a cause of action under the theory of piercing the corporate veil. E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc., 66 A.D.3d 122, 127 (N.Y. App. Div. 2009) aff'd, 16 N.Y.3d 775 (2011)

176.    Plaintiff fails to allege, in either the 2-Year Note Case or the Assigned Loans case, that the conduct of Defendants "constituted an abuse of the privilege of doing business in the corporate form" which is required to prevail under the theory of piercing the corporate veil.  E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc., 66 A.D.3d 122, 127 (N.Y. App. Div. 2009) aff'd, 16 N.Y.3d 775 (2011).

177.    New York courts recognize that "with respect to small, privately-held corporation, the trappings of sophisticated corporate life are rarely present, and we must avoid an over-rigid preoccupation with questions of structure, financial and accounting sophistication or dividend policy or history." Tycoons Worldwide Group (Thailand) Public Co., Ltd. v. JBL Supply Inc., 721 F.Supp.2d 194 (S.D.N.Y. 2010).

178.    The mere fact that a person is a majority shareholder of a corporation, an officer of a corporation, uses a personal email address to conduct business of the corporation, and that the corporation is "likely undercapitalized," are insufficient facts to pierce a closely held corporation. Tycoons Worldwide Group (Thailand) Public Co., Ltd. v. JBL Supply Inc., 721 F.Supp.2d 194, 207 (S.D.N.Y. 2010).

179.    Indeed, "under New York law, undercapitalization alone is insufficient to pierce the corporate veil." McDarren v. Marvel Entm't Grp., Inc., 1995 WL 214482 (S.D.N.Y. Apr. 11, 1995) (entering summary judgment on piercing claim).

180.    Where two entities have common owners, share an office, and have overlapping business engagements, those facts are insufficient to justify piercing the corporate veil or establishing an alter ego relationship. Etex Apparel, Inc. v. Tractor Int'l Corp., 83 A.D.3d 587, 587, (NY. Sup. Ct. App. Div. 1st Dept. 2011) ("Even if the evidence is viewed in a light most favorable to plaintiff, at most, it shows that, among other things, HDT and defendant Tractor International Corp. had common owners, shared an office, and that, after Tractor ceased its operations, HDT continued in the business Tractor previously engaged in and, together with a new licensee, sold goods to "some" of Tractor's former customers. Such facts are not sufficient to satisfy the "heavy burden" necessary to pierce the corporate veil or to establish an alter ego relationship.").

181.    Where a plaintiff fails to show that the alleged domination and control of the corporation caused the loss and fails to show that the corporation is judgment-proof, a plaintiff cannot succeed on its claim to pierce the corporate veil. Fantazia Int'l Corp. v. CPL Furs New York, Inc., 67 A.D.3d 511, 512 (N.Y. App. Div. 2009).

182.    Where entities are formed at different times for legitimate business purposes, that militates against piercing the corporate veil. Fantazia Int'l Corp. v. CPL Furs New York, Inc., 67 A.D.3d 511, 512 (N.Y. App. Div. 2009).

183.    There is no basis to disregard the corporate form where different entities are owned by the same individual and do business under a common name. A/S Domino Mobler v. Braverman, 669 F. Supp. 592 (S.D.N.Y.1987).

184.    A management services agreement, like the one that exists between Defendants to this action, does not evidence "control," but rather, "reaffirms the distinct corporate identities" of the entities.  Rondout Valley Cent. Sch. Dist. v. Coneco Corp., 339 F. Supp. 2d 425, 446 (N.D.N.Y. 2004) (applying Massachusetts law and denying a piercing claim).

185.    In determining a piercing the corporate veil claim, the Court ultimately determines whether it is equitable to pierce the corporation veil as to the transaction at issue.  "The concept is equitable in nature and assumes that the corporation itself is liable for the obligation sought to be imposed.  Morris v. New York State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993) (holding that corporate veil could not be pierced so as to hold board member personally liable for compensating use taxes allegedly incurred by corporation).

186.    Here, it would not be equitable to pierce the corporate veil as to the So-Ordered Settlement Stipulation because:

    a. The So-Ordered Settlement Stipulation was specifically negotiated by the parties to make ACG Credit Company II, LLC the sole obligor on the 2-Year Note, and the Assignment to the extent it imposed any payment obligation on any of Defendants.

    b. SageCrest was aware that ACG Credit Company II, LLC had been created for the purpose of borrowing money from SageCrest pursuant to the loan documents between them.

    c. The So-Ordered Settlement Stipulation specifically limited Ian Peck's liability to the Limited Collection Guarantees, and in fact, SageCrest

actually released all claims against Defendants, except for breach of the So-Ordered Settlement Stipulation.

