UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAGECREST II, LLC<br><br>　　　　　Plaintiff,<br><br>　- against -<br><br>ACG CREDIT COMPANY II, LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE, LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP, INC., ACG CREDIT COMPANY, LLC, and IAN S. PECK,<br><br>　　　　　Defendants. | 3:13-cv-973-SRU |
| SAGECREST II, LLC<br><br>　　　　　Plaintiff,<br><br>　- against -<br><br>IAN S. PECK, ACG CREDIT COMPANY II LLC, ACG FINANCE COMPANY, LLC, FINE ART FINANCE LLC, ART CAPITAL GROUP, LLC, ART CAPITAL GROUP INC., and ACG CREDIT COMPANY, LLC,<br><br>　　　　　Defendants. | 3:13-cv-974-SRU<br><br>June 16, 2014 |

**PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS'
<u>SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

Oral Argument Requested

**Preliminary Statement**

Defendants' Supplemental Brief in Support of their Motion to Dismiss [Dkt. No. 58] rests upon Defendants' continued distortion of the clear terms of the So-Ordered Settlement Stipulation[1] and the Collateral Assignment executed in connection with that Stipulation.  In essence, Defendants argue that Plaintiff's sole recourse to recover the remaining portion of the $6.7 million Balance and Additional Interest, as well as the Assigned Loans costs that have not yet been recovered, is to seek payment from the borrowers or collateral on the loans underlying the Assignment.  This position is contrary to the clear terms of the So-Ordered Settlement Stipulation, which makes clear that, on or before November 18, 2008, ACG-II was "required to wire transfer the Balance and any Additional Interest" to Plaintiff.  The Collateral Assignment was only provided as a means of *securing* Defendants payment of the Balance and Additional Interest and did not, in any way, alleviate Defendants from their clear and direct obligation to pay Plaintiff the Balance and Additional Interest.  In fact, the Assignment explicitly states that Plaintiff is not required to take any steps to recover directly from the assets underlying the Assignment.

Defendants also explicitly ignore the facts regarding the drafting of the So-Ordered Settlement Stipulation, where Defendants specifically attempted and failed to obtain what they are trying to get now – sole recourse to the Assigned Loans for

---

[1] Unless otherwise noted herein, all defined terms shall have the same meaning ascribed to them in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated April 15, 2014 [Dkt. No. 39].

the $6.7 million payment. They were unsuccessful then (as the drafts show) and are now trying to rewrite both history and the unambiguous contract terms. As Justice Jaffe of the New York Supreme Court has already found after considering a full evidentiary record, the parties explicitly agreed that the Assigned Loans are security, not the sole recourse for the $6.7 million payment.

Although Plaintiff was not required to take any action with respect to the loans underlying the Assignment, Plaintiff has successfully recovered millions of dollars on those underlying loans—all of which inured to the benefit of Defendants. Defendants also conveniently fail to disclose to the Court that all of the Assigned Loan collateral has been liquidated – Plaintiff's successful mitigation has largely monetized assets that weren't part of the Assigned Loan collateral. In any event, Defendants' attempt to turn contract law on its head by arguing that successful mitigation efforts somehow preclude Plaintiff from recovering the remaining Balance and Additional Interest directly from Defendants, or that Plaintiff must first exhaust his mitigation efforts before his claim against Defendants is ripe, is frivolous and should be rejected.

