UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAGECREST II, LLC<br><br>        Plaintiff,<br><br>    - against -<br><br>ACG CREDIT COMPANY II, LLC,<br>ACG FINANCE COMPANY, LLC,<br>FINE ART FINANCE, LLC, ART CAPITAL<br>GROUP, LLC, ART CAPITAL GROUP,<br>INC., ACG CREDIT<br>COMPANY, LLC, and IAN S. PECK,<br><br>        Defendants. | 3:13-cv-973-SRU |
| SAGECREST II, LLC<br><br>        Plaintiff,<br><br>    - against -<br><br>IAN S. PECK, ACG CREDIT COMPANY II<br>LLC, ACG FINANCE COMPANY, LLC,<br>FINE ART FINANCE LLC, ART CAPITAL<br>GROUP, LLC, ART CAPITAL GROUP INC.,<br>and ACG CREDIT COMPANY, LLC,<br><br>        Defendants. | 3:13-cv-974-SRU<br><br><br><br><br><br>June 17, 2014 |

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS *IN LIMINE* (1) TO LIMIT EVIDENCE CONCERNING
PIERCING THE CORPORATE VEIL TO THE TIME OF THE MAY 19, 2008
SO-ORDERED SETTLEMENT STIPULATION, AND (2) TO PRECLUDE EVIDENCE
RELATED TO AN OPINION AND ORDER IN THE HILTON HEAD ACTION**

Oral Argument Requested

Plaintiff John D. Huber, as Trustee of the SageCrest Liquidating Trust ("Plaintiff"),[1] respectfully submits this omnibus memorandum of law in opposition to Defendants'[2] pre-trial motions *in limine*:  (1) to limit the evidence that Plaintiff may offer concerning piercing the corporate veil to the time around May 19, 2008, when the parties entered into the So-Ordered Settlement Stipulation; and (2) to preclude Plaintiff from offering evidence related to an Opinion and Order in *Hilton Head Holdings b.v. v. Peck*, No. 1:11-cv-0768-KBF, Dkt. No. 104 (S.D.N.Y. Nov. 20, 2012), *vacated* 2012 WL 5871610 (S.D.N.Y. Oct. 29, 2013) (the "*Hilton Head Opinion*").  As discussed in turn below, both of Defendants' motions *in limine* should be denied.

<u>Argument</u>

1.      **Plaintiff Should Be Permitted to Offer Veil Piercing and Alter Ego Evidence from Anytime During the Parties' Business Dealings, or Defendants' Breaches of the So-Ordered Settlement Agreement and Other Tortious Conduct**

Defendants' attempt to limit the evidence that Plaintiff may offer concerning his claims for piercing the corporate veil of the Peck-controlled Entities to the extremely limited window of May 2008 is not supported by the facts or the law.  SageCrest entered into the May 19, 2008, So-Ordered Settlement Stipulation as a mechanism for globally resolving its disputes with Defendants regarding an August 20, 2003, Revolving Credit Agreement between ACG-I and SageCrest.  Between August 20, 2003, and May 19, 2008, SageCrest and Defendants operated as the respective lender and borrower under the Revolving Credit Agreement.  Since May 19, 2008,

---

[1]     Plaintiff is the successor-in-interest to SageCrest II, LLC ("SageCrest") because all of the assets of SageCrest (and others) were assigned to Plaintiff in accordance with the terms of a Plan of Reorganization.  The term "Plaintiff" includes Mr. Huber, the SageCrest Liquidating Trust, and SageCrest.

[2]     "Defendants" means ACG Credit Company II LLC ("ACG-II"), ACG Finance Company LLC ("ACG Finance"), Fine Art Finance, LLC ("Fine Art Finance"), Art Capital Group, LLC ("Art Capital LLC"), Art Capital Group, Inc. ("Art Capital Inc."), and ACG Credit Company, LLC ("ACG-I" and, together with ACG-II, Fine Art Finance, Art Capital LLC, and Art Capital Inc., the "Peck-controlled Entities"), and Ian S. Peck ("Peck").

