```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - x

IN RE:                            :    No. 3:13CV-973 (SRU)
                                  :    915 Lafayette Boulevard
                                  :    Bridgeport, Connecticut
                                  :
                                  :    June 18, 2014
SAGECREST II, LLC, ET AL          :

- - - - - - - - - - - - - - - - - x

                          BENCH TRIAL

B E F O R E:

     THE HONORABLE STEFAN R. UNDERHILL, U. S. D. J.

A P P E A R A N C E S:

    FOR THE PLAINTIFF:

         SHEPPARD, MULLIN, RICHTER & HAMPTON
              30 Rockefeller Plaza, 24th FL
              New York, New York  10112
          BY: ROBERT S. FRIEDMAN, ESQ.
              MARK E. MCGRATH, ESQ.

         ZEISLER & ZEISLER, P. C.
              10 Middle Street, 15th FL
              Bridgeport, Connecticut  06605
          BY: JAMES BERMAN, ESQ.

    FOR THE DEFENDANTS:

         COHEN & WOLF, P.C.
              1115 Broad Street, P.O. Box 1821
              Bridgeport, Connecticut  06604
          BY: ARI J. HOFFMAN, ESQ.
              VINCENT MARINO, ESQ.
              PHILIP C. PIRES, ESQ.

               Susan E. Catucci, RMR
                Official Court Reporter
                915 Lafayette Boulevard
             Bridgeport, Connecticut  06604
                  Tel: (917)703-0761
```

```
 1                    (9:20 o'clock a. m..)
 2              THE COURT:  Good morning.  Why don't we start
 3    with appearances, please.
 4              MR. FRIEDMAN:  Good morning, Your Honor.  Robert
 5    Friedman, Sheppard Mullin Richter & Hampton, for
 6    plaintiffs.
 7              MR. McGRATH:  Good morning, Your Honor, Mark
 8    McGrath, also from Sheppard Mullin.
 9              MR. BERMAN:  Good morning, Your Honor.  James
10    Berman from Zeisler & Zeisler, also for plaintiff.
11              MR. HOFFMAN:  Good morning, Your Honor, Ari
12    Hoffman from Cohen & Wolf on behalf of defendants.
13              MR. PIRES:  Good morning, Your Honor.  Philip
14    Pires, also from Cohen & Wolf and also on behalf of
15    defendants.
16              MR. MARINO:  Good morning, Your Honor.  Vince
17    Marino, Cohen & Wolf, also on behalf of defendants.
18              THE COURT:  All right, great.  Let's start with
19    the issue of ACG Credit Company II, LLC, filing for
20    bankruptcy.
21              My thought is, obviously the action is stayed
22    with respect to that entity and that that entity should be
23    severed and we should try the case with respect to the
24    remaining defendants.  Anybody disagree with that?
25              MR. MARINO:  Yes, Your Honor.  Vince Marino,
```

1   Cohen & Wolf.

2           Your Honor, we believe that the entire case must
3   be stayed because under New York law, the claims would
4   require an adjudication of liability as to ACG II in the
5   first instance until they can proceed against the
6   remaining defendants.  And since that is an indispensable
7   matter that needs to be adjudicated, we don't believe the
8   trial can proceed based on that.

9           Also, Your Honor, as we put in our notice, and I
10  don't think there's any question Your Honor has already
11  articulated that the matter is stayed as to ACG II, so
12  therefore, any claims related to the alter ego claims, are
13  claims that would have to be stayed.  And the fact of the
14  matter is that all the facts are so intertwined in this
15  matter that any trial would have to involve issues related
16  to ACG II, and therefore --

17          THE COURT:  It involves issues but it doesn't
18  involve potential liability against them; how does that
19  matter?