187.    The gravamen of all of Plaintiff's claims are that ACG Credit Company II, LLC and other Defendants breached their obligations to Plaintiff under the So-Ordered Settlement Stipulation.  However, mere breach of contract does not warrant piercing the corporate veil.

188.    Plaintiff has met its heavy burden to establish that the piercing of the corporate veil of Defendants is warranted.

## Defendants' Counterclaims/Defenses

**First Counterclaim:  SageCrest II, LLC Breached the So-Ordered Settlement Stipulation by Suing Defendants for Released Claims.**

1.    The So-Ordered Settlement Stipulation is a contract between the parties.

2.    Section 20 of the So-Ordered Settlement Stipulation provides that SageCrest released all claims, including fraudulent inducement claims, against Defendants for events that occurred prior to or including May 19, 2008 other than for breach of the So-Ordered Settlement Stipulation.  Exhibit 2500 p. 25, § 20.

3.    Pursuant to Section 21 of the So-Ordered Settlement, Plaintiff further covenanted not to sue Defendants.  Exhibit 2500 § 21.

4.    Plaintiff breached Sections 20 and 21 of the So-Ordered Settlement Agreement in that:

   a.  SageCrest's original state court complaint filed on January 20, 2009 asserted a fraud claim against all Defendants other than Art Capital Group, Inc., which claim was based on purported "fraudulent misrepresentations" SageCrest alleges were made by Defendants Fine Art Finance, LLC and ACG Finance LLC before May 19, 2008.

   b.  Specifically, the Tenth Cause of Action of SageCrest's January 20, 2009 Complaint asserted a claim for fraud against "all Defendants except Art Capital, Inc." based on "representations and warranties" which "SageCrest relied on in signing the So-Ordered Settlement Stipulation and releasing the Order of Attachment."  Exhibit 2769, January 20, 2009 Complaint at ¶ 252.

c. The Tenth Cause of Action further admitted that "[t]hose representations and warranties are essentially the same as those that were made to induce SageCrest into accepting less than $21 million in cash at closing, namely, that the principal balance of the Assigned Loans was in excess of $6.7 million and that the Assigned Collateral consisted of 35 pieces of artwork with an appraised value of approximately $14 million." Exhibit 2769, January 20, 2009 Complaint at ¶ 250.

d. SageCrest's Amended Complaint filed on or about May 19, 2009 asserts a claim against Defendants Fine Art Finance, LLC and Art Capital, Inc. for fraudulent inducement based on purported "fraudulent misrepresentations" that SageCrest alleges were made by Fine Art Finance, LLC and Art Capital Group, Inc. before May 19, 2008.  Exhibit  2501.

e. Specifically, the Eleventh Cause of Action in SageCrest's Amended Complaint – which is the operative complaint in the Assigned Loans Case – alleges a claim for fraudulent inducement against Defendants Fine Art Finance, LLC and Art Capital Group, Inc.  In this claim, SageCrest alleges that "Defendants made numerous due diligence materials available to SageCrest including, but not limited to, the underlying loan documents, lists of the collateral for those loans, valuations of the collateral, and UCC financing statements . . . [h]owever, a number of the disclosures made to SageCrest to induce SageCrest to accept less than a $21 million cash payment on the Closing Date regarding the Assigned Loans and the Assigned Collateral were false." Exhibit  2501 at ¶¶ 292-293.

66

5.      Plaintiff released Fine Art Finance, LLC and Art Capital Group, Inc. of all claims

of Fraudulent Inducement in the So-Ordered Settlement Stipulation, and therefore,

Plaintiff is barred from asserting Fraudulent Inducement claims against any of

Defendants.  Ex. 2500.  *See* Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de

C.V., 901 N.Y.S.2d 618, 627 (N.Y. Supreme Ct. App. Div. 2010) *aff'd*, 17 N.Y.3d 269

(2011) ("Centro I") (dismissing plaintiffs' claim for fraudulent inducement to sell their

minority interest in a company (TWE) based on misrepresentations made to them by the

defendants concerning the value of the underlying venture where sale contract

contained "a broad release of any and all claims, 'whether past, present or future, actual

or contingent,' arising from 'the ownership of membership interests in [TWE] or having

taken or failed to take any action in any capacity on behalf of [TWE] or in connection

with the business of [TWE]'" and the release was not conditioned on the truth of the

financial information provided by the defendants) ; *see also* Centro Empresarial

Cempresa S.A. v. Am. Movil, S.A.B. de C.V., 17 N.Y.3d 269, 278 (2011) ("Centro II")

(affirming Centro I, recognizing that "a party that releases a fraud claim may later

challenge that release as fraudulently induced only if it can identify a separate fraud

from the subject of the release," and holding that the plaintiffs' claim regarding

misrepresentations in the value of the entity sold was directly related to the release); Bd.

of Managers of NV 101 N 5th St. Condo. v. Morton, 39 Misc. 3d 1212(A), at *11-*13,

975 N.Y.S.2d 365 (Sup. Ct. 2013) (applying Centro II, dismissing claim of fraudulent

inducement  - based on alleged material misrepresentations made in a settlement  -

where the settlement agreement contained a general release).