## Argument

In order to mitigate the damages caused by Defendants' failure to make the November 2008 $6.7 million payment required under the So-Ordered Settlement Stipulation, Plaintiff sought to recover the Balance and Additional Interest from the underlying borrowers. In connection with Plaintiff's multiple recovery efforts, Plaintiff obtained a Class 4B claim in the bankruptcy proceedings for an underlying

borrower, Barquet Group, Inc., and that borrower's guarantor, Ramis Barquet.  In their Supplemental Brief in Support of the Motion to Dismiss, Defendants now argue that Plaintiff's claims against Defendants are not ripe, because the Barquet Liquidating Trust *may* someday pay the Class 4B creditors.  This argument relies solely on the testimony of Carter Pennington, the Trustee of the Barquet Liquidating Trust, who was asked to speculate as to the likelihood that the Class 4B creditors would someday be paid in full. (*See* the June 13, 2014, Declaration of Philip C. Pires, Exhibit A.)  Ultimately, Mr. Pennington testified that, although it is guesswork, the Class 4B creditors possibly could be  paid in full within a range of five to twelve years. (*Id.* at pp. 127-28.)[2]  Mr. Pennington further testified that his supposition regarding such a long-term payoff only included the principal amount owed, and did not include interest. (*Id.*)

In any event, Mr. Pennington's testimony is irrelevant, because Plaintiff is entitled, under the clear terms of the So-Ordered Settlement Stipulation and the Assignment, to recover the Balance and Additional Interest directly from Defendants.  As the So-Ordered Settlement Stipulation makes clear, ACG-II was required to pay the $6.7 million Balance and Additional Interest by November 18, 2008. (*See* the March 25, 2014, Declaration of Philip C. Pires (the "March Pires Decl."), Exhibit 1 at § 4(d).)   The Assignment was provided to Plaintiff only as a

---

[2]  Defendants have failed to inform the Court that the Barquet Liquidating Trust will dissolve by its terms in 2017.  In light of this fact, Mr. Pennington's speculation that Class 4B creditors could be paid within the next five to twelve years is a red herring.

-3-

means of "*securing the payment* of the $6,700,000" Balance and Additional Interest, and did not relive Defendants from those payment obligations. (*Id.* at § 4) (emphasis added).  The Collateral Assignment echoes this fact, by making clear that the Assignment is made "in connection with the *payment* of the $6.7 million Balance due[.]" (March Pires Decl., Exhibit 5) (emphasis added).  Moreover, the Collateral Assignment specifically states that Plaintiff has no obligation to seek to collect on the Assigned Loans:

> It is expressly understood and agreed, however, that [Plaintiff] shall not be required or obligated in any manner to make any demand or make any inquiry as to the nature or sufficiency of any payment received by it, or to present or file any claim or take any other action to collect or enforce the payment of any amounts which may have been assigned to [Plaintiff] or to which [Plaintiff] may be entitled hereunder at any time or times.

(*Id.*)  Together, these provisions and the clear payment obligation make clear that Plaintiff may seek to recover the $6.7 million Balance, as well as the Additional Interest and any collection costs, directly from Defendants without making any efforts to collect from the underlying borrowers.

In any event, Defendants' baseless argument that Plaintiff must first seek to recover from the underlying borrowers before Plaintiff can obtain a judgment against Defendants only goes to the damages Plaintiff may recover—not the ripeness of Plaintiff's claims.  Plaintiff's claims against Defendants became ripe as of the moment Defendants breached the So-Ordered Settlement Stipulation. *See Sea Tow Servs. Int'l Inc. v. Pontin*, 472 F. Supp. 2d 349, 356 (E.D.N.Y. 2007).

Even without the clear provisions in the So-Ordered Settlement Stipulation and Collateral Assignment that relieve Plaintiff from taking any effort to enforce against the Assigned Loans and mitigate the damages caused by Defendants' failure to pay the Balance and Additional Interest, Plaintiff is under no legal obligation to mitigate those damages by fully collecting on the Assigned Loans before seeking to recover from Defendants. *See APL Co. PTE Ltd. v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010) ("[I]t is not required that the injured party *actually* mitigate its damages." (emphasis supplied)); *cf. Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1581 (2d Cir. 1994) (finding that non-breaching party properly mitigated its damages as limited by the parties' agreement).