Plaintiff and Defendants have respectively operated as the creditor and debtor under the So-Ordered Settlement Stipulation. The factual basis for Plaintiff's claims for breach of the So-Order Settlement Stipulation, fraudulent inducement of the So-Ordered Settlement Stipulation and conversion, span the entirety of Plaintiff's business relationship with Defendants, which includes the commencement of parties' business relationship in 2003, the negotiation and execution of the So-Ordered Settlement Stipulation in 2008, and Defendants' breaches of that stipulation and their continued tortious conduct, which began in 2008 and continues through today. In fact, Defendants' breaches of the So-Ordered Settlement occurred throughout 2008, and continue today, including the failure to pay the 2-Year Note in 2010. This Court should consider relevant evidence related to Plaintiff's alter ego and veil piercing claims from anytime during the course of the parties dealings, including, but not limited to the time period of Defendants' breaches of the So-Ordered Settlement Stipulation and other tortious conduct directed at Plaintiff.

Moreover, certain of the substantial evidence of alter ego is not limited or referenced by a time period. For example, Defendants have produced no by-laws or corporate or board meeting minutes. Indeed, Defendants have admitted that many, if not all, of these corporate formalities were simply never undertaken, let alone recorded. These facts relate not just to the time period at issue, but to Defendants' entire corporate existence.

Plaintiff also intends to introduce evidence that Peck used corporate funds to pay his own personal expenses between 2006 and 2010. While this time period necessarily encompasses the May 19, 2008, timeframe, the entirety of this conduct is relevant to the veil piercing analysis. Similarly, evidence that Peck is the sole member of Art Capital LLC, and Art Capital LLC is the sole member of ACG-I, ACG-II and Fine Art Finance, that Peck is the sole shareholder of Art

Capital Inc., and that Peck serves as president of each of the Peck-controlled Entities and is wholly unable to distinguish the role and/or function of any of these entities should also be considered.  The Peck-controlled Entities have and continue to share the same office, telephone number, employees, bank account and website.  While all of this evidence spans the May 19, 2008 timeframe, the fact that such alter ego conduct existed well before the So-Ordered Settlement Stipulation was signed, and continued long after, is compelling evidence that piercing the corporate veil is an appropriate remedy in this case.

       None of the cases cited by Defendants in support of their motion would preclude consideration of Defendants' conduct outside of the May 19, 2008, timeframe.  In fact, none of their cases discuss, let alone mention, whether a court may look to evidence of dominance prior to or subsequent to the acts leading to a plaintiff's cause of action.  Moreover, many of the cases cited by Defendants consider a course of conduct by the individuals and entities at issue that necessarily spans more than just the transaction at issue in that respective case.  *See Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134-35 (2d Cir. 1997) (considering multiple veil piercing factors such as company's lack of employees, lack of independent office space, undercapitalization and co-owner's "involvement in, and control over, the company"); *McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 137 (E.D.N.Y. 2009) (considering overall corporate structure in connection with veil piercing analysis); *Team Air Express, Inc. v. A. Heffco Technologies, Inc.*, 2008 WL 3165892, at *13 (E.D.N.Y. Aug. 6, 2008) (considering both the overall exercise of dominion over corporate entity by the individuals at issue, and the exercise of dominion specific to the transaction at issue).  In fact, as the court in *Team Air Express* acknowledged, "the question of whether the corporate veil should be pierced requires a fact specific inquiry; there are no bright-line rules."  *Team Air Express*, 2008 WL 3165892, at *12

(citation and quotation omitted); *see also Wm. Passalacqua Builders*, 933 F.2d at 139 (observing that application of veil-piercing factors "to the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that differs with the circumstances of each case").