20          MR. MARINO:  It matters, Your Honor, because to
21  the extent that there are issues that come before the
22  Court that the Court may come to opine on, that could
23  prejudice the bankrupt debtor and it could serve as a
24  potential prejudice in any future action that might be
25  prosecuted against that bankrupt debtor, whether it be in

1  this Court or in the District of Delaware.
2          THE COURT:  So if these claims have been brought
3  and ACG Credit Company II, LLC, had not been sued, your
4  position is this case could not proceed?
5          MR. MARINO:  Your Honor, in that instance, if
6  ACG II were not a party to the proceeding, then there
7  would be no collateral estoppel or res judicata aspect.
8          THE COURT:  Right, and by severing them out and
9  by staying all claims against them, they are not a party
10 to this trial.
11         MR. MARINO:  Except that, Your Honor, because
12 that may, because of the way that the complaint was
13 brought and because of the way that the complaint is
14 styled, I am concerned that anything that the Court may do
15 may have some type of prejudicial effect on ACG II in the
16 District of Delaware.
17         THE COURT:  I don't understand how it could.  It
18 can't -- it's not going to be subject to res judicata or
19 collateral estoppel, in effect, because they are not here.
20 So they haven't had a full and fair opportunity to
21 litigate.  The fact that a related entity may have a
22 judgment entered against them doesn't affect them.
23         MR. MARINO:  Except that, Your Honor, I believe
24 that analysis of the claims that are asserted generally
25 all relate to alter ego claims which necessarily involve

1    ACG II, and to the extent that there's a claim on a
2    guarantee of the limited -- guarantee of collection, that
3    guarantee under New York law can only be prosecuted after
4    the plaintiff has exhausted all available remedies against
5    ACG II.
6             So, as a matter of New York law, it could not
7    proceed to the limited guarantee independently of first
8    exhausting all rights they may have against ACG II.
9             MR. FRIEDMAN:  Your Honor, we're in somewhat of
10   a difficult position because I do not want to make a
11   statement that would be deemed to violate the stay.  We
12   would obviously, if the Court orders us to move forward,
13   we are ready and prepared to try the case, although we
14   would need to obviously bring all our stuff back over.
15            However, I don't want to take the position that,
16   that subsequently ACG II and the other parties are going
17   to argue that we took some action to violate the stay.
18            I will tell you that we are considering strongly
19   our remedies, including a possible bad faith filing on an
20   expedited basis and including lifting the stay on an
21   expedited basis to get this, to get ACG II back before
22   Your Honor.
23            THE COURT:  Well, from the plaintiff's point of
24   view, is there, is there good reason to go forward against
25   the other parties?

1           MR. FRIEDMAN:  There would certainly be a good
2   reason to go forward.  However, I am mindful of not
3   advocating a position that could be later deemed to be in
4   violation of the stay.
5           That is my main concern, Your Honor.  I don't
6   want to bring any exposure to the estate at this point
7   with respect to taking an action that would be deemed to
8   violate the stay.  That's my main concern.
9           Our focus is to get this matter tried as quickly
10  as possible.  That's been our focus since last year when,
11  also on the eve of trial before Judge Shiff, they moved to
12  withdraw the reference.
13          THE COURT:  Right.
14          MR. FRIEDMAN:  So, this is a pattern, Your
15  Honor, and this is going to be part, if we deem it to be
16  supported by the facts and the law, of our application to
17  lift the stay and enforce sanctions with respect to a bad
18  faith filing.
19          My main concern right now is not to draw
20  exposure to the estate by making an argument that could be
21  deemed to be in violation of the stay.  And I'll be frank
22  with Your Honor, we have not explored all of the issues in
23  the cases that were cited by defendants, so I'm not in a
24  position right now to say conclusively or not that they
25  are right or wrong.