6.     Defendants are entitled to recover their legal fees for defending these two

complaints due to Plaintiff's breaches of Sections 20 and 21 of the So-Ordered

Settlement Stipulation.  Exhibit 2654, 2655; Peck Testimony.


**Second Counterclaim:  SageCrest II, LLC Breached the So-Ordered Settlement Stipulation by Assigning 77% of its Interest in the So-Ordered Settlement Stipulation to Off-Shore Entities**

7.     Pursuant to New York law, a plaintiff bringing a breach of contract action must

prove the following: (1) the existence of a contract between the plaintiff and the

defendant; (2) performance by the plaintiff; (3) the defendant's failure to perform; and

(4) damages resulting from the defendant's failure to perform. VisionChina Media, Inc.

v. Shareholder Representative Servs., LLC, 967 N.Y.S.2d 338, 345, 109 A.D.3d 49, 58

(App. Div. 1st Dep't 2013) (citing Noise In Attic Prods., Inc. v. London Records, 782

N.Y.S.2d 1, 3, 10 A.D.3d 303, 306 (App. Div. 1st Dep't 2004)); Furia v. Furia, 498

N.Y.S.2d 12, 13, 116 A.D.2d 694, 695 (App. Div. 2d Dep't 1986).

8.     Section 33 of the So-Ordered Settlement Stipulation states in pertinent part:

> 33.    Assignability.
>
> (a)    This Settlement Stipulation and the Additional Agreements and the rights created thereunder are not to be assigned, transferred or pledged absent the written consent of the [sic] ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which consent may be withheld for any reason whatsoever and ACG-II, ACG Finance, Fine Art Finance and Ian Peck shall not be required to disclose or justify their reason) . . . .

9.     SageCrest "assigned, transferred or pledged" certain of its rights under the So-

Ordered Settlement Stipulation and the Additional Agreements by virtue of an Amended

and Restated Master Investment Agreement between SageCrest and SCFR Limited

dated September 21, 2006 and an Amended and Restated Master Investment

Agreement between SageCrest and SageCrest Ltd.  Ex. 2503, 2731, 2732, 2759, 2762, 2765.

10.     SageCrest breached Section 33 of the So-Ordered Settlement Stipulation.

11.     Defendants had met their performance obligations under the So-Ordered Settlement Stipulation at the time that SageCrest breached Section 33 of the So-Ordered Settlement Stipulation.


**Fourth Counterclaim:  SageCrest is liable for Civil Contempt**

12.     In order to establish a claim for civil contempt in New York, a plaintiff must successfully show: (1) that a lawful order of court, clearly expressing an unequivocal mandate, was in effect; (2) that—to a degree of reasonable certainty—the party to be held in contempt disobeyed the order and had knowledge of the order, although it is not necessary that the order actually have been served upon the party; and (3) that the rights of the moving party were prejudiced as a result of such disobedience.  McCormick v. Axelrod, 59 N.Y.2d 574, 453 N.E.2d 508, amended 60 N.Y.2d 652, 454 N.E.2d 1314 (1983); Bernard-Cadet v. Gobin, 943 N.Y.S.2d 164, 166, 94 A.D.3d 1030, 1031 (App. Div. 2d Dep't 2012);

13.     SageCrest breached the following provisions of the So-Ordered Settlement Stipulation:  (i) prohibiting it from filing or pursuing any claim against Defendants based on events that took place on or prior to May 19, 2008 (the closing date); and (ii) providing that "the Settlement Stipulation and the Additional Agreements and the rights created thereunder are not to be assigned, transferred or pledged absent the written consent of the [sic] ACG-II, ACG Finance, Fine Art Finance and Ian Peck (which

consent may be withheld for any reason whatsoever and ACG-II, ACG Finance, Fine Art Finance and Ian Peck shall not be required to disclose or justify their reason) . . . ." *See, supra,* analysis regarding First and Second Counterclaims.