Plaintiff's substantial efforts to collect from the borrowers and collateral underlying the Assigned Loans have all been undertaken in order to mitigate the damages caused by Defendants' failure to pay the Balance and Additional Interest.[3] While, as discussed above, Plaintiff was contractually relieved of his obligation to mitigate his damages by seeking to enforce against the Assigned Loans, he did so anyway and has achieved great success, which has reduced Defendants' balance. Because Plaintiff met and, in fact, exceeded his obligation to mitigate the damages

---

[3] These substantial efforts have included obtaining repayment in full from Enrico Navarra, liquidating the collateral for the loan to Evan Tawil and pursuing a deficiency judgment against Tawil for approximately $24,000 plus attorneys' fees, costs, and interest, recovering over $4.5 million from Barquet Group and Ramis Barquet, and obtaining a judgment against Alastair Crawford.

caused by Defendants' failure to pay the Balance and Additional Interest, Defendants cannot now argue that Plaintiff's claims in the Assigned Loans Action are not ripe because of speculation that his mitigation efforts may someday result in the repayment of the Balance.

Defendants' attempt to argue that Plaintiff must first seek to recover the Balance and Additional Interest from the underlying borrowers is contrary to the clear terms of the So-Ordered Settlement Stipulation and a decision and order in a separate but related proceeding in New York State court entitled *Hahn & Hessen LLP v. Peck, et al.*  There, the court held that, under the So-Ordered Settlement Stipulation, the collateral for the Assigned Loans was not the sole recourse for Plaintiff in the event Defendants defaulted on their obligations or breached the settlement agreement with Plaintiff.  (*See* the April 15, 2014, Declaration of Robert S. Friedman, Exhibit 14.)  Accordingly, Defendants' manufactured sole recourse theory runs counter not only to the clear terms of the So-Ordered Settlement Stipulation, but also to the final adjudication of this very issue in the *Hahn & Hessen* action.

Similarly, Defendants' argument that, in the unlikely event the Balance and the Additional Interest are repaid by the Class 4B claim, any excess amounts recovered on the Assigned Loans would then apply to reduce the amounts Plaintiff is owed on the 2-Year Note is contrary to the So-Ordered Settlement Stipulation. The terms of the So-Ordered Settlement Stipulation make clear that the Assigned Loan and the 2-Year Note obligations are not cross-collateralized and any excess

proceeds from the Assigned Loans may not be applied to the outstanding balance on the 2-Year Note.

Finally, Defendants' argument ignores the fact that all of the collateral underlying the Assigned Loans has been liquidated, including the collateral underlying the loan to Barquet Group Inc. The Class 4B claim that Plaintiff obtained in the Barquet Bankruptcy, for his own and Defendants' benefit, does not require that Plaintiff wait for that claim to be paid. Plaintiff's claims against Defendants became ripe as of the moment Defendants breached the So-Ordered Settlement Stipulation. *See Sea Tow Servs.*, 472 F. Supp. 2d at 356.

**Conclusion**

For all of the foregoing reasons, and for the reasons set forth in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Plaintiff respectfully requests that this Court enter an Order:  (1) denying the Motion to Dismiss in its entirety; (2) awarding Plaintiff his attorneys' fees and costs in responding to the Motion to Dismiss; and (3) granting Plaintiff such further and different relief as the Court deems just and proper.

Dated:  June 16, 2014

PLAINTIFF JOHN D. HUBER, as Trustee of the SageCrest Liquidating Trust

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: /s/Mark E. McGrath
    Robert S. Friedman (admitted *pro hac vice*)
    Mark E. McGrath (ct28814)
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700

- and -

ZEISLER & ZEISLER, P.C.
James Berman (ct06027)
10 Middle Street, 15th Floor
Bridgeport, CT 06604
Telephone: (203) 368-4234

## **CERTIFICATION OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS was electronically filed via ECF, which effects service upon all parties who have entered an appearance in this case.

Dated this 16th day of June, 2014.

                                              /s/Mark E. McGrath