Defendants' request that this Court establish a bright-line rule and only consider evidence relevant to veil piercing that occurred on or around May 18, 2008, is unsupported by the law, and is in fact contradicted by the very law upon which Defendants seek to rely.  In any event, even adopting Defendants' proposal that such evidence be limited to the transaction at issue, the transaction at issue with respect to the So-Ordered Settlement Stipulation is not only that agreement—it also includes the underlying Revolving Credit Agreement and the parties' lengthy relationship under that agreement, as well as Defendants' breaches of the So-Ordered Settlement Stipulation, which have continued throughout the more than five years since it was signed.  As those agreements, and the parties' relationships with respect to those agreements, necessarily span August 20, 2003, through May 19, 2008, and beyond, it is entirely appropriate for this Court to consider veil piercing and alter ego evidence from those time periods.

**2.     The Court Should Take Judicial Notice of the *Hilton Head* Opinion and Plaintiff Should be Permitted to Offer it as Evidence**

Plaintiff respectfully refers the Court to his June 11, 2014, Motion *In Limine* to Take Judicial Notice of and Introduce the *Hilton Head* Opinion into Evidence (the "Hilton Head Motion"), and incorporates those filings by reference.  (*See* Dkt. No. 53.)  For the reasons stated in the Hilton Head Motion, Defendants' motion to preclude Plaintiff from offering the *Hilton Head* Opinion should be rejected.

Defendants' motion to preclude Plaintiff from offering the *Hilton Head* Opinion should also be rejected because Defendants misconstrue the *Hilton Head* Opinion as inadmissible

hearsay without citing any authority for their argument.  Federal Rule of Evidence 803(8) contains no language to support Defendants' argument regarding the admissibility of a now vacated court opinion, and Defendants notably do not cite to any language in the rule that would support their position.  Defendants' hearsay argument simply misses the mark because Plaintiff is asking this Court to take judicial notice of the *Hilton Head* Opinion, which is well within the Court's authority.  *See* FED. R. CIV. P. 201; *see also Cnty. Vanlines Inc. v. Experian Info. Solutions, Inc.*, 205 F.R.D. 148 (S.D.N.Y. 2002); *A.I. Trade Fin., Inc. v. Centro Internationale Handelsbank AG*, 926 F. Supp. 378, 388 (S.D.N.Y. 1996).

Defendants' challenge to the relevance of the *Hilton Head* Opinion is belied by the very facts underlying the alter ego claim in the *Hilton Head* litigation and Plaintiff's alter ego allegations here—namely, the *very same facts*.  Under these circumstances, the Court may take judicial notice of the *Hilton Head* Opinion as a prior judgment of another court, and it should be admitted into evidence on that basis.

## Conclusion

For all of the foregoing reasons, Plaintiff respectfully requests that this Court:

(1) consider all relevant evidence that is probative of whether Defendants are alter egos of one another; (2) take judicial notice of the *Hilton Head* Opinion and admit it into evidence on that basis; and (3) deny Defendants' motions *in limine* in their entirety.


Dated:  June 17, 2014                PLAINTIFF JOHN D. HUBER, as Trustee of the
                                     SageCrest Liquidating Trust

                                     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                     By: /s/Mark E. McGrath
                                     _____
                                         Robert S. Friedman (admitted *pro hac vice*)
                                         Mark E. McGrath (ct28814)
                                     30 Rockefeller Plaza
                                     New York, New York 10112
                                     Telephone:  (212) 653-8700

                                              - and -

                                     ZEISLER & ZEISLER, P.C.
                                     James Berman (ct06027)
                                     10 Middle Street, 15th Floor
                                     Bridgeport, CT 06604
                                     Telephone: (203) 368-4234

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'

MOTIONS *IN LIMINE* (1) TO LIMIT EVIDENCE CONCERNING PIERCING THE

CORPORATE VEIL TO THE TIME OF THE MAY 19, 2008 SO-ORDERED SETTLEMENT

STIPULATION, AND (2) TO PRECLUDE EVIDENCE RELATED TO AN OPINION AND

ORDER IN THE HILTON HEAD ACTION was electronically filed via ECF, which effects

service upon all parties who have entered an appearance in this case.

Dated this 17th day of June, 2014.


_____ /s/Mark E. McGrath_____