1    There could be some exposure to the estate with
2    me taking a position that would potentially violate the
3    stay and that's what I'm concerned about.
4            But we are going to move expeditiously.  When we
5    found out about this at 9:00 o'clock last night, obviously
6    we were ready for trial.
7            THE COURT:  Right.  Well, I doubt it's a
8    coincidence.
9            MR. FRIEDMAN:  We very much doubt that, Your
10   Honor.
11           THE COURT:  Yes, okay.
12           MR. HOFFMAN:  Your Honor, if I could just be
13   heard for one minute.
14           With respect to the motion to withdraw the
15   reference in Bankruptcy Court, I believe there is a
16   stipulation in the Bankruptcy Court on that issue.
17           Second, with respect to the bankruptcy filing as
18   of last night, it obviously pertains to ACG II.  However,
19   there is, as was laid out in the Notice, and Attorney
20   Marino articulated it well, the claims here are against
21   ACG II, which is the alleged primary debtor, and the other
22   defendants are named as an alter ego claim, effectively,
23   and there is law in New York, as I understand it, that is
24   fairly axiomatic, that basically stays all of the alter
25   ego claims as to the other defendants.

1     THE COURT: Right. Well, again, it would seem
2 to me to me possible to go forward. Again if, if the
3 plaintiffs, the plaintiff had chosen to sue only the
4 alleged alter egos and had argued that they are liable
5 because the primary debtor, who was never sued, is liable
6 and these entities are the alter egos, it seems to me
7 theoretically possible to go forward with those claims
8 without the presence of the primary defendant.
9     And so I think there is, I think there's a
10 debatable point about whether I'm required to stay the
11 trial. It may be that it makes sense from a practical
12 viewpoint to do, so but it's not apparent to me that we
13 couldn't proceed.
14     MR. HOFFMAN: Your Honor, I'm not suggesting
15 that if we went back a couple of years and the plaintiff
16 re-crafted their complaint in an entirely different way,
17 that we couldn't proceed here without ACG II, but the fact
18 of the matter is that we are here, the pleadings are what
19 they are, and the other defendants here are brought in off
20 of the alter ego claim as is enumerated in the --
21 throughout, throughout the complaint.
22     So, based on the pleadings as they stand and
23 based on New York law, as I understand it --
24     THE COURT: Well, okay. But, again, let's
25 assume for a minute that the current complaint is

1  operative and I looked at things and I said, hey, you know
2  what?  There's no personal jurisdiction over ACG Credit
3  Company II, LLC.  Well, we're going to proceed against
4  everybody else -- they are dismissed from the case; we're
5  going to proceed -- it seems to me that that case could go
6  forward.
7            MR. FRIEDMAN:  Here, the distinction is under
8  the case law that we cited under the claims that they have
9  pleaded, ACG II is an indispensable party in this case.
10           THE COURT:  Well, that's the question, I guess.
11           MR. FRIEDMAN:  That is the question.  And, Your
12 Honor, we had to look at this question very, very late
13 last night and into the morning.  We found New York case
14 law that we think is directly on point on this issue, and
15 we do think that they are -- that it is an indispensable
16 party.
17           THE COURT:  That's possible.  All right.
18 Anything further?
19           MR. FRIEDMAN:  No, Your Honor.  Thank you.
20           THE COURT:  Okay.  Well, it sounds to me that
21 the better course of action here is to stay the case, stay
22 the trial.  I hope you're back very quickly.  My goal is
23 to try this case as well, and I'd like it get that done
24 sooner rather than later.  So, I don't see any point in
25 moving forward at this point.  Does anybody disagree with

1   that?
2              MR. HOFFMAN:  No, Your Honor.
3              MR. MARINO:  No, Your Honor.
4              MR. FRIEDMAN:  Reluctantly, no, Your Honor.
5              THE COURT:  All right.  Keep me posted on the
6   status and I'll keep the boxes of documents.  We'll be
7   ready to go.
8              MR. FRIEDMAN:  Thank you, Your Honor.
9              MR. HOFFMAN:  Thank you, Your Honor.
10             THE COURT:  We'll stand in recess.
11             (Whereupon the above matter was adjourned at 9:30
12  o'clock, a. m.)
13
14
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T E

      I, Susan E. Catucci, RMR, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.


      /S/ Susan E. Catucci
      _____

      Susan E. Catucci, RMR
      Official Court Reporter
      915 Lafayette Boulevard
   Bridgeport, Connecticut  06604
        Tel: (917) 703-0761