14.     Defendants have been prejudiced by virtue of SageCrest's breaches.

**Fifth Counterclaim:  Declaratory Judgment**

15.     Through the execution of the So-Ordered Settlement Stipulation and the Collateral Assignment, SageCrest created a security interest in the Assigned Loans and the Assigned Collateral under Article 9 of the Uniform Commercial Code.  Ex. 2500.

16.     SageCrest sought to perfect its security interest in the Assigned Loans by obtaining the original notes, and in the Assigned Collateral by filing U.C.C. financing statements.  Testimony of Plaintiff; Deposition of Alan Milton.

17.     After ACG Credit Company II, LLC's purported default in November 2008 in paying the $6.7 million, SageCrest "foreclosed" on the Assigned Loans by electing to manage, administer and service them under the terms of the Settlement Stipulation.

18.     SageCrest became subject to the "good faith" requirements of Article 9 of the New York U.C.C., which provides at 9-207(c)(2) that "a secured party having possession of collateral or control [over it] ... shall apply money or funds received from the collateral to reduce the secured obligation...."  Thus, SageCrest must first attempt to reduce the amount of the $6.7 million by disposing of, or collecting upon, the Assigned Loans and the Assigned Collateral *before* seeking to recover any deficiency against ACG Credit Company II, LLC.

19.     Moreover, "[e]very aspect of a disposition of collateral, including the method,

manner, time, and place, and other terms must be commercially reasonable."
N.Y.U.C.C. 9610(b).  SageCrest has the burden of establishing its compliance with
Article 9. *See N.Y. U.C.C.C. 9-626(a)(2)* ("If the secured party's compliance is placed in
issue, the secured party has the burden of establishing that the collection, enforcement,
disposition, or acceptance was conducted in accordance with this part.").

20.     Moreover, it is black letter law that under Article 9 of the U.C.C., a secured
creditor has the burden of demonstrating that it acted in a commercial reasonable
manner in its disposition of collateral.  That is a burden SageCrest cannot meet here.
Thus, in Coxall v. Clover Commercial Corp., 4 Misc. 3d 654, 655 (Civ. Ct. 2004),
plaintiffs' purchased a vehicle by financing a portion of the price from a seller.  The
seller simultaneously assigned the contract to the defendant.  Id. When payments
weren't made, the defendant took possession of the vehicle and mailed letters to the
plaintiffs that they could redeem the vehicle with a payment of nearly $6,000, and also
mailed a letter giving notice that the vehicle would be offered for private sale in less
than a month.  Id.  The vehicle was sold back to the original seller for $1,500 and
demanded that the plaintiff pay the remaining balance of nearly $5,000.  In challenging
the commercial reasonableness of the sale, the court noted that the defendant
provided no evidence that any prospective buyers were contacted, other than the
original seller.  Id. at 663.  Furthermore, the defendant provided no evidence of the fair
market value of the vehicle on the date of the sale, or any evidence to justify the
$1,500 price.  Id.  Based on this lack of evidence, the defendant failed to meet its
burden in showing that the sale of the plaintiff's vehicle was commercially reasonable.

21.    In Marine Midland Bank-Central v. Watkins, 89 Miss.2d 949 (Civ. Ct. 1977), defendant purchased a vehicle in a contract where he agreed to pay the seller a total sum of nearly $5,000 in monthly installments.  The contract was assigned to the plaintiff, who repossessed the automobile after defendant defaulted on payments.  Id. at 950.  The defendant was notified of the date of the public auction for the property but not the location of the sale.  Id.  The sale proceeds were just over half of the unpaid balance on the vehicle.  Id.  The court's commercial reasonableness analysis took into account that the price obtained at the sale was only 55% of the amount originally financed:  "Under these circumstances, the Court requires some affirmative showing that the method, manner, time, place and terms of the sale were in fact commercially reasonable."  Id. at 952.  The court determined that the plaintiff failed to show this affirmative showing and denied recovery in their suit for a deficiency judgment.  Id.

22.    After SageCrest took over the right to service, administer and collect upon the Assigned Loans in November 2008, it: (i) failed to use commercially reasonably methods in servicing and/or enforcing its rights under those loans, and (ii) did not sell or otherwise dispose of the collateral it has in its possession in compliance with the U.C.C., and (iii) as a result, there are no amounts due and owing to SageCrest from Defendants.

23.    SageCrest admits that as of August 3, 2010, it had "not commenced an action against Barquet."  Plaintiff's Reply to Counterclaims, ¶ 44.

24.    SageCrest admits that as of August 3, 2010, "Barquet has not paid all amounts due and owing to SageCrest . . . ."  Plaintiff's Reply to Counterclaims, ¶ 41.

72

25.     SageCrest admits that "each of the underlying borrowers on the Assigned Loans executed an arranger's agreement."  Plaintiff's Reply to Counterclaims, ¶ 54.

26.     SageCrest "admits it has certain reporting requirements under Section 14(b) and (c) of the So-Ordered Settlement Stipulation . . . ."  Plaintiff's Reply to Counterclaims, Response to Seventh Counterclaim, ¶ 105.

27.     SageCrest did not dispose of the Assigned Collateral and collect on the Assigned Loans in a commercially reasonable manner.  Ex. 2504, 2599-2608, 2735.  Deposition of Alan Milton; Deposition of Alastair Crawford; Testimony of Ian Peck; Testimony of Plaintiff.


**Sixth Counterclaim:  Breach of the New York U.C.C.**

28.     Section 9-611 of the New York Uniform Commercial Coded required Defendants to be notified prior to the sale of any of the collateral securing the Assigned Loans.

29.     SageCrest failed to notify Defendants prior to the sale of collateral securing the Assigned Loans.  Testimony of Ian Peck.

30.     Accordingly, SageCrest has breached Section 9-611 of the New York Uniform Commercial Code.


**Seventh Counterclaim:  Accounting**

31.     Section 14(b) of the So-Ordered Settlement Stipulation provides:

> SageCrest shall provide a monthly written report to [ACG Credit Company II, LLC, Fine Art Finance, LLC, and ACG Finance, LLC] setting forth (i) the balance of the Balance and the ACG-II Notes and (ii) the amount(s), if any ,that were deposited in the Blocked Account during the previous month and a reconciliation and source of such amounts.

32.     Section 14(c) of the So-Ordered Settlement Stipulation provides in pertinent part:

> SageCrest shall provide [ACG Credit Company II, LLC, Fine Art Finance, LLC and ACG Finance, LLC] a similar monthly report and the same disclosures for any loans it is collecting and enforcing pursuant to Section 15 of this Settlement Stipulation or the Collateral Assignment.

33.     SageCrest breached Sections 14(b) and 14(c) of the So-Ordered Settlement Stipulation by failing to provide accountings.  Testimony of Ian Peck; Testimony of Plaintiff.


**Eighth Counterclaim:  Declaratory Relief**

34.     Fine Art Finance, LLC and ACG Finance, LLC have secured rights to their Arranger's Fees on a "first out" basis for the sale of Assigned Loan Collateral or Two-Year Note Collateral.  Ex. 2500, 2523, 2527, 2538, 2539, 2540, 2545, 2547, 2553, 2557, 2558, 2569, 2570, 2576; Testimony of Ian Peck.


**Ninth Counterclaim for Relief:  Tortious Interference**

35.     A plaintiff bringing a claim for tortious interference with a contractual relationship must prove: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third party's breach of that contract without reasonable justification; (4) actual breach of the contract; and (5) damages resulting therefrom. White Plains Coat & Apron Co., Inc. v. Cintas Corp., 8 N.Y.3d 422, 426, 867 N.E.3d 381, 383 (2007) (citing Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 668 N.E.2d 1370, 1375 (1996)); AREP Fifty-Seventh, LLC v. PMGP Assoc., L.P., 981 N.Y.S.2d 406, 407, 115 A.D.3d 402, 402 (App. Div. 1st Dep't 2014).

36.   Defendants have valid agreements with the underlying borrowers on the Assigned Loans.

37.   SageCrest's knowledge of those agreements is undisputable given the So-Ordered Settlement Stipulation.

38.   SageCrest intentionally has caused borrowers to pay directly to SageCrest amounts which are due to Defendants pursuant to the Arranger's Agreements.

39.   SageCrest has disputed the rights of Fine Art Finance, LLC and ACG Finance, LLC to receive payments of Arranger's Fees pursuant to Arranger's Agreements with borrowers.

40.   SageCrest has collected and refused to turnover to Fine Art Finance, LLC or ACG Finance, LLC Arranger's Fees owed to them.

41.   Defendants have been damaged by virtue of SageCrest's conduct.

THE DEFENDANTS,

By:  /s/ Ari J. Hoffman
Ari J. Hoffman, Esq.
Federal Bar No. ct22516
Vincent M. Marino
Federal Bar No. ct17186
Philip C. Pires
Federal Bar No. Ct28138
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT  06604
Tele:203.368.0211
Fax:  (203) 394-9901
E-mail: ahoffman@cohenandwolf.com
E-mail: vmarino@cohenandwolf.com
Email:  ppires@cohenandwolf.com

**<u>CERTIFICATION</u>**

I hereby certify that on the date of the filing, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Ari J. Hoffman
Ari J. Hoffman